PLAINTIFF'S
EXHIBIT
34

# More than $1.3 million paid to settle claims against ex-officer in Pine Lawn

By Robert Patrick and Jeremy Kohler St. Louis Post-Dispatch 10/4/16

**PINE LAWN** • An insurer for the city of Pine Lawn has paid more than $1.3 million to settle abuse claims against former police Lt. Steven Blakeney, who should learn this week how long he must spend in federal prison for a separate false-arrest conspiracy.

Some of the people receiving payouts through the Missouri Public Entity Risk Management Fund, a shared-risk pool, are expected to be witnesses in a sentencing hearing to begin Wednesday in U.S. District Court in St. Louis.

The settlements, obtained by the Post-Dispatch through Missouri's open records law, contain a confidentiality provision and an agreement to refrain from derogatory remarks. Many mention claims of physical injury or pain and suffering — and some say the city would dismiss charges pending against claimants or not oppose the expunging of their arrest records.

Blakeney was accused of a pattern of abuse and false arrests over five years.



Steven Blakeney (KTVI photo)
KTVI

**PINE LAWN** • An insurer for the city of Pine Lawn has paid more than $1.3 million to settle abuse claims against former police Lt. Steven Blakeney,

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This SETTLEMENT AGREEMENT AND GENERAL RELEASE ("Agreement") is made and entered into by and between Tremmell MoCole (the "Claimant") and the CITY OF PINE LAWN, MISSOURI, (the "City" or "Defendant") on this ___ day of July 2015. The City of Pine Lawn and Tremmell McCole are sometimes herein individually referred to as "party" or collectively as the "parties".

WHEREAS, the Claimant has asserted claims against the Defendant arising from an incident and interaction with former Pine Lawn Officer Steven Blakeney aka Steve Blakeney ("Blakeney") occurring in the City of Pine Lawn in October 2012 (hereinafter "Lawsuit"); such claims against the City of Pine Lawn and Blakeney may arise under the United States Constitution, Missouri Constitution, and other state and federal law, including but not limited to 42 USC §§ 1983 and 1988; the Claimant is represented by attorney Stephen Ryals; and

WHEREAS, the City and Blakeney have each denied and each continues to deny any wrongdoing or liability to the Claimant; the City is represented by attorneys Blake Hill and William Hellmich of King, Krehbiel & Hellmich, LLC; Blakeney is represented by attorney Mark Zoole; and

WHEREAS, the Defendant and the Claimant desire to fully and finally comprise, resolve, and settle claims raised or which could have been raised in any Lawsuit by the Claimant, against all putative defendants to such Lawsuit including but not limited to the City of Pine Lawn and Blakeney, as well as any and all claims of any nature which the Claimant may now have or has at any time in the past had against the City of Pine Lawn or Blakeney; and

WHEREAS, while Blakeney is not a party to this Agreement, he is fully released hereunder as more particularly set forth below.

NOW, THEREFORE, in consideration of the foregoing recitations and the mutual and reciprocal promises contained in this Agreement, the parties hereby agree as follows:

1. Contemporaneously with the execution of this Agreement by the Defendant shall cause to be paid to the Claimant and his attorneys the total sum of Eighty-Thousand Dollars ($80,000.00) by draft made payable to "Tremmell McCole and The Ryals Law Firm, P.C." and delivered to attorney Stephen Ryals. The payments and amounts set forth in this paragraph fully and completely settle and resolve all claims of the Claimant including but not limited to his claims for all manner of damages, attorney's fees and court costs. No other payments will be made by

the Defendant or any other releasee or beneficiary under this Agreement, and Claimant shall be solely responsible for the payment of his own costs and attorney's fees, and any taxes or any other assessments incident to the payments set forth in this paragraph.

2.      It is expressly agreed by and among the parties that the payment made herein by the Defendant is made solely for the purpose of preventing and/or terminating the assertion of the cause of action, as well as any other disputes or claims which the Claimant may have against the City and/or Blakeney arising from any facts now known or unknown. This payment is made without any way admitting any liability, which liability both the City and Blakeney expressly deny. Claimant covenants that he shall not file any lawsuit for the acts, omissions and conduct released herein, and as more particularly set forth below, releases and covenants not to sue the City of Pine Lawn or Steven Blakeney.

3.      The Claimant agrees to satisfy any and all liens arising out of any incident or occurrence relating to the claims and to indemnify and save both the City of Pine Lawn, its agents, employees, officers, Board of Aldermen, representatives and its insurer, and Blakeney, harmless therefrom. The Claimant irrevocably directs his attorney to satisfy any known liens out of the settlement proceeds. The Claimant further represents that there are no known liens in this case.

4.      For and in consideration of the additional sum of One Dollar ($1.00), the Claimant, as well as his attorneys, agree not to publicize or disclose the financial terms of this Agreement, or the discussions leading up to same, either directly or indirectly, to the public generally or to any person or entity. This confidentiality provision specifically includes, but is not limited to, the Claimant's attorneys' agreement not to publish any information concerning this settlement in the Missouri Lawyers Weekly or any other such publication. This confidentiality provision extends to communication by the Claimant or his attorney to any and all persons except spouses, or attorneys or accountants who have a legitimate need to know the terms in order to render professional advice or services, or unless disclosure is authorized or compelled by law. In the event that it is necessary to disclose the terms of this Agreement to an attorney or accountant, the Claimant agrees that such attorney or accountant shall be advised of this provision to maintain the confidentiality of this Agreement. Otherwise, the Claimant (and his attorneys) agrees not to identify or reveal any terms of the Agreement. In response to inquiry, the Claimant agrees to state that "the matter has been settled" or "the case has been resolved to the satisfaction of the parties", or significantly identical language.

2

This confidentiality provision is intended solely for the benefit of the City and its employees, agents, officers and insurers, may be waived by the City at any time, and is not enforceable against the City. Any comment about any matter protected by this confidentiality provision by City or any employee, agent, officer or insurer shall constitute a waiver of this confidentiality provision. Further, this confidentiality provision is subject to the provisions of the Missouri Sunshine Law and other applicable law, and any disclosure made under compulsion of law or the Order of any Court or administrative agency of proper jurisdiction shall not be deemed a violation of this provision. Insofar as any of the terms of this Agreement must be divulged pursuant to the compulsion of legal process or proceedings, Claimant agrees to take all lawful steps necessary to maintain the confidentiality of the terms of this Agreement, including immediately notifying the City or its attorney if served with or notified of any process seeking information protected by this provision, prior to the disclosure of any such information.

5.      The parties to this Agreement additionally agree to refrain from publicly expressing or in any way publishing any derogatory or disparaging remark concerning the other, subject to the same conditions and safe harbor set forth in paragraph 4 concerning statements made under compulsion of law. Nothing in this Agreement shall prohibit Claimant or his counsel from fully disclosing the facts giving rise to his claims to any law enforcement or governmental entity or agency.

6.      Tremmell McCole, for himself and his heirs, legal representatives, administrators, successors, assigns, trustees, agents, servants, insurers and anyone claiming by, through or under any of them, does hereby WAIVE HIS RIGHT TO SUE and COMPLETELY RELEASES AND FOREVER DISCHARGES the City of Pine Lawn, Missouri, and its executives, Board of Aldermen members, elected officials, officers, agents, employees, servants, administrators, legal representatives, successors, assigns, trustees, attorneys, insurers (specifically, the Missouri Public Entity Risk Management Fund ("MOPERM")), and any and all of them, and Steven Blakeney aka Steve Blakeney and his heirs, legal representatives, administrators, successors, assigns, trustees, agents, attorneys, insurers (specifically, MOPERM), and any and all of them, of and from any manner of liabilities, actions, suits, debts, judgments, claims, decisions, controversies, demands and damages whatsoever, in law or in equity, which he has ever had, now has, or may hereinafter have, arising or accruing from the beginning of time to the date of this Settlement Agreement and General Release, whether known or unknown, against the City of Pine Lawn, Missouri, and its

3

executives, Board of Aldermen members, elected officials, officers, agents, employees, servants, administers, legal representatives, successors, assigns, trustees, insurers (specifically, MOPERM) and attorneys, and against Steven Blakeney aka Steve Blakeney and his heirs, legal representatives, administrators, successors, assigns, trustees, agents, insurers (specifically, MOPERM), and attorneys, including but not limited to all claims which Claimant raised or could have been raised in any Lawsuit, as well as all other causes of action of any nature in any legal forum, court of law, or administrative agency, under the common law, or any federal or state statute or city ordinance.

Without limiting the generality of the foregoing, this Settlement Agreement and General Release is intended to and shall release the City of Pine Lawn and Steven Blakeney aka Steve Blakeney and each of their agents, successors and assigns from any and all claims of violations arising under 42 U.S.C. §§ 1983, 1988 or any other federal, state, or local statute, ordinance or common law.

7.    The parties agree that the sum paid to Plaintiff is for Plaintiff's alleged non-economic damages including physical injury, pain and suffering, and for reimbursement for Plaintiff's attorney's fees, as more fully set forth in paragraph 1 of this Agreement, and not for punitive damages. Claimant further acknowledges, agrees, covenants and stipulates he is solely responsible for the payment of any and all local, state and/or federal taxes, withholdings, interest and penalties that may be levied on any and all monies paid to him under this Agreement.

8.    City agrees that it shall assert no opposition to an action by Claimant to expunge any record of arrest resulting from the incident upon which Claimant's claims is based.

9.    Each party expressly states and acknowledges that this Agreement sets forth all the promises, agreements, conditions and understandings among the parties concerning the matters set forth herein. There are no oral agreements or understandings among the parties hereto effecting this Agreement, and this Agreement supersedes and cancels any and all previous negotiations, arrangements, understandings and agreements (either oral or written), if any, among the parties hereto with respect to the matters set forth herein. Subsequent alteration, amendment, change or addition to this Agreement shall not be binding upon the parties hereto unless reduced to writing and signed by them.

10.    Each party declares and warrants that no representations made by any party hereto, or by any agent or attorney of any party hereto, or any other representation has induced any party to make this Agreement and that each party hereto is acting upon his/her/its own judgment, belief

4

and knowledge regarding the nature and validity of all claims or potential claims based upon the advice of legal counsel of his/her/its own choosing in making this Settlement Agreement and General Release.

11. The parties hereto acknowledge and warrant to each other that they have not at any time heretofore assigned to any other person or party all or any portion of any claim, counterclaim, or potential claim, whatsoever that any party may have or may have had against any other party hereto.

12. This Agreement shall inure to the benefit of the City of Pine Lawn, Missouri, and its executives, Board of Alderman members, elected officials, officers, agents, employees, servants, administrators, legal representatives, successors and assigns, past and present, and anyone claiming through them. The Claimant acknowledges that the consideration described in Paragraph 1 of this Agreement is all that he or his attorneys or representatives are ever to receive from the Defendant, or any person or entity whatsoever, in settlement of the threatened claims pertaining to the Lawsuit, whether in settlement of the Claimant's claim for damages, for pain and suffering, emotional distress, mental anguish, inconvenience, loss of enjoyment of life, nervousness, anxiety, worry, loss of back pay and future pay, if any; for declaratory and injunctive relief; and for reasonable attorneys' fees, costs, or for any other claim of any nature whatsoever. The Claimant further agrees that he is not, and shall not be considered to be, a "prevailing party" with respect to any claims threatened or made in relation to the Lawsuit within the meaning of any statute, rule or other provision of law which is, or may be, in any way applicable hereto.

13. This Agreement and any controversy or claims arising out of or relating to this Agreement shall be governed by the laws of the State of Missouri.

14. THE CLAIMANT EXPRESSLY ACKNOWLEDGES THAT HE HAS BEEN COUNSELED BY HIS ATTORNEYS, AND BASED ON THAT CONSULTATION, UNDERSTANDS AND AGREES THAT THIS AGREEMENT FULLY SETTLES, RELEASES, AND DISCHARGES ANY AND ALL CLAIMS RAISED, OR WHICH COULD HAVE BEEN RAISED, IN THE ABOVE-REFERENCED LAWSUIT, AS WELL AS ANY OTHER CLAIM, OF ANY NATURE, WHICH THE CLAIMANT HAS EVER HAD, NOW HAS, OR MAY HEREINAFTER HAVE AGAINST THE DEFENDANT CITY OF PINE LAWN OR STEVEN BLAKENEY AKA STEVE BLAKENEY, WHETHER NOW KNOWN OR UNKNOWN, ARISING FROM THE BEGINNING OF TIME TO THE

DATE OF THIS AGREEMENT, AND THAT THE TERMS OF THIS AGREEMENT ARE FULLY UNDERSTOOD AND VOLUNTARILY ACCEPTED FOR THE PURPOSES OF MAKING FULL AND FINAL COMPROMISE AND SETTLEMENT.

15.     Claimant agrees to complete a Medicare reporting form and return it to counsel for the City.  The parties agree that receipt of this form is a condition precedent to the payment set forth in paragraph 1.  Claimant further warrants and represents that he has not sought any medical treatment for which Medicare has paid or been requested to pay as a result of any action of the City or Blakeney.

16.     This Agreement may be executed in counterparts, and the counterparts shall constitute one and the same document.

Approved and agreed to by the undersigned:

CLAIMANT:

_Tremell McCole_
Tremell McCole

_8-5-15_
Date

STATE OF MISSOURI )
                  ) SS
COUNTY OF St Louis )

On this _5_ day of ~~June~~ August 2015, before me personally appeared Tremmell McCole, to me known to be the person described in and who executed the foregoing Settlement Agreement and General Release and acknowledged to me that he executed the same for the purposes therein stated.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

_Sharon D. Koby_
Notary Public

My Commission Expires:  11.11.2018

Sharon D. Koby
Notary Public-Notary Seal
STATE OF MISSOURI
Commissioned for St. Louis County
My Commission Expires 11-11-2018
ID #14631407

6

CITY OF PINE LAWN, MISSOURI

_Elmer Underwood_
[name]

_Act Mayor_
[title]

_9/30/15_
[date]

STATE OF MISSOURI )
                                       ) SS
COUNTY OF ST. LOUIS )

    I do hereby certify that _Olimes Underwood_ personally known to me to be the person whose name is subscribed to the foregoing instrument, appeared before me this _30_ day of May, 2015, in person, and acknowledged that he/she signed and delivered this instrument in his official capacity as _Acting Mayor_ of the City of Pine Lawn, Missouri, and the duly authorized representative of the City of Pine Lawn, Missouri, with full authority from the Board of Aldermen approving this Agreement, as his/her free and voluntary act, for the uses and purposes therein set forth.

    IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

Notary Public

My Commission Expires:

TIFFANY M. RICHARDS
Notary Public, Notary Seal
State of Missouri
St. Louis County
Commission # 12382799
My Commission Expires March 06, 2016

[END OF DOCUMENT]

7

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This SETTLEMENT AGREEMENT AND GENERAL RELEASE ("Agreement") is made and entered into by and between Kristen Moore (the "Claimant") and the CITY OF PINE LAWN, MISSOURI, (the "City" or "Defendant") on this *12* day of May 2015. The City of Pine Lawn and Kristen Moore are sometimes herein individually referred to as "party" or collectively as the "parties".

WHEREAS, the Claimant has asserted claims against the Defendant arising from a traffic stop and further interaction and alleged incidents with former Pine Lawn Officer Steven Blakeney aka Steve Blakeney ("Blakeney") on or about July 23, 2011 (hereinafter "Lawsuit"); such claims against the City of Pine Lawn and Blakeney may arise under the United States Constitution, Missouri Constitution, and other state and federal law, including but not limited to 42 USC §§ 1983 and 1988; the Claimant is represented by attorney Stephen Ryals; and

WHEREAS, the City and Blakeney have each denied and each continues to deny any wrongdoing or liability to the Claimant; the City is represented by attorneys Blake Hill and William Hellmich of King, Krehbiel & Hellmich, LLC; Blakeney is represented by attorney Mark Zoole; and

WHEREAS, the parties and their respective attorneys mediated all of the Claimant's claims at a mediation held on April 20, 2015 at the Offices of Dick Sher and Sher Corwin Winters LLC; the City, Moore, and Blakeney each attended the mediation along with their respective counsels, and an agreement to settle was reached between the City and Moore; and

WHEREAS, while Blakeney is not a party to this Agreement, he is fully released hereunder as more particularly set forth below; and

WHEREAS, the Defendant and the Claimant desire to fully and finally comprise, resolve, and settle claims raised or which could have been raised in any Lawsuit by the Claimant, against all putative defendants to such Lawsuit including but not limited to the City of Pine Lawn and Blakeney, as well as any and all claims of any nature which the Claimant may now have or has at any time in the past had against the City of Pine Lawn or Blakeney.

NOW, THEREFORE, in consideration of the foregoing recitations and the mutual and reciprocal promises contained in this Agreement, the parties hereby agree as follows:

1.      Contemporaneously with the execution of this Agreement by the Defendant shall cause to be paid to the Claimant and her attorneys the total sum of Sixty-Thousand Dollars

($60,000.00) by draft made payable to "Kristen Moore and The Ryals Law Firm, P.C." and delivered to attorney Stephen Ryals. Defendant also agrees to pay in full the mediator's bill directly to Dick Sher for the mediation of April 20, 2015. The payments and amounts set forth in this paragraph fully and completely settle and resolve all claims of the Claimant including but not limited to her claims for all manner of damages, attorney's fees and court costs. No other payments will be made by the Defendant or any other releasee or beneficiary under this Agreement, and Claimant shall be solely responsible for the payment of her own costs and attorney's fees, and any taxes or any other assessments incident to the payments set forth in this paragraph.

2.      It is expressly agreed by and among the parties that the payment made herein by the Defendant is made solely for the purpose of preventing and/or terminating the assertion of the cause of action, as well as any other disputes or claims which the Claimant may have against the City and/or Blakeney arising from any facts now known or unknown. This payment is made without any way admitting any liability, which liability both the City and Blakeney expressly deny. Claimant covenants that she shall not file any lawsuit for the acts, omissions and conduct released herein, and as more particularly set forth below, releases and covenants not to sue the City of Pine Lawn or Steven Blakeney.

3.      The Claimant agrees to satisfy any and all liens arising out of any incident or occurrence relating to the claims and to indemnify and save both the City of Pine Lawn, its agents, employees, officers, Board of Aldermen, representatives and its insurer, and Blakeney, harmless therefrom. The Claimant irrevocably directs her attorney to satisfy any known liens out of the settlement proceeds. The Claimant further represents that there are no known liens in this case.

4.      For and in consideration of the additional sum of One Dollar ($1.00), the Claimant, as well as her attorneys, agree not to publicize or disclose the financial terms of this Agreement, or the discussions leading up to same, either directly or indirectly, to the public generally or to any person or entity. This confidentiality provision specifically includes, but is not limited to, the Claimant's attorneys' agreement not to publish any information concerning this settlement in the Missouri Lawyers Weekly or any other such publication. This confidentiality provision extends to communication by the Claimant or her attorney to any and all persons except spouses, or attorneys or accountants who have a legitimate need to know the terms in order to render professional advice or services, or unless disclosure is authorized or compelled by law. In the event that it is necessary to disclose the terms of this Agreement to an attorney or accountant, the

Claimant agrees that such attorney or accountant shall be advised of this provision to maintain the confidentiality of this Agreement. Otherwise, the Claimant (and her attorneys) agrees not to identify or reveal any terms of the Agreement. In response to inquiry, the Claimant agrees to state that "the matter has been settled" or "the case has been resolved to the satisfaction of the parties", or significantly identical language.

This confidentiality provision is intended solely for the benefit of the City and its employees, agents, officers and insurers, may be waived by the City at any time, and is not enforceable against the City. Any comment about any matter protected by this confidentiality provision by City or any employee, agent, officer or insurer shall constitute a waiver of this confidentiality provision. Further, this confidentiality provision is subject to the provisions of the Missouri Sunshine Law and other applicable law, and any disclosure made under compulsion of law or the Order of any Court or administrative agency of proper jurisdiction shall not be deemed a violation of this provision. Insofar as any of the terms of this Agreement must be divulged pursuant to the compulsion of legal process or proceedings, Claimant agrees to take all lawful steps necessary to maintain the confidentiality of the terms of this Agreement, including immediately notifying the City or its attorney if served with or notified of any process seeking information protected by this provision, prior to the disclosure of any such information.

5.      The parties to this Agreement additionally agree to refrain from publicly expressing or in any way publishing any derogatory or disparaging remark concerning the other, subject to the same conditions and safe harbor set forth in paragraph 4 concerning statements made under compulsion of law. Nothing in this Agreement shall prohibit Claimant or her counsel from fully disclosing the facts giving rise to her claims to any law enforcement or governmental entity or agency.

6.      Kristen Moore, for herself and her heirs, legal representatives, administrators, successors, assigns, trustees, agents, servants, insurers and anyone claiming by, through or under any of them, does hereby WAIVE HER RIGHT TO SUE and COMPLETELY RELEASES AND FOREVER DISCHARGES the City of Pine Lawn, Missouri, and its executives, Board of Aldermen members, elected officials, officers, agents, employees, servants, administrators, legal representatives, successors, assigns, trustees, attorneys, insurers (specifically, the Missouri Public Entity Risk Management Fund ("MOPERM")), and any and all of them, and Steven Blakeney aka Steve Blakeney and his heirs, legal representatives, administrators, successors, assigns, trustees,

3

agents, attorneys, insurers (specifically, MOPERM), and any and all of them, of and from any manner of liabilities, actions, suits, debts, judgments, claims, decisions, controversies, demands and damages whatsoever, in law or in equity, which she has ever had, now has, or may hereinafter have, arising or accruing from the beginning of time to the date of this Settlement Agreement and General Release, whether known or unknown, against the City of Pine Lawn, Missouri, and its executives, Board of Aldermen members, elected officials, officers, agents, employees, servants, administers, legal representatives, successors, assigns, trustees, insurers (specifically, MOPERM) and attorneys, and against Steven Blakeney aka Steve Blakeney and his heirs, legal representatives, administrators, successors, assigns, trustees, agents, insurers (specifically, MOPERM), and attorneys, including but not limited to all claims which Claimant raised or could have been raised in any Lawsuit, as well as all other causes of action of any nature in any legal forum, court of law, or administrative agency, under the common law, or any federal or state statute or city ordinance.

Without limiting the generality of the foregoing, this Settlement Agreement and General Release is intended to and shall release the City of Pine Lawn and Steven Blakeney aka Steve Blakeney and each of their agents, successors and assigns from any and all claims of violations arising under 42 U.S.C. §§ 1983, 1988 or any other federal, state, or local statute, ordinance or common law.

7.      Claimant further acknowledges, agrees, covenants and stipulates she is solely responsible for the payment of any and all local, state and/or federal taxes, withholdings, interest and penalties that may be levied on any and all monies paid to her under this Agreement.

8.      City agrees that it shall assert no opposition to an action by Claimant to expunge any record of arrest resulting from the incident upon which Claimant's claims is based.

9.      Each party expressly states and acknowledges that this Agreement sets forth all the promises, agreements, conditions and understandings among the parties concerning the matters set forth herein. There are no oral agreements or understandings among the parties hereto effecting this Agreement, and this Agreement supersedes and cancels any and all previous negotiations, arrangements, understandings and agreements (either oral or written), if any, among the parties hereto with respect to the matters set forth herein. Subsequent alteration, amendment, change or addition to this Agreement shall not be binding upon the parties hereto unless reduced to writing and signed by them.

4

10.     Each party declares and warrants that no representations made by any party hereto, or by any agent or attorney of any party hereto, or any other representation has induced any party to make this Agreement and that each party hereto is acting upon his/her/its own judgment, belief and knowledge regarding the nature and validity of all claims or potential claims based upon the advice of legal counsel of his/her/its own choosing in making this Settlement Agreement and General Release.

11.     The parties hereto acknowledge and warrant to each other that they have not at any time heretofore assigned to any other person or party all or any portion of any claim, counterclaim, or potential claim, whatsoever that any party may have or may have had against any other party hereto.

12.     This Agreement shall inure to the benefit of the City of Pine Lawn, Missouri, and its executives, Board of Alderman members, elected officials, officers, agents, employees, servants, administrators, legal representatives, successors and assigns, past and present, and anyone claiming through them. The Claimant acknowledges that the consideration described in Paragraph 1 of this Agreement is all that she or her attorneys or representatives are ever to receive from the Defendant, or any person or entity whatsoever, in settlement of the threatened claims pertaining to the Lawsuit, whether in settlement of the Claimant's claim for damages, for pain and suffering, emotional distress, mental anguish, inconvenience, loss of enjoyment of life, nervousness, anxiety, worry, loss of back pay and future pay, if any; for declaratory and injunctive relief; and for reasonable attorneys' fees, costs, or for any other claim of any nature whatsoever. The Claimant further agrees that she is not, and shall not be considered to be, a "prevailing party" with respect to any claims threatened or made in relation to the Lawsuit within the meaning of any statute, rule or other provision of law which is, or may be, in any way applicable hereto.

13.     This Agreement and any controversy or claims arising out of or relating to this Agreement shall be governed by the laws of the State of Missouri.

14.     **THE CLAIMANT EXPRESSLY ACKNOWLEDGES THAT SHE HAS BEEN COUNSELED BY HER ATTORNEYS, AND BASED ON THAT CONSULTATION, UNDERSTANDS AND AGREES THAT THIS AGREEMENT FULLY SETTLES, RELEASES, AND DISCHARGES ANY AND ALL CLAIMS RAISED, OR WHICH COULD HAVE BEEN RAISED, IN THE ABOVE-REFERENCED LAWSUIT, AS WELL AS ANY OTHER CLAIM, OF ANY NATURE, WHICH THE CLAIMANT HAS EVER**

5

HAD, NOW HAS, OR MAY HEREINAFTER HAVE AGAINST THE DEFENDANT CITY OF PINE LAWN OR STEVEN BLAKENEY AKA STEVE BLAKENEY, WHETHER NOW KNOWN OR UNKNOWN, ARISING FROM THE BEGINNING OF TIME TO THE DATE OF THIS AGREEMENT, AND THAT THE TERMS OF THIS AGREEMENT ARE FULLY UNDERSTOOD AND VOLUNTARILY ACCEPTED FOR THE PURPOSES OF MAKING FULL AND FINAL COMPROMISE AND SETTLEMENT.

15. Claimant agrees to complete a Medicare reporting form and return it to counsel for the City. The parties agree that receipt of this form is a condition precedent to the payment set forth in paragraph 1. Claimant further warrants and represents that she has not sought any medical treatment for which Medicare has paid or been requested to pay as a result of any action of the City or Blakeney.

16. This Agreement may be executed in counterparts, and the counterparts shall constitute one and the same document.

Approved and agreed to by the undersigned:

CLAIMANT:

_____
Kristen Moore

_____
Date    5/8/15

STATE OF MISSOURI          )
                           ) SS
COUNTY OF ST. LOUIS        )

On this ____ day of May 2015, before me personally appeared KRISTEN MOORE, to me known to be the person described in and who executed the foregoing Settlement Agreement and General Release and acknowledged to me that she executed the same for the purposes therein stated.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

_____
Notary Public

My Commission Expires:

6

CITY OF PINE LAWN, MISSOURI

_Olimus Underwood_
[name]

_Alderperson / Acting Mayor_
[title]

_05/14/2015_
[date]

STATE OF MISSOURI       )
                        ) SS
COUNTY OF ST. LOUIS     )

I do hereby certify that _Olimes Underwood_ personally known to me to be the person whose name is subscribed to the foregoing instrument, appeared before me this _14th_ day of May, 2015, in person, and acknowledged that she signed and delivered this instrument in his official capacity as _Acting Mayor_ of the City of Pine Lawn, Missouri, and the duly authorized representative of the City of Pine Lawn, Missouri, with full authority from the Board of Aldermen approving this Agreement, as her free and voluntary act, for the uses and purposes therein set forth.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

My Commission Expires:

_03/27/16_

_Roberta Mehlhoff_
Notary Public

Roberta J Mehlhoff
Notary Public Notary Seal
State of Missouri County of St Louis City
My Commission Expires 03/27/2016
Commission # 12320678

[END OF DOCUMENT]

7

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This SETTLEMENT AGREEMENT AND GENERAL RELEASE ("Agreement") is made and entered into by and between Sidney Sinclair (the "Claimant") and the CITY OF PINE LAWN, MISSOURI, (the "City" or "Defendant") on this ___ day of October 2015.  The City of Pine Lawn and Sidney Sinclair are sometimes herein individually referred to as "party" or collectively as the "parties".

WHEREAS, the Claimant has asserted claims against the Defendant arising from an incident and interaction with former Pine Lawn Officer Steven Blakeney aka Steve Blakeney ("Blakeney") occurring in the City of Pine Lawn in October 2012 (hereinafter "Lawsuit");  such claims against the City of Pine Lawn and Blakeney may arise under the United States Constitution, Missouri Constitution, and other state and federal law, including but not limited to 42 USC §§ 1983 and 1988; the Claimant is represented by attorney Stephen Ryals; and

WHEREAS, the City and Blakeney have each denied and each continues to deny any wrongdoing or liability to the Claimant; the City is represented by attorneys Blake Hill and William Hellmich of King, Krehbiel & Hellmich, LLC; Blakeney is represented by attorney Mark Zoole; and

WHEREAS, the Defendant and the Claimant desire to fully and finally comprise, resolve, and settle claims raised or which could have been raised in any Lawsuit by the Claimant, against all putative defendants to such Lawsuit including but not limited to the City of Pine Lawn and Blakeney, as well as any and all claims of any nature which the Claimant may now have or has at any time in the past had against the City of Pine Lawn or Blakeney; and

WHEREAS, while Blakeney is not a party to this Agreement, he is fully released hereunder as more particularly set forth below.

NOW, THEREFORE, in consideration of the foregoing recitations and the mutual and reciprocal promises contained in this Agreement, the parties hereby agree as follows:

1.      Contemporaneously with the execution of this Agreement by the Defendant shall cause to be paid to the Claimant and his attorneys the total sum of Sixty-Thousand Dollars ($60,000.00) by draft made payable to "Sidney Sinclair and The Ryals Law Firm, P.C." and delivered to attorney Stephen Ryals.  The payments and amounts set forth in this paragraph fully and completely settle and resolve all claims of the Claimant including but not limited to his claims for all manner of damages, attorney's fees and court costs.  No other payments will be

made by the Defendant or any other releasee or beneficiary under this Agreement, and Claimant shall be solely responsible for the payment of his own costs and attorney's fees, and any taxes or any other assessments incident to the payments set forth in this paragraph.

2.     It is expressly agreed by and among the parties that the payment made herein by the Defendant is made solely for the purpose of preventing and/or terminating the assertion of the cause of action, as well as any other disputes or claims which the Claimant may have against the City and/or Blakeney arising from any facts now known or unknown. This payment is made without any way admitting any liability, which liability both the City and Blakeney expressly deny. Claimant covenants that he shall not file any lawsuit for the acts, omissions and conduct released herein, and as more particularly set forth below, releases and covenants not to sue the City of Pine Lawn or Steven Blakeney.

3.     The Claimant agrees to satisfy any and all liens arising out of any incident or occurrence relating to the claims and to indemnify and save both the City of Pine Lawn, its agents, employees, officers, Board of Aldermen, representatives and its insurer, and Blakeney, harmless therefrom. The Claimant irrevocably directs his attorney to satisfy any known liens out of the settlement proceeds. The Claimant further represents that there are no known liens in this case.

4.     For and in consideration of the additional sum of One Dollar ($1.00), the Claimant, as well as his attorneys, agree not to publicize or disclose the financial terms of this Agreement, or the discussions leading up to same, either directly or indirectly, to the public generally or to any person or entity. This confidentiality provision specifically includes, but is not limited to, the Claimant's attorneys' agreement not to publish any information concerning this settlement in the Missouri Lawyers Weekly or any other such publication. This confidentiality provision extends to communication by the Claimant or his attorney to any and all persons except spouses, or attorneys or accountants who have a legitimate need to know the terms in order to render professional advice or services, or unless disclosure is authorized or compelled by law. In the event that it is necessary to disclose the terms of this Agreement to an attorney or accountant, the Claimant agrees that such attorney or accountant shall be advised of this provision to maintain the confidentiality of this Agreement. Otherwise, the Claimant (and his attorneys) agrees not to identify or reveal any terms of the Agreement. In response to

2

inquiry, the Claimant agrees to state that "the matter has been settled" or "the case has been resolved to the satisfaction of the parties", or significantly identical language.

This confidentiality provision is intended solely for the benefit of the City and its employees, agents, officers and insurers, may be waived by the City at any time, and is not enforceable against the City. Any comment about any matter protected by this confidentiality provision by City or any employee, agent, officer or insurer shall constitute a waiver of this confidentiality provision. Further, this confidentiality provision is subject to the provisions of the Missouri Sunshine Law and other applicable law, and any disclosure made under compulsion of law or the Order of any Court or administrative agency of proper jurisdiction shall not be deemed a violation of this provision. Insofar as any of the terms of this Agreement must be divulged pursuant to the compulsion of legal process or proceedings, Claimant agrees to take all lawful steps necessary to maintain the confidentiality of the terms of this Agreement, including immediately notifying the City or its attorney if served with or notified of any process seeking information protected by this provision, prior to the disclosure of any such information.

5.      The parties to this Agreement additionally agree to refrain from publicly expressing or in any way publishing any derogatory or disparaging remark concerning the other, subject to the same conditions and safe harbor set forth in paragraph 4 concerning statements made under compulsion of law. Nothing in this Agreement shall prohibit Claimant or his counsel from fully disclosing the facts giving rise to his claims to any law enforcement or governmental entity or agency.

6.      Sidney Sinclair, for himself and his heirs, legal representatives, administrators, successors, assigns, trustees, agents, servants, insurers and anyone claiming by, through or under any of them, does hereby WAIVE HIS RIGHT TO SUE and COMPLETELY RELEASES AND FOREVER DISCHARGES the City of Pine Lawn, Missouri, and its executives, Board of Aldermen members, elected officials, officers, agents, employees, servants, administrators, legal representatives, successors, assigns, trustees, attorneys, insurers (specifically, the Missouri Public Entity Risk Management Fund ("MOPERM")), and any and all of them, and Steven Blakeney aka Steve Blakeney and his heirs, legal representatives, administrators, successors, assigns, trustees, agents, attorneys, insurers (specifically, MOPERM), and any and all of them, of and from any manner of liabilities, actions, suits, debts, judgments, claims, decisions, controversies, demands and damages whatsoever, in law or in equity, which he has ever had,

3

now has, or may hereinafter have, arising or accruing from the beginning of time to the date of this Settlement Agreement and General Release, whether known or unknown, against the City of Pine Lawn, Missouri, and its executives, Board of Aldermen members, elected officials, officers, agents, employees, servants, administers, legal representatives, successors, assigns, trustees, insurers (specifically, MOPERM) and attorneys, and against Steven Blakeney aka Steve Blakeney and his heirs, legal representatives, administrators, successors, assigns, trustees, agents, insurers (specifically, MOPERM), and attorneys, including but not limited to all claims which Claimant raised or could have been raised in any Lawsuit, as well as all other causes of action of any nature in any legal forum, court of law, or administrative agency, under the common law, or any federal or state statute or city ordinance.

Without limiting the generality of the foregoing, this Settlement Agreement and General Release is intended to and shall release the City of Pine Lawn and Steven Blakeney aka Steve Blakeney and each of their agents, successors and assigns from any and all claims of violations arising under 42 U.S.C. §§ 1983, 1988 or any other federal, state, or local statute, ordinance or common law.

7.     The parties agree that the sum paid to Plaintiff is for Plaintiff's alleged non-economic damages including physical injury, pain and suffering, and for reimbursement for Plaintiff's attorney's fees, as more fully set forth in paragraph 1 of this Agreement, and not for punitive damages. Claimant further acknowledges, agrees, covenants and stipulates he is solely responsible for the payment of any and all local, state and/or federal taxes, withholdings, interest and penalties that may be levied on any and all monies paid to him under this Agreement.

8.     City agrees that it shall assert no opposition to an action by Claimant to expunge any record of arrest resulting from the incident upon which Claimant's claims is based.

9.     Each party expressly states and acknowledges that this Agreement sets forth all the promises, agreements, conditions and understandings among the parties concerning the matters set forth herein. There are no oral agreements or understandings among the parties hereto effecting this Agreement, and this Agreement supersedes and cancels any and all previous negotiations, arrangements, understandings and agreements (either oral or written), if any, among the parties hereto with respect to the matters set forth herein. Subsequent alteration, amendment, change or addition to this Agreement shall not be binding upon the parties hereto unless reduced to writing and signed by them.

4

10.   Each party declares and warrants that no representations made by any party hereto, or by any agent or attorney of any party hereto, or any other representation has induced any party to make this Agreement and that each party hereto is acting upon his/her/its own judgment, belief and knowledge regarding the nature and validity of all claims or potential claims based upon the advice of legal counsel of his/her/its own choosing in making this Settlement Agreement and General Release.

11.   The parties hereto acknowledge and warrant to each other that they have not at any time heretofore assigned to any other person or party all or any portion of any claim, counterclaim, or potential claim, whatsoever that any party may have or may have had against any other party hereto.

12.   This Agreement shall inure to the benefit of the City of Pine Lawn, Missouri, and its executives, Board of Alderman members, elected officials, officers, agents, employees, servants, administrators, legal representatives, successors and assigns, past and present, and anyone claiming through them. The Claimant acknowledges that the consideration described in Paragraph 1 of this Agreement is all that he or his attorneys or representatives are ever to receive from the Defendant, or any person or entity whatsoever, in settlement of the threatened claims pertaining to the Lawsuit, whether in settlement of the Claimant's claim for damages, for pain and suffering, emotional distress, mental anguish, inconvenience, loss of enjoyment of life, nervousness, anxiety, worry, loss of back pay and future pay, if any; for declaratory and injunctive relief; and for reasonable attorneys' fees, costs, or for any other claim of any nature whatsoever. The Claimant further agrees that he is not, and shall not be considered to be, a "prevailing party" with respect to any claims threatened or made in relation to the Lawsuit within the meaning of any statute, rule or other provision of law which is, or may be, in any way applicable hereto.

13.   This Agreement and any controversy or claims arising out of or relating to this Agreement shall be governed by the laws of the State of Missouri.

14.   THE CLAIMANT EXPRESSLY ACKNOWLEDGES THAT HE HAS BEEN COUNSELED BY HIS ATTORNEYS, AND BASED ON THAT CONSULTATION, UNDERSTANDS AND AGREES THAT THIS AGREEMENT FULLY SETTLES, RELEASES, AND DISCHARGES ANY AND ALL CLAIMS RAISED, OR WHICH COULD HAVE BEEN RAISED, IN THE ABOVE-REFERENCED LAWSUIT, AS WELL

5

AS ANY OTHER CLAIM, OF ANY NATURE, WHICH THE CLAIMANT HAS EVER
HAD, NOW HAS, OR MAY HEREINAFTER HAVE AGAINST THE DEFENDANT
CITY OF PINE LAWN OR STEVEN BLAKENEY AKA STEVE BLAKENEY,
WHETHER NOW KNOWN OR UNKNOWN, ARISING FROM THE BEGINNING OF
TIME TO THE DATE OF THIS AGREEMENT, AND THAT THE TERMS OF THIS
AGREEMENT ARE FULLY UNDERSTOOD AND VOLUNTARILY ACCEPTED FOR
THE PURPOSES OF MAKING FULL AND FINAL COMPROMISE AND
SETTLEMENT.

15.     Claimant agrees to complete a Medicare reporting form and return it to counsel
for the City. The parties agree that receipt of this form is a condition precedent to the payment
set forth in paragraph 1. Claimant further warrants and represents that he has not sought any
medical treatment for which Medicare has paid or been requested to pay as a result of any action
of the City or Blakeney.

16.     This Agreement may be executed in counterparts, and the counterparts shall
constitute one and the same document.

Approved and agreed to by the undersigned:

CLAIMANT:

_____
Sidney Sinclair

10-8-15
Date

STATE OF MISSOURI          )
                           ) SS.
COUNTY OF _____  )

On this 8th day of October 2015, before me personally appeared Sidney Sinclair, to me known to be the
person described in and who executed the foregoing Settlement Agreement and General Release and acknowledged
to me that he executed the same for the purposes therein stated.

IN TESTIMONY WHEREOF I have hereunto set my hand and affixed my official seal in the County and
State aforesaid, the day and year first above written.

_____
Notary Public

My Commission Expires:

PATRICIA L. MILLER
Notary Public - State of Missouri
My Commission Expires March 27, 2016
St. Louis County
Commission #12515763

6

CITY OF PINE LAWN, MISSOURI

*Olimea (Underwood)*
[name]

*Acting Mayor*
[title]

*October 15, 2015*
[date]

STATE OF MISSOURI )
                  ) SS
COUNTY OF ST. LOUIS )

I do hereby certify that _*Olimes Underwood*_ personally known to me to be the person whose name is subscribed to the foregoing instrument, appeared before me this 15 day of October 2015, in person, and acknowledged that he/she signed and delivered this instrument in his official capacity as _*Acting Mayor*_ of the City of Pine Lawn, Missouri, and the duly authorized representative of the City of Pine Lawn, Missouri, with full authority from the Board of Aldermen approving this Agreement, as his/her free and voluntary act, for the uses and purposes therein set forth.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

Notary Public

My Commission Expires: 03/27/16

Roberta J Mehrhoff
Notary Public Notary Seal
State of Missouri County of St Louis City
My Commission Expires 03/27/2016
Commission # 12320676

[END OF DOCUMENT]

7

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This SETTLEMENT AGREEMENT AND GENERAL RELEASE ("Agreement") is made and entered into by and between Nakita Jackson (the "Claimant") and the CITY OF PINE LAWN, MISSOURI, (the "City" or "Defendant") on this 18th day of May 2015. The City of Pine Lawn and Nakita Jackson are sometimes herein individually referred to as "party" or collectively as the "parties".

**WHEREAS**, the Claimant has asserted claims against the Defendant arising from an incident and interaction with former Pine Lawn Officer Steven Blakeney aka Steve Blakeney ("Blakeney") occurring in the in the 4000 block of Peyton in the City of Pine Lawn, MO in December 2012 (hereinafter "Lawsuit"); such claims against the City of Pine Lawn and Blakeney may arise under the United States Constitution, Missouri Constitution, and other state and federal law, including but not limited to 42 USC §§ 1983 and 1988; the Claimant is represented by attorney Stephen Ryals; and

**WHEREAS**, the City and Blakeney have each denied and each continues to deny any wrongdoing or liability to the Claimant; the City is represented by attorneys Blake Hill and William Hellmich of King, Krehbiel & Hellmich, LLC; Blakeney is represented by attorney Mark Zoole; and

**WHEREAS**, the parties and their respective attorneys mediated all of the Claimant's claims at a mediation held on April 20, 2015 at the Offices of Dick Sher and Sher Corwin Winters LLC; the City, Jackson, and Blakeney each attended the mediation along with their respective counsels, and an agreement to settle was reached between the City and Jackson; and

**WHEREAS**, while Blakeney is not a party to this Agreement, he is fully released hereunder as more particularly set forth below; and

**WHEREAS**, the Defendant and the Claimant desire to fully and finally comprise, resolve, and settle claims raised or which could have been raised in any Lawsuit by the Claimant, against all putative defendants to such Lawsuit including but not limited to the City of Pine Lawn and Blakeney, as well as any and all claims of any nature which the Claimant may now have or has at any time in the past had against the City of Pine Lawn or Blakeney.

**NOW, THEREFORE**, in consideration of the foregoing recitations and the mutual and reciprocal promises contained in this Agreement, the parties hereby agree as follows:

1.     Contemporaneously with the execution of this Agreement by the Defendant shall cause to be paid to the Claimant and her attorneys the total sum of Seventy-Five-Thousand Dollars ($75,000.00) by draft made payable to "Nakita Jackson and The Ryals Law Firm, P.C." and delivered to attorney Stephen Ryals. Defendant also agrees to pay in full the mediator's bill directly to Dick Sher for the mediation of April 20, 2015. The payments and amounts set forth in this paragraph fully and completely settle and resolve all claims of the Claimant including but not limited to her claims for all manner of damages, attorney's fees and court costs. No other payments will be made by the Defendant or any other releasee or beneficiary under this Agreement, and Claimant shall be solely responsible for the payment of her own costs and attorney's fees, and any taxes or any other assessments incident to the payments set forth in this paragraph.

2.     It is expressly agreed by and among the parties that the payment made herein by the Defendant is made solely for the purpose of preventing and/or terminating the assertion of the cause of action, as well as any other disputes or claims which the Claimant may have against the City and/or Blakeney arising from any facts now known or unknown. This payment is made without any way admitting any liability, which liability both the City and Blakeney expressly deny. Claimant covenants that she shall not file any lawsuit for the acts, omissions and conduct released herein, and as more particularly set forth below, releases and covenants not to sue the City of Pine Lawn or Steven Blakeney.

3.     The Claimant agrees to satisfy any and all liens arising out of any incident or occurrence relating to the claims and to indemnify and save both the City of Pine Lawn, its agents, employees, officers, Board of Aldermen, representatives and its insurer, and Blakeney, harmless therefrom. The Claimant irrevocably directs her attorney to satisfy any known liens out of the settlement proceeds. The Claimant further represents that there are no known liens in this case.

4.     For and in consideration of the additional sum of One Dollar ($1.00), the Claimant, as well as her attorneys, agree not to publicize or disclose the financial terms of this Agreement, or the discussions leading up to same, either directly or indirectly, to the public generally or to any person or entity. This confidentiality provision specifically includes, but is not limited to, the Claimant's attorneys' agreement not to publish any information concerning this settlement in the Missouri Lawyers Weekly or any other such publication. This confidentiality provision extends to communication by the Claimant or her attorney to any and all persons except spouses, or attorneys or accountants who have a legitimate need to know the terms in order to render

2

professional advice or services, or unless disclosure is authorized or compelled by law. In the event that it is necessary to disclose the terms of this Agreement to an attorney or accountant, the Claimant agrees that such attorney or accountant shall be advised of this provision to maintain the confidentiality of this Agreement. Otherwise, the Claimant (and her attorneys) agrees not to identify or reveal any terms of the Agreement. In response to inquiry, the Claimant agrees to state that "the matter has been settled" or "the case has been resolved to the satisfaction of the parties", or significantly identical language.

This confidentiality provision is intended solely for the benefit of the City and its employees, agents, officers and insurers, may be waived by the City at any time, and is not enforceable against the City. Any comment about any matter protected by this confidentiality provision by City or any employee, agent, officer or insurer shall constitute a waiver of this confidentiality provision. Further, this confidentiality provision is subject to the provisions of the Missouri Sunshine Law and other applicable law, and any disclosure made under compulsion of law or the Order of any Court or administrative agency of proper jurisdiction shall not be deemed a violation of this provision. Insofar as any of the terms of this Agreement must be divulged pursuant to the compulsion of legal process or proceedings, Claimant agrees to take all lawful steps necessary to maintain the confidentiality of the terms of this Agreement, including immediately notifying the City or its attorney if served with or notified of any process seeking information protected by this provision, prior to the disclosure of any such information.

5.      The parties to this Agreement additionally agree to refrain from publicly expressing or in any way publishing any derogatory or disparaging remark concerning the other, subject to the same conditions and safe harbor set forth in paragraph 4 concerning statements made under compulsion of law. Nothing in this Agreement shall prohibit Claimant or her counsel from fully disclosing the facts giving rise to her claims to any law enforcement or governmental entity or agency.

6.      Nakita Jackson, for herself and her heirs, legal representatives, administrators, successors, assigns, trustees, agents, servants, insurers and anyone claiming by, through or under any of them, does hereby WAIVE HER RIGHT TO SUE and COMPLETELY RELEASES AND FOREVER DISCHARGES the City of Pine Lawn, Missouri, and its executives, Board of Aldermen members, elected officials, officers, agents, employees, servants, administrators, legal representatives, successors, assigns, trustees, attorneys, insurers (specifically, the Missouri Public

3

Entity Risk Management Fund ("MOPERM")), and any and all of them, and Steven Blakeney aka Steve Blakeney and his heirs, legal representatives, administrators, successors, assigns, trustees, agents, attorneys, insurers (specifically, MOPERM), and any and all of them, of and from any manner of liabilities, actions, suits, debts, judgments, claims, decisions, controversies, demands and damages whatsoever, in law or in equity, which she has ever had, now has, or may hereinafter have, arising or accruing from the beginning of time to the date of this Settlement Agreement and General Release, whether known or unknown, against the City of Pine Lawn, Missouri, and its executives, Board of Aldermen members, elected officials, officers, agents, employees, servants, administers, legal representatives, successors, assigns, trustees, insurers (specifically, MOPERM) and attorneys, and against Steven Blakeney aka Steve Blakeney and his heirs, legal representatives, administrators, successors, assigns, trustees, agents, insurers (specifically, MOPERM), and attorneys, including but not limited to all claims which Claimant raised or could have been raised in any Lawsuit, as well as all other causes of action of any nature in any legal forum, court of law, or administrative agency, under the common law, or any federal or state statute or city ordinance.

Without limiting the generality of the foregoing, this Settlement Agreement and General Release is intended to and shall release the City of Pine Lawn and Steven Blakeney aka Steve Blakeney and each of their agents, successors and assigns from any and all claims of violations arising under 42 U.S.C. §§ 1983, 1988 or any other federal, state, or local statute, ordinance or common law.

7.      The parties agree that the sum paid to Plaintiff is for Plaintiff's alleged non-economic damages including physical injury, pain and suffering, and for reimbursement for Plaintiff's attorney's fees, as more fully set forth in paragraph 1 of this Agreement, and not for punitive damages. Claimant further acknowledges, agrees, covenants and stipulates she is solely responsible for the payment of any and all local, state and/or federal taxes, withholdings, interest and penalties that may be levied on any and all monies paid to her under this Agreement.

8.      City agrees that it shall assert no opposition to an action by Claimant to expunge any record of arrest resulting from the incident upon which Claimant's claims is based.

9.      Each party expressly states and acknowledges that this Agreement sets forth all the promises, agreements, conditions and understandings among the parties concerning the matters set forth herein. There are no oral agreements or understandings among the parties hereto effecting this Agreement, and this Agreement supersedes and cancels any and all previous negotiations,

4

arrangements, understandings and agreements (either oral or written), if any, among the parties hereto with respect to the matters set forth herein. Subsequent alteration, amendment, change or addition to this Agreement shall not be binding upon the parties hereto unless reduced to writing and signed by them.

10.     Each party declares and warrants that no representations made by any party hereto, or by any agent or attorney of any party hereto, or any other representation has induced any party to make this Agreement and that each party hereto is acting upon his/her/its own judgment, belief and knowledge regarding the nature and validity of all claims or potential claims based upon the advice of legal counsel of his/her/its own choosing in making this Settlement Agreement and General Release.

11.     The parties hereto acknowledge and warrant to each other that they have not at any time heretofore assigned to any other person or party all or any portion of any claim, counterclaim, or potential claim, whatsoever that any party may have or may have had against any other party hereto.

12.     This Agreement shall inure to the benefit of the City of Pine Lawn, Missouri, and its executives, Board of Alderman members, elected officials, officers, agents, employees, servants, administrators, legal representatives, successors and assigns, past and present, and anyone claiming through them. The Claimant acknowledges that the consideration described in Paragraph 1 of this Agreement is all that she or her attorneys or representatives are ever to receive from the Defendant, or any person or entity whatsoever, in settlement of the threatened claims pertaining to the Lawsuit, whether in settlement of the Claimant's claim for damages, for pain and suffering, emotional distress, mental anguish, inconvenience, loss of enjoyment of life, nervousness, anxiety, worry, loss of back pay and future pay, if any; for declaratory and injunctive relief; and for reasonable attorneys' fees, costs, or for any other claim of any nature whatsoever. The Claimant further agrees that she is not, and shall not be considered to be, a "prevailing party" with respect to any claims threatened or made in relation to the Lawsuit within the meaning of any statute, rule or other provision of law which is, or may be, in any way applicable hereto.

13.     This Agreement and any controversy or claims arising out of or relating to this Agreement shall be governed by the laws of the State of Missouri.

14.     **THE CLAIMANT EXPRESSLY ACKNOWLEDGES THAT SHE HAS BEEN COUNSELED BY HER ATTORNEYS, AND BASED ON THAT CONSULTATION,**

5

UNDERSTANDS AND AGREES THAT THIS AGREEMENT FULLY SETTLES, RELEASES, AND DISCHARGES ANY AND ALL CLAIMS RAISED, OR WHICH COULD HAVE BEEN RAISED, IN THE ABOVE-REFERENCED LAWSUIT, AS WELL AS ANY OTHER CLAIM, OF ANY NATURE, WHICH THE CLAIMANT HAS EVER HAD, NOW HAS, OR MAY HEREINAFTER HAVE AGAINST THE DEFENDANT CITY OF PINE LAWN OR STEVEN BLAKENEY AKA STEVE BLAKENEY, WHETHER NOW KNOWN OR UNKNOWN, ARISING FROM THE BEGINNING OF TIME TO THE DATE OF THIS AGREEMENT, AND THAT THE TERMS OF THIS AGREEMENT ARE FULLY UNDERSTOOD AND VOLUNTARILY ACCEPTED FOR THE PURPOSES OF MAKING FULL AND FINAL COMPROMISE AND SETTLEMENT.

15.    Claimant agrees to complete a Medicare reporting form and return it to counsel for the City. The parties agree that receipt of this form is a condition precedent to the payment set forth in paragraph 1. Claimant further warrants and represents that she has not sought any medical treatment for which Medicare has paid or been requested to pay as a result of any action of the City or Blakeney.

16.    This Agreement may be executed in counterparts, and the counterparts shall constitute one and the same document.

Approved and agreed to by the undersigned:

CLAIMANT:

_____
Nakita Jackson

5/18/2015
Date

STATE OF MISSOURI        )
                         ) SS
COUNTY OF ST. LOUIS      )

On this ____ day of May 2015, before me personally appeared Nakita Jackson, to me known to be the person described in and who executed the foregoing Settlement Agreement and General Release and acknowledged to me that she executed the same for the purposes therein stated.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

My Commission Expires:

_____
Notary Public

6

CITY OF PINE LAWN, MISSOURI

X _Olimos Underwood_
[name]

X _Alderperson / Acting Mayor_
[title]

X _05/14/2015_
[date]

STATE OF MISSOURI          )
                           ) SS
COUNTY OF ST. LOUIS        )

I do hereby certify that _Olimos Underwood_ personally known to me to be the person whose name is subscribed to the foregoing instrument, appeared before me this _14th_ day of May, 2015, in person, and acknowledged that she signed and delivered this instrument in his official capacity as _Acting Mayor_ of the City of Pine Lawn, Missouri, and the duly authorized representative of the City of Pine Lawn, Missouri, with full authority from the Board of Aldermen approving this Agreement, as her free and voluntary act, for the uses and purposes therein set forth.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

_Roberta J Kehlhoff_
Notary Public

My Commission Expires:

_03/27/16_

Roberta J Kehlhoff
Notary Public Notary Seal
State of Missouri County of St Louis City
My Commission Expires 03/27/2016
Commission # 12320678

[END OF DOCUMENT]

7

**SETTLEMENT AGREEMENT AND GENERAL RELEASE**

This SETTLEMENT AGREEMENT AND GENERAL RELEASE ("Agreement") is made and entered into by and between Kaleisha Beck, individually and as next friend for her minor child more particularly identified in St. Louis County Cause Number 15SL-CC04254 (collectively the "Claimant" or "Claimants") and the CITY OF PINE LAWN, MISSOURI, (the "City" or "Defendant") on this 18th day of December 2015. The City and Claimants are sometimes herein individually referred to as "party" or collectively as the "parties".

WHEREAS, the Claimant has asserted claims against the Defendant arising from an incident and interaction with former Pine Lawn Officer Steven Blakeney aka Steve Blakeney ("Blakeney") occurring on James A. Harvey Lane in Wellston, Missouri in March 2013 (hereinafter "Lawsuit"); such claims against the City of Pine Lawn and Blakeney may arise under the United States Constitution, Missouri Constitution, and other state and federal law, including but not limited to 42 USC §§ 1983 and 1988; the Claimant is represented by attorney Stephen Ryals; and

WHEREAS, the City and Blakeney have each denied and each continues to deny any wrongdoing or liability to the Claimant; the City is represented by attorneys Blake Hill and William Hellmich of King, Krehbiel & Hellmich, LLC; Blakeney is represented by attorney Mark Zoole;

WHEREAS, the Defendant and the Claimant desire to fully and finally comprise, resolve, and settle claims raised or which could have been raised in any Lawsuit by the Claimant, against all putative defendants to such Lawsuit including but not limited to the City of Pine Lawn and Blakeney, as well as any and all claims of any nature which the Claimant may now have or has at any time in the past had against the City of Pine Lawn or Blakeney; and

WHEREAS, the parties specifically desire that this Agreement fully and finally settle all claims of all occupants of the residence at the scene of the occurrence which is the subject of the Lawsuit, including the minor children of the Claimant, as settlement is in the best interest of such minor children; and

WHEREAS, the parties have caused to be filed a friendly suit styled *Racquel Wooten et. Al. v. City of Pine Lawn*, Cause Number 15SL-CC04254 solely for the purposes of the appointment of next friend on behalf of the minor child(ren) and to obtain court

EXHIBIT

II

approval of the settlement to the extent required by law (hereinafter the "Friendly Suit"); and

WHEREAS, while Blakeney is not a party to this Agreement, he is fully released hereunder as more particularly set forth below.

NOW, THEREFORE, in consideration of the foregoing recitations and the mutual and reciprocal promises contained in this Agreement, the parties hereby agree as follows:

1.     Contemporaneously with the execution of this Agreement by the Defendant shall cause to be paid to the Claimant and her attorneys the total sum of Thirty-Two Thousand Five-Hundred Dollars ($32,500.00) by draft made payable to "Kaleisha Beck and The Ryals Law Firm, P.C." and delivered to attorney Stephen Ryals.  The payments and amounts set forth in this paragraph fully and completely settle and resolve all claims of the Claimant including but not limited to her claims for all manner of damages, attorney's fees and court costs.  No other payments will be made by the Defendant or any other releasee or beneficiary under this Agreement, and Claimant shall be solely responsible for the payment of her own costs and attorney's fees, and any taxes or any other assessments incident to the payments set forth in this paragraph.

2.     It is expressly agreed by and among the parties that the payment made herein by the Defendant is made solely for the purpose of preventing and/or terminating the assertion of the cause of action, as well as any other disputes or claims which the Claimant may have against the City and/or Blakeney arising from any facts now known or unknown.  This payment is made without any way admitting any liability, which liability both the City and Blakeney expressly deny. Claimant covenants that she shall not file any lawsuit for the acts, omissions and conduct released herein, and as more particularly set forth below, releases and covenants not to sue the City of Pine Lawn or Steven Blakeney.

3.     The Claimant agrees to satisfy any and all liens arising out of any incident or occurrence relating to the claims and to indemnify and save both the City of Pine Lawn, its agents, employees, officers, Board of Aldermen, representatives and its insurer, and Blakeney, harmless therefrom.  The Claimant irrevocably directs her attorney to satisfy any known liens out of the settlement proceeds.  The Claimant further represents that there are no known liens in this case.

4.     Claimant Kaleish Beck, as Next Friend of S.M., her minor child, warrants and expressly represents and stipulates:

2

    a. that she is the natural mother and Next Friend of S.M., who is more particularly identified in the Friendly Suit;

    b. that Claimant also for the benefit of her minor child(ren) will hold in trust for the benefit of S.M., her minor child, such sum and portion as directed by the Court in the Friendly Suit; and

    c. that Kaleisha Beck will hold harmless the City, Blakeney and all Releasees under this Agreement for any failure to make such allocation pursuant to any such Court Order; and

    d. Kaleisha Beck will defend, hold harmless and indemnify the City, Blakeney, and all Releasees under this Agreement from any and all claims of S.M. that may arise from any matter which is the subject of this Agreement.

    5.    For and in consideration of the additional sum of One Dollar ($1.00), the Claimant, as well as her attorneys, agree not to publicize or disclose the financial terms of this Agreement, or the discussions leading up to same, either directly or indirectly, to the public generally or to any person or entity. This confidentiality provision specifically includes, but is not limited to, the Claimant's attorneys' agreement not to publish any information concerning this settlement in the Missouri Lawyers Weekly or any other such publication. This confidentiality provision extends to communication by the Claimant or her attorney to any and all persons except spouses, or attorneys or accountants who have a legitimate need to know the terms in order to render professional advice or services, or unless disclosure is authorized or compelled by law. In the event that it is necessary to disclose the terms of this Agreement to an attorney or accountant, the Claimant agrees that such attorney or accountant shall be advised of this provision to maintain the confidentiality of this Agreement. Otherwise, the Claimant (and her attorneys) agrees not to identify or reveal any terms of the Agreement. In response to inquiry, the Claimant agrees to state that "the matter has been settled" or "the case has been resolved to the satisfaction of the parties", or significantly identical language.

    This confidentiality provision is intended solely for the benefit of the City and its employees, agents, officers and insurers, may be waived by the City at any time, and is not enforceable against the City. Any comment about any matter protected by this confidentiality provision by City or any employee, agent, officer or insurer shall constitute a waiver of this confidentiality provision. Further, this confidentiality provision is subject to the provisions of the

3

Missouri Sunshine Law and other applicable law, and any disclosure made under compulsion of law or the Order of any Court or administrative agency of proper jurisdiction shall not be deemed a violation of this provision. Insofar as any of the terms of this Agreement must be divulged pursuant to the compulsion of legal process or proceedings, Claimant agrees to take all lawful steps necessary to maintain the confidentiality of the terms of this Agreement, including immediately notifying the City or its attorney if served with or notified of any process seeking information protected by this provision, prior to the disclosure of any such information.

6.      The parties to this Agreement additionally agree to refrain from publicly expressing or in any way publishing any derogatory or disparaging remark concerning the other, subject to the same conditions and safe harbor set forth in paragraph 5 concerning statements made under compulsion of law. Nothing in this Agreement shall prohibit Claimant or her counsel from fully disclosing the facts giving rise to her claims to any law enforcement or governmental entity or agency.

7.      Claimant, for herself and as Next Friend of her minor child(ren), and for her heirs, legal representatives, administrators, successors, assigns, trustees, agents, servants, insurers and anyone claiming by, through or under any of them, does hereby WAIVE HER RIGHT TO SUE and COMPLETELY RELEASES AND FOREVER DISCHARGES the City of Pine Lawn, Missouri, and its executives, Board of Aldermen members, elected officials, officers, agents, employees, servants, administrators, legal representatives, successors, assigns, trustees, attorneys, insurers (specifically, the Missouri Public Entity Risk Management Fund ("MOPERM")), and any and all of them, and Steven Blakeney aka Steve Blakeney and his heirs, legal representatives, administrators, successors, assigns, trustees, agents, attorneys, insurers (specifically, MOPERM), and any and all of them, of and from any manner of liabilities, actions, suits, debts, judgments, claims, decisions, controversies, demands and damages whatsoever, in law or in equity, which Claimant has ever had, now has, or may hereinafter have, arising or accruing from the beginning of time to the date of this Settlement Agreement and General Release, whether known or unknown, against the City of Pine Lawn, Missouri, and its executives, Board of Aldermen members, elected officials, officers, agents, employees, servants, administers, legal representatives, successors, assigns, trustees, insurers (specifically, MOPERM) and attorneys, and against Steven Blakeney aka Steve Blakeney and his heirs, legal representatives, administrators, successors, assigns, trustees, agents, insurers (specifically, MOPERM), and attorneys, including but not limited to all

4

claims which Claimant raised or could have been raised in any Lawsuit, as well as all other causes of action of any nature in any legal forum, court of law, or administrative agency, under the common law, or any federal or state statute or city ordinance.

Without limiting the generality of the foregoing, this Settlement Agreement and General Release is intended to and shall release the City of Pine Lawn and Steven Blakeney aka Steve Blakeney and each of their agents, successors and assigns from any and all claims of violations arising under 42 U.S.C. §§ 1983, 1988 or any other federal, state, or local statute, ordinance or common law.

8. The parties agree that the sum paid to Plaintiff is for Claimant's alleged non-economic damages including physical injury, pain and suffering, and for reimbursement for Plaintiff's attorney's fees, as more fully set forth in paragraph 1 of this Agreement, and not for punitive damages. Claimant further acknowledges, agrees, covenants and stipulates she is solely responsible for the payment of any and all local, state and/or federal taxes, withholdings, interest and penalties that may be levied on any and all monies paid to her under this Agreement.

9. City agrees that it shall assert no opposition to an action by Claimant to expunge any record of arrest resulting from the incident upon which Claimant's claims is based.

10. Each party expressly states and acknowledges that this Agreement sets forth all the promises, agreements, conditions and understandings among the parties concerning the matters set forth herein. There are no oral agreements or understandings among the parties hereto effecting this Agreement, and this Agreement supersedes and cancels any and all previous negotiations, arrangements, understandings and agreements (either oral or written), if any, among the parties hereto with respect to the matters set forth herein. Subsequent alteration, amendment, change or addition to this Agreement shall not be binding upon the parties hereto unless reduced to writing and signed by them.

11. Each party declares and warrants that no representations made by any party hereto, or by any agent or attorney of any party hereto, or any other representation has induced any party to make this Agreement and that each party hereto is acting upon his/her/its own judgment, belief and knowledge regarding the nature and validity of all claims or potential claims based upon the advice of legal counsel of his/her/its own choosing in making this Settlement Agreement and General Release.

5

12.     The parties hereto acknowledge and warrant to each other that they have not at any time heretofore assigned to any other person or party all or any portion of any claim, counterclaim, or potential claim, whatsoever that any party may have or may have had against any other party hereto.

13.     This Agreement shall inure to the benefit of the City of Pine Lawn, Missouri, and its executives, Board of Alderman members, elected officials, officers, agents, employees, servants, administrators, legal representatives, successors and assigns, past and present, and anyone claiming through them. The Claimant acknowledges that the consideration described in Paragraph 1 of this Agreement is all that she or her attorneys or representatives are ever to receive from the Defendant, or any person or entity whatsoever, in settlement of the threatened claims pertaining to the Lawsuit, whether in settlement of the Claimant's claim for damages, for pain and suffering, emotional distress, mental anguish, inconvenience, loss of enjoyment of life, nervousness, anxiety, worry, loss of back pay and future pay, if any; for declaratory and injunctive relief; and for reasonable attorneys' fees, costs, or for any other claim of any nature whatsoever. The Claimant further agrees that she is not, and shall not be considered to be, a "prevailing party" with respect to any claims threatened or made in relation to the Lawsuit within the meaning of any statute, rule or other provision of law which is, or may be, in any way applicable hereto.

14.     This Agreement and any controversy or claims arising out of or relating to this Agreement shall be governed by the laws of the State of Missouri.

15.     Claimant agrees to complete a Medicare reporting form and return it to counsel for the City. The parties agree that receipt of this form is a condition precedent to the payment set forth in paragraph 1. Claimant further warrants and represents that she has not sought any medical treatment for which Medicare has paid or been requested to pay as a result of any action of the City or Blakeney.

16.     This Agreement may be executed in counterparts, and the counterparts shall constitute one and the same document.

17.     Because this Agreement expressly releases all claims of S.M., a minor, the parties agree to the prosecution of the Friendly Suit for the sole and express purpose of obtaining court approval of the minor settlement in accordance with all applicable law. Notwithstanding any other provision in this Agreement, the performance of all covenants and agreements herein are contingent upon such Court approval by Court order in the

6

Friendly Suit. If an order approving this settlement has not been entered within ninety (90) calendar days of the execution of this Agreement by both parties, this Agreement shall become null and void. Such order shall be incorporated into this Agreement by reference.

18.     Upon entry of the order approving minor settlement and the payment of the funds set forth herein, Claimant shall within five (5) business days thereof dismiss all claims in the Friendly Suit with prejudice.

19.     THE CLAIMANT EXPRESSLY ACKNOWLEDGES THAT SHE HAS BEEN COUNSELED BY HER ATTORNEYS, AND BASED ON THAT CONSULTATION, UNDERSTANDS AND AGREES THAT THIS AGREEMENT FULLY SETTLES, RELEASES, AND DISCHARGES ANY AND ALL CLAIMS RAISED, OR WHICH COULD HAVE BEEN RAISED, IN THE ABOVE-REFERENCED LAWSUIT, AS WELL AS ANY OTHER CLAIM, OF ANY NATURE, WHICH THE CLAIMANT HAS EVER HAD, NOW HAS, OR MAY HEREINAFTER HAVE AGAINST THE DEFENDANT CITY OF PINE LAWN OR STEVEN BLAKENEY AKA STEVE BLAKENEY, WHETHER NOW KNOWN OR UNKNOWN, ARISING FROM THE BEGINNING OF TIME TO THE DATE OF THIS AGREEMENT, AND THAT THE TERMS OF THIS AGREEMENT ARE FULLY UNDERSTOOD AND VOLUNTARILY ACCEPTED FOR THE PURPOSES OF MAKING FULL AND FINAL COMPROMISE AND SETTLEMENT.

Approved and agreed to by the undersigned:

CLAIMANT:

_Kaleisha Beck_
Kaleisha Beck, Next Friend and Natural Mother to S.M.

_12/18/2015_
Date

STATE OF MISSOURI     )
                      ) ss
COUNTY OF _St Louis_  )

On this _18th_ day of December 2015, before me personally appeared Kaleisha Beck, to me known to be the person described in and who executed the foregoing Settlement Agreement and General Release and acknowledged to me that she executed the same for the purposes therein stated.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

_anne Besmer_
~~Notary Public~~ Deputy Clerk, St. Louis County

~~My Commission Expires:~~

7

CITY OF PINE LAWN, MISSOURI

_Adrian Wright_
[name]

_INTERM - Mayor_
[title]

_2/4/16_
[date]

STATE OF MISSOURI          )
                           ) SS
COUNTY OF ST. LOUIS        )

I do hereby certify that _ADRIAN WRIGHT_ personally known to me to be the person whose name is subscribed to the foregoing instrument, appeared before me this _4th_ day of December, 2015, in person, and acknowledged that she signed and delivered this instrument in his official capacity as _Interm Mayor_ of the City of Pine Lawn, Missouri, and the duly authorized representative of the City of Pine Lawn, Missouri, with full authority from the Board of Aldermen approving this Agreement, as her free and voluntary act, for the uses and purposes therein set forth.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

_Roberta J Mehlhoff_
Notary Public

My Commission Expires: _03/27/16_

```
Roberta J Mehlhoff
Notary Public Notary Seal
State of Missouri County of St Louis City
My Commission Expires 03/27/2016
Commission # 12320678
```

[END OF DOCUMENT]

8

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This SETTLEMENT AGREEMENT AND GENERAL RELEASE ("Agreement") is made and entered into by and between Racquel Wooten, individually and as next friend for her minor children more particularly identified in St. Louis County Cause Number 15SL-CC04254 (collectively the "Claimant" or "Claimants") and the CITY OF PINE LAWN, MISSOURI, (the "City" or "Defendant") on this 18th day of December 2015. The City and Claimants are sometimes herein individually referred to as "party" or collectively as the "parties".

WHEREAS, the Claimant has asserted claims against the Defendant arising from an incident and interaction with former Pine Lawn Officer Steven Blakeney aka Steve Blakeney ("Blakeney") occurring on James A. Harvey Lane in Wellston, Missouri in March 2013 (hereinafter "Lawsuit"); such claims against the City of Pine Lawn and Blakeney may arise under the United States Constitution, Missouri Constitution, and other state and federal law, including but not limited to 42 USC §§ 1983 and 1988; the Claimant is represented by attorney Stephen Ryals; and

WHEREAS, the City and Blakeney have each denied and each continues to deny any wrongdoing or liability to the Claimant; the City is represented by attorneys Blake Hill and William Hellmich of King, Krehbiel & Hellmich, LLC; Blakeney is represented by attorney Mark Zoole;

WHEREAS, the Defendant and the Claimant desire to fully and finally comprise, resolve, and settle claims raised or which could have been raised in any Lawsuit by the Claimant, against all putative defendants to such Lawsuit including but not limited to the City of Pine Lawn and Blakeney, as well as any and all claims of any nature which the Claimant may now have or has at any time in the past had against the City of Pine Lawn or Blakeney; and

WHEREAS, the parties specifically desire that this Agreement fully and finally settle all claims of all occupants of the residence at the scene of the occurrence which is the subject of the Lawsuit, including the minor children of the Claimant, as settlement is in the best interest of such minor children; and

WHEREAS, the parties have caused to be filed a friendly suit styled *Racquel Wooten et. Al. v. City of Pine Lawn*, Cause Number 15SL-CC04254 solely for the purposes of the appointment of next friend on behalf of the minor child(ren) and to obtain court


EXHIBIT
I

approval of the settlement to the extent required by law (hereinafter the "Friendly Suit"); and

WHEREAS, while Blakeney is not a party to this Agreement, he is fully released hereunder as more particularly set forth below.

NOW, THEREFORE, in consideration of the foregoing recitations and the mutual and reciprocal promises contained in this Agreement, the parties hereby agree as follows:

1.      Contemporaneously with the execution of this Agreement by the Defendant shall cause to be paid to the Claimant and her attorneys the total sum of Sixty Thousand Dollars ($60,000.00) by draft made payable to "Racquel Wooten and The Ryals Law Firm, P.C.".and delivered to attorney Stephen Ryals. The payments and amounts set forth in this paragraph fully and completely settle and resolve all claims of the Claimant including but not limited to her claims for all manner of damages, attorney's fees and court costs. No other payments will be made by the Defendant or any other releasee or beneficiary under this Agreement, and Claimant shall be solely responsible for the payment of her own costs and attorney's fees, and any taxes or any other assessments incident to the payments set forth in this paragraph.

2.      It is expressly agreed by and among the parties that the payment made herein by the Defendant is made solely for the purpose of preventing and/or terminating the assertion of the cause of action, as well as any other disputes or claims which the Claimant may have against the City and/or Blakeney arising from any facts now known or unknown. This payment is made without any way admitting any liability, which liability both the City and Blakeney expressly deny. Claimant covenants that she shall not file any lawsuit for the acts, omissions and conduct released herein, and as more particularly set forth below, releases and covenants not to sue the City of Pine Lawn or Steven Blakeney.

3.      The Claimant agrees to satisfy any and all liens arising out of any incident or occurrence relating to the claims and to indemnify and save both the City of Pine Lawn, its agents, employees, officers, Board of Aldermen, representatives and its insurer, and Blakeney, harmless therefrom. The Claimant irrevocably directs her attorney to satisfy any known liens out of the settlement proceeds. The Claimant further represents that there are no known liens in this case.

4.      Claimant Racquel Wooten, as Next Friend of B.H., C.J., R.J., and C.J., her minor children, warrants and expressly represents and stipulates:

2

a. that she is the natural mother and Next Friend of B.H., C.J., R.J., and C.J., her minor children, who more particularly identified in the Friendly Suit;

b. that Claimant also for the benefit of her minor child(ren) will hold in trust for the benefit of B.H., C.J., R.J., and C.J., her minor children, such sum and portion as directed by the Court in the Friendly Suit; and

c. that Racquel Wooten will hold harmless the City, Blakeney and all Releasees under this Agreement for any failure to make such allocation pursuant to any such Court Order; and

d. Racquel Wooten will defend, hold harmless and indemnify the City, Blakeney, and all Releasees under this Agreement from any and all claims of B.H., C.J., R.J., and C.J., her minor children, that may arise from any matter which is the subject of this Agreement.

5.    For and in consideration of the additional sum of One Dollar ($1.00), the Claimant, as well as her attorneys, agree not to publicize or disclose the financial terms of this Agreement, or the discussions leading up to same, either directly or indirectly, to the public generally or to any person or entity. This confidentiality provision specifically includes, but is not limited to, the Claimant's attorneys' agreement not to publish any information concerning this settlement in the Missouri Lawyers Weekly or any other such publication. This confidentiality provision extends to communication by the Claimant or her attorney to any and all persons except spouses, or attorneys or accountants who have a legitimate need to know the terms in order to render professional advice or services, or unless disclosure is authorized or compelled by law. In the event that it is necessary to disclose the terms of this Agreement to an attorney or accountant, the Claimant agrees that such attorney or accountant shall be advised of this provision to maintain the confidentiality of this Agreement. Otherwise, the Claimant (and her attorneys) agrees not to identify or reveal any terms of the Agreement. In response to inquiry, the Claimant agrees to state that "the matter has been settled" or "the case has been resolved to the satisfaction of the parties", or significantly identical language.

This confidentiality provision is intended solely for the benefit of the City and its employees, agents, officers and insurers, may be waived by the City at any time, and is not enforceable against the City. Any comment about any matter protected by this confidentiality provision by City or any employee, agent, officer or insurer shall constitute a waiver of this

3

confidentiality provision. Further, this confidentiality provision is subject to the provisions of the Missouri Sunshine Law and other applicable law, and any disclosure made under compulsion of law or the Order of any Court or administrative agency of proper jurisdiction shall not be deemed a violation of this provision. Insofar as any of the terms of this Agreement must be divulged pursuant to the compulsion of legal process or proceedings, Claimant agrees to take all lawful steps necessary to maintain the confidentiality of the terms of this Agreement, including immediately notifying the City or its attorney if served with or notified of any process seeking information protected by this provision, prior to the disclosure of any such information.

6.      The parties to this Agreement additionally agree to refrain from publicly expressing or in any way publishing any derogatory or disparaging remark concerning the other, subject to the same conditions and safe harbor set forth in paragraph 5 concerning statements made under compulsion of law. Nothing in this Agreement shall prohibit Claimant or her counsel from fully disclosing the facts giving rise to her claims to any law enforcement or governmental entity or agency.

7.      Claimant, for herself and as Next Friend of her minor child(ren), and for her heirs, legal representatives, administrators, successors, assigns, trustees, agents, servants, insurers and anyone claiming by, through or under any of them, does hereby WAIVE HER RIGHT TO SUE and COMPLETELY RELEASES AND FOREVER DISCHARGES the City of Pine Lawn, Missouri, and its executives, Board of Aldermen members, elected officials, officers, agents, employees, servants, administrators, legal representatives, successors, assigns, trustees, attorneys, insurers (specifically, the Missouri Public Entity Risk Management Fund ("MOPERM")), and any and all of them, and Steven Blakeney aka Steve Blakeney and his heirs, legal representatives, administrators, successors, assigns, trustees, agents, attorneys, insurers (specifically, MOPERM), and any and all of them, of and from any manner of liabilities, actions, suits, debts, judgments, claims, decisions, controversies, demands and damages whatsoever, in law or in equity, which Claimant has ever had, now has, or may hereinafter have, arising or accruing from the beginning of time to the date of this Settlement Agreement and General Release, whether known or unknown, against the City of Pine Lawn, Missouri, and its executives, Board of Aldermen members, elected officials, officers, agents, employees, servants, administers, legal representatives, successors, assigns, trustees, insurers (specifically, MOPERM) and attorneys, and against Steven Blakeney aka Steve Blakeney and his heirs, legal representatives, administrators, successors, assigns,

4.

trustees, agents, insurers (specifically, MOPERM), and attorneys, including but not limited to all claims which Claimant raised or could have been raised in any Lawsuit, as well as all other causes of action of any nature in any legal forum, court of law, or administrative agency, under the common law, or any federal or state statute or city ordinance.

Without limiting the generality of the foregoing, this Settlement Agreement and General Release is intended to and shall release the City of Pine Lawn and Steven Blakeney aka Steve Blakeney and each of their agents, successors and assigns from any and all claims of violations arising under 42 U.S.C. §§ 1983, 1988 or any other federal, state, or local statute, ordinance or common law.

8. The parties agree that the sum paid to Plaintiff is for Claimant's alleged non-economic damages including physical injury, pain and suffering, and for reimbursement for Plaintiff's attorney's fees, as more fully set forth in paragraph 1 of this Agreement, and not for punitive damages. Claimant further acknowledges, agrees, covenants and stipulates she is solely responsible for the payment of any and all local, state and/or federal taxes, withholdings, interest and penalties that may be levied on any and all monies paid to her under this Agreement.

9. City agrees that it shall assert no opposition to an action by Claimant to expunge any record of arrest resulting from the incident upon which Claimant's claims is based.

10. Each party expressly states and acknowledges that this Agreement sets forth all the promises, agreements, conditions and understandings among the parties concerning the matters set forth herein. There are no oral agreements or understandings among the parties hereto effecting this Agreement, and this Agreement supersedes and cancels any and all previous negotiations, arrangements, understandings and agreements (either oral or written), if any, among the parties hereto with respect to the matters set forth herein. Subsequent alteration, amendment, change or addition to this Agreement shall not be binding upon the parties hereto unless reduced to writing and signed by them.

11. Each party declares and warrants that no representations made by any party hereto, or by any agent or attorney of any party hereto, or any other representation has induced any party to make this Agreement and that each party hereto is acting upon his/her/its own judgment, belief and knowledge regarding the nature and validity of all claims or potential claims based upon the advice of legal counsel of his/her/its own choosing in making this Settlement Agreement and General Release.

5

12. The parties hereto acknowledge and warrant to each other that they have not at any time heretofore assigned to any other person or party all or any portion of any claim, counterclaim, or potential claim, whatsoever that any party may have or may have had against any other party hereto.

13. This Agreement shall inure to the benefit of the City of Pine Lawn, Missouri, and its executives, Board of Alderman members, elected officials, officers, agents, employees, servants, administrators, legal representatives, successors and assigns, past and present, and anyone claiming through them. The Claimant acknowledges that the consideration described in Paragraph 1 of this Agreement is all that she or her attorneys or representatives are ever to receive from the Defendant, or any person or entity whatsoever, in settlement of the threatened claims pertaining to the Lawsuit, whether in settlement of the Claimant's claim for damages, for pain and suffering, emotional distress, mental anguish, inconvenience, loss of enjoyment of life, nervousness, anxiety, worry, loss of back pay and future pay, if any; for declaratory and injunctive relief; and for reasonable attorneys' fees, costs, or for any other claim of any nature whatsoever. The Claimant further agrees that she is not, and shall not be considered to be, a "prevailing party" with respect to any claims threatened or made in relation to the Lawsuit within the meaning of any statute, rule or other provision of law which is, or may be, in any way applicable hereto.

14. This Agreement and any controversy or claims arising out of or relating to this Agreement shall be governed by the laws of the State of Missouri.

15. Claimant agrees to complete a Medicare reporting form and return it to counsel for the City. The parties agree that receipt of this form is a condition precedent to the payment set forth in paragraph 1. Claimant further warrants and represents that she has not sought any medical treatment for which Medicare has paid or been requested to pay as a result of any action of the City or Blakeney.

16. This Agreement may be executed in counterparts, and the counterparts shall constitute one and the same document.

17. Because this Agreement expressly releases all claims of minor children B.H., C.J., R.J., B.H., and C.J., the parties agree to the prosecution of the Friendly Suit for the sole and express purpose of obtaining court approval of the minor settlement in accordance with all applicable law. Notwithstanding any other provision in this Agreement, the performance of all covenants and agreements herein are contingent upon such Court approval by Court

6

order in the Friendly Suit. If an order approving this settlement has not been entered within ninety (90) calendar days of the execution of this Agreement by both parties, this Agreement shall become null and void. Such order shall be incorporated into this Agreement by reference.

18.   Upon entry of the order approving minor settlement and the payment of the funds set forth herein, Claimant shall within five (5) business days thereof dismiss all claims in the Friendly Suit with prejudice.

19.   THE CLAIMANT EXPRESSLY ACKNOWLEDGES THAT SHE HAS BEEN COUNSELED BY HER ATTORNEYS, AND BASED ON THAT CONSULTATION, UNDERSTANDS AND AGREES THAT THIS AGREEMENT FULLY SETTLES, RELEASES, AND DISCHARGES ANY AND ALL CLAIMS RAISED, OR WHICH COULD HAVE BEEN RAISED, IN THE ABOVE-REFERENCED LAWSUIT, AS WELL AS ANY OTHER CLAIM, OF ANY NATURE, WHICH THE CLAIMANT HAS EVER HAD, NOW HAS, OR MAY HEREINAFTER HAVE AGAINST THE DEFENDANT CITY OF PINE LAWN OR STEVEN BLAKENEY AKA STEVE BLAKENEY, WHETHER NOW KNOWN OR UNKNOWN, ARISING FROM THE BEGINNING OF TIME TO THE DATE OF THIS AGREEMENT, AND THAT THE TERMS OF THIS AGREEMENT ARE FULLY UNDERSTOOD AND VOLUNTARILY ACCEPTED FOR THE PURPOSES OF MAKING FULL AND FINAL COMPROMISE AND SETTLEMENT.

Approved and agreed to by the undersigned:

CLAIMANT: _____          ___12/18/15___

Racquel Wooten, Next Friend and Natural Mother to          Date
B.H., C.J., R.J., B.H. and C.J.

STATE OF MISSOURI          )
                           ) SS
COUNTY OF St. Louis        )

On this 18th day of December 2015, before me personally appeared Racquel Wooten, to me known to be the person described in and who executed the foregoing Settlement Agreement and General Release and acknowledged to me that she executed the same for the purposes therein stated.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.          anne Beamer

                                                                 Notary Public  Deputy Clerk, St. Louis County

My Commission Expires:

7

CITY OF PINE LAWN, MISSOURI

_Adrian Wright_
[name]

_Intern - Mayor_
[title]

_2/4/16_
[date]

STATE OF MISSOURI      )
                       ) SS
COUNTY OF ST. LOUIS    )

    I do hereby certify that _ADRIAN WRIGHT_ personally known to me to be the person whose name is subscribed to the foregoing instrument, appeared before me this _4th_ day of December, 2015, in person, and acknowledged that she signed and delivered this instrument in his official capacity as _Interim Mayor_ of the City of Pine Lawn, Missouri, and the duly authorized representative of the City of Pine Lawn, Missouri, with full authority from the Board of Aldermen approving this Agreement, as her free and voluntary act, for the uses and purposes therein set forth.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

_Roberta J Mehlhoff_   2/4/16
Notary Public

My Commission Expires:   _03/27/16_

Roberta J Mehlhoff
Notary Public Notary Seal
State of Missouri County of St Louis City
My Commission Expires 03/27/2016
Commission # 12320678

[END OF DOCUMENT]

8

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This SETTLEMENT AGREEMENT AND GENERAL RELEASE ("Agreement") is made and entered into by and between Roy Telano and Chasity Telano (individually and collectively the "Claimant" or "Telano") and the CITY OF PINE LAWN, MISSOURI, (the "City" or "Defendant") on this _18th_ day of May 2015. The Defendant and Claimant are sometimes herein individually referred to as "party" or collectively as the "parties".

**WHEREAS,** the Claimant has asserted claims against the Defendant arising from a traffic stop and other interactions and incidents involving former Pine Lawn Officer Steven Blakeney aka Steve Blakeney ("Blakeney") occurring on or about July 19, 2013 and thereafter (hereinafter "Lawsuit"); such claims against the City of Pine Lawn and Blakeney may arise under the United States Constitution, Missouri Constitution, and other state and federal law, including but not limited to 42 USC §§ 1983 and 1988; the Claimant is represented by attorney Stephen Ryals; and

**WHEREAS,** the City and Blakeney have each denied and each continues to deny any wrongdoing or liability to the Claimant; the City is represented by attorneys Blake Hill and William Hellmich of King, Krehbiel & Hellmich, LLC; Blakeney is represented by attorney Mark Zoole; and

**WHEREAS,** the parties and their respective attorneys mediated all of the Claimant's claims at a mediation held on April 20, 2015 at the Offices of Dick Sher and Sher Corwin Winters LLC; the City, Telano, and Blakeney each attended the mediation along with their respective counsels, and an agreement to settle was reached between the City and Telano; and

**WHEREAS,** while Blakeney is not a party to this Agreement, he is fully released hereunder as more particularly set forth below; and

**WHEREAS,** the Defendant and the Claimant desire to fully and finally comprise, resolve, and settle claims raised or which could have been raised in any Lawsuit by the Claimant, against all putative defendants to such Lawsuit including but not limited to the City of Pine Lawn and Blakeney, as well as any and all claims of any nature which the Claimant may now have or has at any time in the past had against the City of Pine Lawn or Blakeney.

**NOW, THEREFORE,** in consideration of the foregoing recitations and the mutual and reciprocal promises contained in this Agreement, the parties hereby agree as follows:

1.      Contemporaneously with the execution of this Agreement by the Defendant shall cause to be paid to the Claimant and his/her attorneys the total sum of Two-Hundred-Twenty-Five-

Thousand Dollars ($225,000.00) by draft made payable to "Roy Telano, Chasity Telano, The Ryals Law Firm, P.C., and Dobson, Goldberg, Berns & Rich, LLP" and delivered to attorney Stephen Ryals. Defendant also agrees to pay in full the mediator's bill directly to Dick Sher for the mediation of April 20, 2015. The payments and amounts set forth in this paragraph fully and completely settle and resolve all claims of the Claimant including but not limited to his/her claims for all manner of damages, attorney's fees and court costs. No other payments will be made by the Defendant or any other releasee or beneficiary under this Agreement, and Claimant shall be solely responsible for the payment of his/her own costs and attorney's fees, and any taxes or any other assessments incident to the payments set forth in this paragraph.

2.     It is expressly agreed by and among the parties that the payment made herein by the Defendant is made solely for the purpose of preventing and/or terminating the assertion of the cause of action, as well as any other disputes or claims which the Claimant may have against the City and/or Blakeney arising from any facts now known or unknown. This payment is made without any way admitting any liability, which liability both the City and Blakeney expressly deny. Claimant covenants that he/she shall not file any lawsuit for the acts, omissions and conduct released herein, and as more particularly set forth below, releases and covenants not to sue the City of Pine Lawn or Steven Blakeney.

3.     The Claimant agrees to satisfy any and all liens arising out of any incident or occurrence relating to the claims and to indemnify and save both the City of Pine Lawn, its agents, employees, officers, Board of Aldermen, representatives and its insurer, and Blakeney, harmless therefrom. The Claimant irrevocably directs his/her attorney to satisfy any known liens out of the settlement proceeds. The Claimant further represents that there are no known liens in this case.

4.     For and in consideration of the additional sum of One Dollar ($1.00), the Claimant, as well as his/her attorneys, agree not to publicize or disclose the financial terms of this Agreement, or the discussions leading up to same, either directly or indirectly, to the public generally or to any person or entity. This confidentiality provision specifically includes, but is not limited to, the Claimant's attorneys' agreement not to publish any information concerning this settlement in the Missouri Lawyers Weekly or any other such publication. This confidentiality provision extends to communication by the Claimant or his/her attorney to any and all persons except spouses, or attorneys or accountants who have a legitimate need to know the terms in order to render professional advice or services, or unless disclosure is authorized or compelled by law. In the

2

event that it is necessary to disclose the terms of this Agreement to an attorney or accountant, the Claimant agrees that such attorney or accountant shall be advised of this provision to maintain the confidentiality of this Agreement. Otherwise, the Claimant (and his/her attorneys) agrees not to identify or reveal any terms of the Agreement. In response to inquiry, the Claimant agrees to state that "the matter has been settled" or "the case has been resolved to the satisfaction of the parties", or significantly identical language.

This confidentiality provision is intended solely for the benefit of the City and its employees, agents, officers and insurers, may be waived by the City at any time, and is not enforceable against the City. Any comment about any matter protected by this confidentiality provision by City or any employee, agent, officer or insurer shall constitute a waiver of this confidentiality provision. Further, this confidentiality provision is subject to the provisions of the Missouri Sunshine Law and other applicable law, and any disclosure made under compulsion of law or the Order of any Court or administrative agency of proper jurisdiction shall not be deemed a violation of this provision. Insofar as any of the terms of this Agreement must be divulged pursuant to the compulsion of legal process or proceedings, Claimant agrees to take all lawful steps necessary to maintain the confidentiality of the terms of this Agreement, including immediately notifying the City or its attorney if served with or notified of any process seeking information protected by this provision, prior to the disclosure of any such information.

5.    The parties to this Agreement additionally agree to refrain from publicly expressing or in any way publishing any derogatory or disparaging remark concerning the other, subject to the same conditions and safe harbor set forth in paragraph 4 concerning statements made under compulsion of law. Nothing in this Agreement shall prohibit Claimant or his/her counsel from fully disclosing the facts giving rise to his/her claims to any law enforcement or governmental entity or agency.

6.    Telano, for himself/herself and his/her heirs, legal representatives, administrators, successors, assigns, trustees, agents, servants, insurers and anyone claiming by, through or under any of them, does hereby WAIVE HIS/HER RIGHT TO SUE and COMPLETELY RELEASES AND FOREVER DISCHARGES the City of Pine Lawn, Missouri, and its executives, Board of Aldermen members, elected officials, officers, agents, employees, servants, administrators, legal representatives, successors, assigns, trustees, attorneys, insurers (specifically, the Missouri Public Entity Risk Management Fund ("MOPERM")), and any and all of them, and Steven Blakeney aka

3

Steve Blakeney and his heirs, legal representatives, administrators, successors, assigns, trustees, agents, attorneys, insurers (specifically, MOPERM), and any and all of them, of and from any manner of liabilities, actions, suits, debts, judgments, claims, decisions, controversies, demands and damages whatsoever, in law or in equity, which he/she has ever had, now has, or may hereinafter have, arising or accruing from the beginning of time to the date of this Settlement Agreement and General Release, whether known or unknown, against the City of Pine Lawn, Missouri, and its executives, Board of Aldermen members, elected officials, officers, agents, employees, servants, administers, legal representatives, successors, assigns, trustees, insurers (specifically, MOPERM) and attorneys, and against Steven Blakeney aka Steve Blakeney and his heirs, legal representatives, administrators, successors, assigns, trustees, agents, insurers (specifically, MOPERM), and attorneys, including but not limited to all claims which Claimant raised or could have been raised in any Lawsuit, as well as all other causes of action of any nature in any legal forum, court of law, or administrative agency, under the common law, or any federal or state statute or city ordinance.

Without limiting the generality of the foregoing, this Settlement Agreement and General Release is intended to and shall release the City of Pine Lawn and Steven Blakeney aka Steve Blakeney and each of their agents, successors and assigns from any and all claims of violations arising under 42 U.S.C. §§ 1983, 1988 or any other federal, state, or local statute, ordinance or common law.

7.      The parties agree that the sum paid to Plaintiff is for Plaintiff's alleged non-economic damages including physical injury, pain and suffering, and for reimbursement for Plaintiff's attorney's fees, as more fully set forth in paragraph 1 of this Agreement, and not for punitive damages. Claimant further acknowledges, agrees, covenants and stipulates he/she is solely responsible for the payment of any and all local, state and/or federal taxes, withholdings, interest and penalties that may be levied on any and all monies paid to her under this Agreement.

8.      City agrees that it shall assert no opposition to an action by Claimant to expunge any record of arrest resulting from the incident upon which Claimant's claims is based.

9.      Each party expressly states and acknowledges that this Agreement sets forth all the promises, agreements, conditions and understandings among the parties concerning the matters set forth herein. There are no oral agreements or understandings among the parties hereto effecting this Agreement, and this Agreement supersedes and cancels any and all previous negotiations,

4

arrangements, understandings and agreements (either oral or written), if any, among the parties hereto with respect to the matters set forth herein. Subsequent alteration, amendment, change or addition to this Agreement shall not be binding upon the parties hereto unless reduced to writing and signed by them.

10.     Each party declares and warrants that no representations made by any party hereto, or by any agent or attorney of any party hereto, or any other representation has induced any party to make this Agreement and that each party hereto is acting upon his/her/its own judgment, belief and knowledge regarding the nature and validity of all claims or potential claims based upon the advice of legal counsel of his/her/its own choosing in making this Settlement Agreement and General Release.

11.     The parties hereto acknowledge and warrant to each other that they have not at any time heretofore assigned to any other person or party all or any portion of any claim, counterclaim, or potential claim, whatsoever that any party may have or may have had against any other party hereto.

12.     This Agreement shall inure to the benefit of the City of Pine Lawn, Missouri, and its executives, Board of Alderman members, elected officials, officers, agents, employees, servants, administrators, legal representatives, successors and assigns, past and present, and anyone claiming through them. The Claimant acknowledges that the consideration described in Paragraph 1 of this Agreement is all that he/she or his/her attorneys or representatives are ever to receive from the Defendant, or any person or entity whatsoever, in settlement of the threatened claims pertaining to the Lawsuit, whether in settlement of the Claimant's claim for damages, for pain and suffering, emotional distress, mental anguish, inconvenience, loss of enjoyment of life, nervousness, anxiety, worry, loss of back pay and future pay, if any; for declaratory and injunctive relief; and for reasonable attorneys' fees, costs, or for any other claim of any nature whatsoever. The Claimant further agrees that he/she is not, and shall not be considered to be, a "prevailing party" with respect to any claims threatened or made in relation to the Lawsuit within the meaning of any statute, rule or other provision of law which is, or may be, in any way applicable hereto.

13.     This Agreement and any controversy or claims arising out of or relating to this Agreement shall be governed by the laws of the State of Missouri.

14.     **THE CLAIMANT EXPRESSLY ACKNOWLEDGES THAT HE/SHE HAS BEEN COUNSELED BY HIS/HER ATTORNEYS, AND BASED ON THAT**

5

CONSULTATION, UNDERSTANDS AND AGREES THAT THIS AGREEMENT FULLY SETTLES, RELEASES, AND DISCHARGES ANY AND ALL CLAIMS RAISED, OR WHICH COULD HAVE BEEN RAISED, IN THE ABOVE-REFERENCED LAWSUIT, <u>AS WELL AS ANY OTHER CLAIM, OF ANY NATURE</u>, WHICH THE CLAIMANT HAS EVER HAD, NOW HAS, OR MAY HEREINAFTER HAVE AGAINST THE DEFENDANT CITY OF PINE LAWN OR STEVEN BLAKENEY AKA STEVE BLAKENEY, WHETHER NOW KNOWN OR UNKNOWN, ARISING FROM THE BEGINNING OF TIME TO THE DATE OF THIS AGREEMENT, AND THAT THE TERMS OF THIS AGREEMENT ARE FULLY UNDERSTOOD AND VOLUNTARILY ACCEPTED FOR THE PURPOSES OF MAKING FULL AND FINAL COMPROMISE AND SETTLEMENT.

      15.    Claimant agrees to complete a Medicare reporting form and return it to counsel for the City. The parties agree that receipt of this form is a condition precedent to the payment set forth in paragraph 1. Claimant further warrants and represents that he/she has not sought any medical treatment for which Medicare has paid or been requested to pay as a result of any action of the City or Blakeney.

      16.    This Agreement may be executed in counterparts, and the counterparts shall constitute one and the same document.

      Approved and agreed to by the undersigned:

CLAIMANT:

*Roy Anthony Telano*
Roy Telano
**05/18/15**
Date

STATE OF MISSOURI    )
                  ) SS
COUNTY OF ST. LOUIS  )

      On this ____ day of May 2015, before me personally appeared Roy Telano, to me known to be the person described in and who executed the foregoing Settlement Agreement and General Release and acknowledged to me that he executed the same for the purposes therein stated.

      IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

_____
Notary Public

My Commission Expires:

6

CLAIMANT:

*Chasity S. Telano*

Chasity Telano

**5/18/15**

Date

STATE OF MISSOURI     )
                           ) SS

COUNTY OF ST. LOUIS    )

      On this _____ day of May 2015, before me personally appeared Chasity Telano, to me known to be the person described in and who executed the foregoing Settlement Agreement and General Release and acknowledged to me that she executed the same for the purposes therein stated.

      IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

                                    _____
                                      Notary Public

My Commission Expires:

7

CITY OF PINE LAWN, MISSOURI

x _James Underwood_
[name]

x _Alderperson / Acting Mayor_
[title]

x _05/14/2015_
[date]

STATE OF MISSOURI        )
                         ) SS
COUNTY OF ST. LOUIS      )

I do hereby certify that _OLIMPS Underwood_ personally known to me to be the person whose name is subscribed to the foregoing instrument, appeared before me this _14th_ day of May, 2015, in person, and acknowledged that she signed and delivered this instrument in his official capacity as _Acting Mayor_ of the City of Pine Lawn, Missouri, and the duly authorized representative of the City of Pine Lawn, Missouri, with full authority from the Board of Aldermen approving this Agreement, as her free and voluntary act, for the uses and purposes therein set forth.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

_____
Notary Public

My Commission Expires:

_03/27/16_

Roberta J Mehlhoff
Notary Public Notary Seal
State of Missouri County of St Louis City
My Commission Expires 03/27/2016
Commission # 12320678

[END OF DOCUMENT]

8

*The*

# HOLLINGSWORTH
## LAW FIRM

Dewey G. Hollingsworth
Attorney at Law

Christopher G. Hollingsworth
Attorney at Law

### FAX TRANSMITTAL

To:    Carolina Edwards / Steve Ryals

Date:  10-2-15

No. of Pages (including cover page):    8

Fax Number:        314-526-0061
From:

( ) DEWEY G. HOLLINGSWORTH
(X) CHRISTOPHER G. HOLLINGSWORTH

Re: CONFIDENTIAL
Jordan Martner- Document Requested and Notarized

IMPORTANT: This message is intended for the use of the individual or entity to which it is addressed
and may contain information that is privileged, confidential and exempt from disclosure under applicable
law. If the reader of this message is not the intended recipient, or the employee or agent responsible for
delivering the message to the intended recipient, you are hereby notified that any dissemination,
distribution or copying of this communication is strictly prohibited. If you have received this
communication in error, please notify us immediately by telephone and return the original message to us
at the address below via the United States Postal Service. Thank you.

## IF THERE ARE ANY COMPLICATIONS WITH THIS TRANSMISSION, PLEASE CONTACT Christopher AT (630) 701-1700.

AURORA OFFICE • 1700 N. Farnsworth Ave., Suite 27 • Aurora, Illinois 60505
• Telephone: 630.701.1700 • Fax: 630.701.1704 •

OSWEGO OFFICE • 123 W. Washington St. Suite 221• Oswego, Illinois 60543
•Telephone 630.554.1788 • Fax: 630.701.1704 •
E-mail: dewey@hollingsworthlaw.net • chris@hollingsworthlaw.net

<u>SETTLEMENT AGREEMENT AND GENERAL RELEASE</u>

This SETTLEMENT AGREEMENT AND GENERAL RELEASE ("Agreement") is made and entered into by and between Jordan Martner (the "Claimant" or "Martner") and the CITY OF PINE LAWN, MISSOURI, (the "City" or "Defendant") on this ___ day of August, 2015. The Defendant and Claimant are sometimes herein individually referred to as "party" or collectively as the "parties".

WHEREAS, the Claimant has asserted claims against the Defendant arising from a traffic stop and other interactions and incidents involving former Pine Lawn Officer Steven Blakeney aka Steve Blakeney ("Blakeney") occurring on or about April 10, 2014 and thereafter (hereinafter "Lawsuit"); such claims against the City of Pine Lawn and Blakeney may arise under the United States Constitution, Missouri Constitution, and other state and federal law, including but not limited to 42 USC §§ 1983 and 1988; the Claimant is represented by attorneys Stephen Ryals and Shawn Goulet; and

WHEREAS, the City has filed and continues to prosecute certain charges alleging violation of Pine Lawn municipal ordinance arising from the encounter and arrest of Claimant, and

WHEREAS, the City and Blakeney have each denied and each continues to deny any wrongdoing or liability to the Claimant; the City is represented by attorneys Blake Hill and William Hellmich of King, Krehbiel & Hellmich, LLC; Blakeney is represented by attorney Mark Zoole; and

WHEREAS, while Blakeney is not a party to this Agreement, he is fully released hereunder as more particularly set forth below; and

WHEREAS, the Defendant and the Claimant desire to fully and finally comprise, resolve, and settle claims raised or which could have been raised in any Lawsuit by the Claimant, against all putative defendants to such Lawsuit including but not limited to the City of Pine Lawn and Blakeney, as well as any and all claims of any nature which the Claimant may now have or has at any time in the past had against the City of Pine Lawn or Blakeney.

NOW, THEREFORE, in consideration of the foregoing recitations and the mutual and reciprocal promises contained in this Agreement, the parties hereby agree as follows:

1.      Contemporaneously with the execution of this Agreement by the Defendant shall cause to be paid to the Claimant and her attorneys the total sum of One-Hundred-Eighty-Thousand Dollars ($180,000.00) by draft made payable to "The Ryals Law Firm, P.C." and delivered to

attorney Stephen Ryals. The payments and amounts set forth in this paragraph fully and completely settle and resolve all claims of the Claimant including but not limited to her claims for all manner of damages, attorney's fees and court costs. No other payments will be made by the Defendant or any other releasee or beneficiary under this Agreement, and Claimant shall be solely responsible for the payment of her own costs and attorney's fees, and any taxes or any other assessments incident to the payments set forth in this paragraph.

2. Contemporaneously with the execution of this Agreement by Defendant, it shall dismiss with prejudice all charges pending against Claimant without costs being assessed against Claimant.

3. It is expressly agreed by and among the parties that the payment made herein by the Defendant is made solely for the purpose of preventing and/or terminating the assertion of the cause of action, as well as any other disputes or claims which the Claimant may have against the City and/or Blakeney arising from any facts now known or unknown. This payment is made without any way admitting any liability, which liability both the City and Blakeney expressly deny. Claimant covenants that she shall not file any lawsuit for the acts, omissions and conduct released herein, and as more particularly set forth below, releases and covenants not to sue the City of Pine Lawn or Steven Blakeney.

4. The Claimant agrees to satisfy any and all liens arising out of any incident or occurrence relating to the claims and to indemnify and save both the City of Pine Lawn, its agents, employees, officers, Board of Aldermen, representatives and its insurer, and Blakeney, harmless therefrom. The Claimant irrevocably directs her attorney to satisfy any known liens out of the settlement proceeds. The Claimant further represents that there are no known liens in this case.

5. For and in consideration of the additional sum of One Dollar ($1.00), the Claimant, as well as her attorneys, agree not to publicize or disclose the financial terms of this Agreement, or the discussions leading up to same, either directly or indirectly, to the public generally or to any person or entity. This confidentiality provision specifically includes, but is not limited to, the Claimant's attorneys' agreement not to publish any information concerning this settlement in the Missouri Lawyers Weekly or any other such publication. This confidentiality provision extends to communication by the Claimant or her attorney to any and all persons except spouses, parents or attorneys or accountants who have a legitimate need to know the terms in order to render professional advice or services, or unless disclosure is authorized or compelled by law. In the

event that it is necessary to disclose the terms of this Agreement to an attorney or accountant, the Claimant agrees that such attorney or accountant shall be advised of this provision to maintain the confidentiality of this Agreement. Otherwise, the Claimant (and her attorneys) agrees not to identify or reveal any terms of the Agreement. In response to inquiry, the Claimant agrees to state that "the matter has been settled" or "the case has been resolved to the satisfaction of the parties", or significantly identical language.

This confidentiality provision is intended solely for the benefit of the City and its employees, agents, officers and insurers, may be waived by the City at any time, and is not enforceable against the City. Any comment about any matter protected by this confidentiality provision by City or any employee, agent, officer or insurer shall constitute a waiver of this confidentiality provision. Further, this confidentiality provision is subject to the provisions of the Missouri Sunshine Law and other applicable law, and any disclosure made under compulsion of law or the Order of any Court or administrative agency of proper jurisdiction shall not be deemed a violation of this provision. Insofar as any of the terms of this Agreement must be divulged pursuant to the compulsion of legal process or proceedings, Claimant agrees to take all lawful steps necessary to maintain the confidentiality of the terms of this Agreement, including immediately notifying the City or its attorney if served with or notified of any process seeking information protected by this provision, prior to the disclosure of any such information.

6. The parties to this Agreement additionally agree to refrain from publicly expressing or in any way publishing any derogatory or disparaging remark concerning the other, subject to the same conditions and safe harbor set forth in paragraph 4 concerning statements made under compulsion of law. Nothing in this Agreement shall prohibit Claimant or her counsel from fully disclosing the facts giving rise to her claims to any law enforcement or governmental entity or agency.

7. Martner, for herself and her heirs, legal representatives, administrators, successors, assigns, trustees, agents, servants, insurers and anyone claiming by, through or under any of them, does hereby WAIVE her RIGHT TO SUE and COMPLETELY RELEASES AND FOREVER DISCHARGES the City of Pine Lawn, Missouri, and its executives, Board of Aldermen members, elected officials, officers, agents, employees, servants, administrators, legal representatives, successors, assigns, trustees, attorneys, insurers (specifically, the Missouri Public Entity Risk Management Fund ("MOPERM")), and any and all of them, and Steven Blakeney aka Steve

Blakeney and his heirs, legal representatives, administrators, successors, assigns, trustees, agents, attorneys, insurers (specifically, MOPERM), and any and all of them, of and from any manner of liabilities, actions, suits, debts, judgments, claims, decisions, controversies, demands and damages whatsoever, in law or in equity, which she has ever had, now has, or may hereinafter have, arising or accruing from the beginning of time to the date of this Settlement Agreement and General Release, whether known or unknown, against the City of Pine Lawn, Missouri, and its executives, Board of Aldermen members, elected officials, officers, agents, employees, servants, administers, legal representatives, successors, assigns, trustees, insurers. (specifically, MOPERM) and attorneys, and against Steven Blakeney aka Steve Blakeney and his heirs, legal representatives, administrators, successors, assigns, trustees, agents, insurers (specifically, MOPERM), and attorneys, including but not limited to all claims which Claimant raised or could have been raised in any Lawsuit, as well as all other causes of action of any nature in any legal forum, court of law, or administrative agency, under the common law, or any federal or state statute or city ordinance.

Without limiting the generality of the foregoing, this Settlement Agreement and General Release is intended to and shall release the City of Pine Lawn and Steven Blakeney aka Steve Blakeney and each of their agents, successors and assigns from any and all claims of violations arising under 42 U.S.C. §§ 1983, 1988 or any other federal, state, or local statute, ordinance or common law.

8.    The parties agree that the sum paid to Plaintiff is for Plaintiff's alleged non-economic damages including physical injury, pain and suffering, and for reimbursement for Plaintiff's attorney's fees, as more fully set forth in paragraph 1 of this Agreement, and not for punitive damages. Claimant further acknowledges, agrees, covenants and stipulates she is solely responsible for the payment of any and all local, state and/or federal taxes, withholdings, interest and penalties that may be levied on any and all monies paid to her under this Agreement.

9.    City agrees that it shall assert no opposition to an action by Claimant to expunge any record of arrest resulting from the incident upon which Claimant's claims is based.

10.    Each party expressly states and acknowledges that this Agreement sets forth all the promises, agreements, conditions and understandings among the parties concerning the matters set forth herein. There are no oral agreements or understandings among the parties hereto affecting this Agreement, and this Agreement supersedes and cancels any and all previous negotiations, arrangements, understandings and agreements (either oral or written), if any, among the parties

hereto with respect to the matters set forth herein. Subsequent alteration, amendment, change or addition to this Agreement shall not be binding upon the parties hereto unless reduced to writing and signed by them.

11. Each party declares and warrants that no representations made by any party hereto, or by any agent or attorney of any party hereto, or any other representation has induced any party to make this Agreement and that each party hereto is acting upon his/her/its own judgment, belief and knowledge regarding the nature and validity of all claims or potential claims based upon the advice of legal counsel of his/her/its own choosing in making this Settlement Agreement and General Release.

12. The parties hereto acknowledge and warrant to each other that they have not at any time heretofore assigned to any other person or party all or any portion of any claim, counterclaim, or potential claim, whatsoever that any party may have or may have had against any other party hereto.

13. This Agreement shall inure to the benefit of the City of Pine Lawn, Missouri, and its executives, Board of Alderman members, elected officials, officers, agents, employees, servants, administrators, legal representatives, successors and assigns, past and present, and anyone claiming through them. The Claimant acknowledges that the consideration described in Paragraph 1 of this Agreement is all that she or her attorneys or representatives are ever to receive from the Defendant, or any person or entity whatsoever, in settlement of the threatened claims pertaining to the Lawsuit, whether in settlement of the Claimant's claim for damages, for pain and suffering, emotional distress, mental anguish, inconvenience, loss of enjoyment of life, nervousness, anxiety, worry, loss of back pay and future pay, if any; for declaratory and injunctive relief; and for reasonable attorneys' fees, costs, or for any other claim of any nature whatsoever. The Claimant further agrees that she is not, and shall not be considered to be, a "prevailing party" with respect to any claims threatened or made in relation to the Lawsuit within the meaning of any statute, rule or other provision of law which is, or may be, in any way applicable hereto.

14. This Agreement and any controversy or claims arising out of or relating to this Agreement shall be governed by the laws of the State of Missouri.

15. THE CLAIMANT EXPRESSLY ACKNOWLEDGES THAT SHE HAS BEEN COUNSELED BY HER ATTORNEYS, AND BASED ON THAT CONSULTATION, UNDERSTANDS AND AGREES THAT THIS AGREEMENT FULLY SETTLES,

RELEASES, AND DISCHARGES ANY AND ALL CLAIMS RAISED, OR WHICH COULD HAVE BEEN RAISED, IN THE ABOVE-REFERENCED LAWSUIT, AS WELL AS ANY OTHER CLAIM, OF ANY NATURE, WHICH THE CLAIMANT HAS EVER HAD, NOW HAS, OR MAY HEREINAFTER HAVE AGAINST THE DEFENDANT CITY OF PINE LAWN OR STEVEN BLAKENEY AKA STEVE BLAKENEY, WHETHER NOW KNOWN OR UNKNOWN, ARISING FROM THE BEGINNING OF TIME TO THE DATE OF THIS AGREEMENT, AND THAT THE TERMS OF THIS AGREEMENT ARE FULLY UNDERSTOOD AND VOLUNTARILY ACCEPTED FOR THE PURPOSES OF MAKING FULL AND FINAL COMPROMISE AND SETTLEMENT.

16. Claimant agrees to complete a Medicare reporting form and return it to counsel for the City. The parties agree that receipt of this form is a condition precedent to the payment set forth in paragraph 1. Claimant further warrants and represents that she has not sought any medical treatment for which Medicare has paid or been requested to pay as a result of any action of the City or Blakeney.

17. This Agreement may be executed in counterparts, and the counterparts shall constitute one and the same document.

Approved and agreed to by the undersigned:

CLAIMANT:

_Jordan Martner_

Date 10/2/15

STATE OF Illinois )
) ss
COUNTY OF Kane )

On this 2 day of October 2015, before me personally appeared Jordan Martner, to me known to be the person described in and who executed the foregoing Settlement Agreement and General Release and acknowledged to me that she executed the same for the purposes therein stated.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

Notary Public

My Commission Expires:

CHRISTOPHER G. HOLLINGSWORTH
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
February 03, 2016

CITY OF PINE LAWN, MISSOURI

_____
[name]

_____
[title]

_____
[date]

STATE OF MISSOURI

COUNTY OF ST. LOUIS } SS

I do hereby certify that _Olimes Underwood_ personally known to me to be the person whose name is subscribed to the foregoing instrument, appeared before me this ___ day of September, 2015, in person, and acknowledged that she signed and delivered this instrument in his official capacity as _Acting Mayor_ of the City of Pine Lawn, Missouri, and the duly authorized representative of the City of Pine Lawn, Missouri, with full authority from the Board of Aldermen approving this Agreement, as her free and voluntary act, for the uses and purposes therein set forth.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

_____
Notary Public

My Commission Expires:

TIFFANY N. RICHARDS
Notary Public, Notary Seal
State of Missouri
St. Louis County
Commission # 12382799
My Commission Expires March 06, 2016

[END OF DOCUMENT]



**THE RYALS LAW FIRM, P.C.**
ATTORNEYS AT LAW

STEPHEN M. RYALS

OF COUNSEL:
STEVEN J. QUINN

16645 CHESTERFIELD GROVE ROAD
SUITE 150
CHESTERFIELD, MISSOURI 63005
TELEPHONE: (314) 862-6262
FAX: (636) 536-6042

November 7, 2014

Blake D. Hill, Esq.
King, Krehbiel & Hellmich, LLC
2000 So. Hanley Road
St. Louis, Missouri 63144

Re: *City of Pine Lawn and Lt. Steven Blakeney*

Dear Blake:

Enclosed are eight separate demand letters relating to the matters we previously discussed. I am in the process of completing an additional eight arising from the Jones/Hamilton arrests.

I will honor your expertise and spare you the adversarial pitch except to say that in my thirty years of practice, I have never encountered a police officer so blatantly deviant, over a long period of time as is Steven Blakeney. More importantly, his reputation as an unprofessional, abusive, unbalanced liar is known by the citizens of Pine Lawn, the administration of Pine Lawn and throughout the legal and law enforcement community. The work I have done to unearth his history is revealing but is only a small part of what I expect to find if I have the power to conduct discovery.

I, and my firm, have approximately 50 hours invested in all of the Pine Lawn cases. If we litigate these matters, I have arranged my docket to allow me the freedom to overturn every stone regarding Blakeney and Pine Lawn and I intend to do so. Frankly, each of my clients wants to see Blakeney de-certified and I endorse that goal. It is sure to find a case that presents an opportunity to serve as a true "private attorney general" and effect a meaningful change in a department. These cases do. I have presented demands on behalf of my clients because I was directed to do so. My clients have not demanded his resignation or termination as part of their offer to settle, but I, and they, are prepared to litigate these cases with the goal of not only achieving the justice that compensation represents but also with the equally important goal of causing a change in Pine Lawn, including the separation of Blakeney from Pine Lawn and from policing.

Please do me the courtesy of letting me know as soon as possible whether there is any value in discussing a resolution of these claims, or any of them.

---

Confidential - Produced Under Protective Order

Mr. Hill
November 7, 2014
Page Two

Very truly yours,

Stephen M. Ryals

SMR/mvo
Enclosures

---

TREMMELL McCOLE

---

Confidential - Produced Under Protective Order

**THE RYALS LAW FIRM, P.C.**
ATTORNEYS AT LAW

STEPHEN M. RYALS

OF COUNSEL:
STEVEN J. QUINN

16645 CHESTERFIELD GROVE ROAD
SUITE 150
CHESTERFIELD, MISSOURI 63005
TELEPHONE: (314) 862-6262
FAX: (636) 536-6042

November 7, 2014

Blake D. Hill, Esq.
King, Krehbiel & Hellmich, LLC
2000 So. Hanley Road
St. Louis, Missouri 63144

**CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER
NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR
OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT**

Re: *Tremmell McCole v. City of Pine Lawn and Steven Blakeney*

Dear Blake:

To follow our recent discussions, I represent Tremmell McCole in his claim for damages against the City of Pine Lawn and Steven Blakeney arising from the stop, detention, and unlawful seizure of his person by Steven Blakeney on October 5, 2012. Blakeney's conduct violated Mr. McCole's Fourth Amendment rights for which he will seek redress pursuant to 42 U.S.C. §§1983 and 1988.

The City of Pine Lawn is liable for the constitutionally violative conduct of Blakeney because Blakeney has engaged, and continues to engage, in conduct that is unconstitutional and The City was and is aware of his conduct and failed to exercise its duty to supervise and control Blakeney. Attached is a summary of additional cases. I represent each of the individuals identified in the attachment and each of them has committed to support Mr. McCole and one another in pursuit of their remedies, including the public policy concerns of each of them.

*The Incident Involving Tremmell McCole and Blakeney*

On October 5, 2012  Tremmell McCole was walking with his friend, Sidney Sinclair toward a bus stop at Jennings Station Road and Greer in Pine Lawn.  Mr. Sinclair had come from a job interview, was wearing a suit and tie, and had stopped at the home of his friend, Mr. McCole, between busses.  As they walked past a police car, several officers emerged from behind a house.  Then Blakeney emerged with a shotgun in his hands.  The officers ordered the pair to stop, which they did.  Blakeney told the men to

Mr. Hill
November 7, 2014
Page 2 of 5

walk toward him. They asked why as they moved toward the other officers because Blakeney was pointing the shotgun at them, which threatened and frightened them. When they asked what was going on, Blakeney told them to shut up – that they didn't listen and were now going to jail.

Blakeney handed the shotgun to another officer and grabbed Mr. McCole by his elbows, from behind and began his assault of Mr. McCole. Blakeney slammed McCole to the ground and cuffed him. Mr. Sinclair, observing the assault of his friend attempted to explain that he was wearing a suit and tie, had just come from an interview and that they had not done anything. Blakeney responded that they didn't comply and were going to jail. He then said, "Oh, so being in a suit and tie makes you better than me?" Blakeney cuffed Mr. Sinclair and put him in a police car. As he sat there, he saw that Blakeney was further assaulting Mr. McCole by slamming him against a car, and then down on the pavement where he kicked him. Mr. Sinclair could not hear what the other officers were saying, but heard Blakeney say, "What? You disagree with what I'm doing? No? Then shut the fuck up." Mr. Sinclair reports that the other officers did not act inappropriately, and that they insinuated that Blakeney was out of control and had done this sort of thing before.

Mr. McCole was held in jail for seven days before being released on his own recognizance. He suffered injuries to his elbows, his knees, the side of his face where he was kicked (while in handcuffs) and immediately after he was released, he sought medical care at Barnes-Jewish Hospital.

Mr. McCole was charged with Failure to Appear, Derelict Vehicle, Disorderly Conduct and Failure to Comply. The FTA and vehicle charges were old and false, as Mr. McCole did not own a car and did not reside in Pine Lawn. Mr. McCole defended the ordinance violation charges and all cases were dismissed.

*Liability of Blakeney and Pine Lawn*

Blakeney has been abusing citizens, in Pine Lawn, and out, since at least 2011. The attached summary, recounts other individuals who have suffered violations of their constitutional rights by Blakeney, and by Blakeney and other Pine Lawn police officers.

Blakeney's abusive actions are well known to others in the law enforcement community and to those in Pine Lawn with a duty to control him. Despite a clear and pervasive history of violations of the law and United States Constitution, Blakeney has not been disciplined, more closely supervised or re-trained. On the contrary, he has been promoted and is now a Lieutenant.

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER
NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR
OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT

---

Confidential - Produced Under Protective Order

Mr. Hill
November 7, 2014
Page 3 of 5

Blakeney stopped and detained Mr. McCole, at gunpoint, and arrested, jailed and charged him. Mr. McCole had committed no offense, reflected in the fact that the charges were dismissed. Blakeney and Pine Lawn will be liable for damages for these violations of the Fourth Amendment to the United States Constitution.

Blakeney will be liable for punitive damages. His conduct toward Mr. McCole reveals his disregard for the law and the Constitution of the United States. Of equal importance, the repeated misconduct of Blakeney revealed on multiple occasions in multiple contexts, will be admitted on the issue of punitive damages and on the issue of municipal liability.

There are ample indicators of Blakeney's unfitness to be a peace officer. While an officer in New Athens, Illinois, two brother officers were so concerned about Blakeney's aggressiveness, inappropriate behavior and statements that they reported his actions to the command staff. Blakeney was dismissed from that agency because of discrepancies in his representations on his application that showed deception. Blakeney was dismissed from the Eastern Missouri Police Academy for behavioral problems, an issue that was noted by his fellow students as well as the cadre. Blakeney was dismissed from the St. Louis Metropolitan Police Department Academy. Blakeney, since beginning work for Pine Lawn, tested positive for cocaine. Blakeney has had orders of protection entered against him and had a firearms restriction that, I believe, he violated. Blakeney was found to be abrasive to his former wife and on one occasion stuck a pacifier in her mouth.

Blakeney caused the traffic stop of a local police chief and his colleagues that is remarkably similar to the stop of Captain Telano. Blakeney first encountered the Chief, in the downtown area, as he was traveling from a Cardinals game with colleagues. When they reached the city limits of Pine Lawn, Blakeney allowed to allow the Chief's car to pass and then initiated a traffic stop. The officer who accompanied Blakeney was in the background signaling to the Chief by making a circular motion with his index finger over the side of his head, which the Chief took as a comment on Blakeney's competence.

Each of the individuals who are identified in the attached summary has committed to support all litigation that any of them may bring against Blakeney and Pine Lawn. Each of my clients is motivated to contribute to an effort to cause an unbiased and careful review of Blakeney's conduct and his competence to serve as a peace officer. The jury in Mr. Sinclair's case and in every other will hear a complete account of Blakeney's misconduct since employed by Pine Lawn.

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER
NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR
OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT

---

Mr. Hill
November 7, 2014
Page 4 of 5

*Offer of Settlement*

On behalf of Tremell McCole, I have been authorized to convey an offer of settlement of Sinclair's claim for damages and fees pursuant to 42 U.S.C. §§ 1983 and 1988. The terms of the offer:

1. The City of Pine Lawn shall immediately request an investigation of Blakeney by the St. Louis County Police or the Missouri State Highway Patrol. The investigation shall include his background, the incidents described in this letter and in the attachment and any other incidents that come to light, and shall be in the nature of an internal investigation with the goal of determining whether Blakeney should be disciplined and what the discipline should be.

2. The results of the investigation shall be forwarded to the Missouri Peace Officer Standards and Training Commission (P.O.S.T.).

3. Pine Lawn shall direct that Blakeney shall not exercise police powers unless on duty and unless within the city limits of Pine Lawn.

4. Pine Lawn shall initiate a program of training that reflects instruction using the conduct involving Sinclair and of the other violations described in the attachment as a foundation for instructing on the constraints of the United States Constitution and the laws and fully explaining how the actions of Blakeney violated them.

5. Pine Lawn shall confess Mr. McCole's petition to expunge his arrest record.

6. Pine Lawn and Blakeney shall pay Mr. McCole the sum of Two Hundred Twenty Five Thousand Dollars ($225,000.00) for damages resulting from the injuries suffered by Mr. McCole at the hands of Blakeney. The amount of the offer is inclusive of attorney fees and in exchange for the payment and acceptance of the other terms, Mr. McCole will provide Blakeney and Pine Lawn with a full release, including a release of attorney fees.

Mr. McCole is interested in engaging in limited discussion about the settlement, pre-suit, of his cause and I invite you to reply at your first opportunity. In addition, Mr. McCole would be pleased to meet with you to explain what occurred and how it affected him. Please let me know if your principal is interested in making a diligent effort to resolved Mr. McCole's cause and, importantly, if not, so I can commence suit without undue delay.

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER
NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR
OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT

---

Confidential - Produced Under Protective Order

Mr. Hill
November 7, 2014
Page 5 of 5

Very truly yours,

Stephen M. Ryals

SMR/mvo
Enclosure: Case Synopsis

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER
NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR
OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT

Confidential - Produced Under Protective Order

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS
NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE
ADMISSIBLE IN ANY LAWSUIT
Page 1 of 5

## City of Pine Lawn/Steven Blakeney
### Case Synopses

*Date of Occurrence: 6/23/11. Kristen Moore.*

Blakeney was a corporal, off duty when he stopped Kristen Moore. while she was driving to work.

On June 23, 2011 at approximately 6:30 p.m., while driving to work at Washington University/Barnes Hospital in St. Louis from her home in Waterloo, Illinois. While off duty in his private SUV, Blakeney pulled over Kristen Moore. His children were in the vehicle with him. Blakeney approached Ms. Moore. In a rage and his behavior only got worse. He released Ms. Moore without a citation and also learned later that he had preferred a C&I charge against her that the State did not pursue.

Blakeney's personal vehicle was equipped with police lights and other police equipment.

Blakeney threatened Ms. Moore by telling her that he knew where she lived and after the incident Ms. Moore saw him following her.

Ms. Moore lodged a complaint and a City official told her to excuse the conduct because Blakeney had come from a funeral.

A Google search of "officer steven blakeney" will lead to a new report on Fox 2 that reports on this incident.

*DOI: 10/31/12. Tremmell McCole*

With Sidney Sinclair, Tremmell McCole and Sidney Sinclair were walking from the home of Mr. McCole. As they were walking, they noticed an undercover police car in the middle of the street. Blakeney, brandishing a shotgun, approached the pair from a distance of a couple of houses away and said, "come here, boy." Other officers arrived and while Blakeney held the shotgun on them, threw Mr. McCole to the ground and began kicking him. Blakeney kicked Mr. McCole in the face. He was then pulled up and violently thrown against the police car and thrown in the back. Blakeney choked Mr. McCole while he was handcuffed.

Mr. McCole was held in jail for a week on charges related to a derelict vehicle and the failure to appear on those charges. Mr. McCole never resided in Pine Lawn and did not

Confidential - Produced Under Protective Order

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS
NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE
ADMISSIBLE IN ANY LAWSUIT
Page 2 of 5

own a vehicle. He was also charged with Failure to Comply and Disorderly Conduct. All charges were dismissed.

*DOI: 10/31/12. Sidney Sinclair*

Walking with Tremmell McCole. Mr. Sinclair was in a suit as he had just come from a job interview. He witnessed Blakeney abusing Tremmell McCole and yelled for him to stop and then, "come here, boy." Blakeney then told him he was failing to comply and was going to jail. Mr. Sinclair told Blakeney that he had not done anything wrong and noted his suit. Blakeney said, "Oh, so being in a suit and tie makes you better than me?" As Mr. Sinclair saw Blakeney abusing Tremmell McCole he overheard officers and Blakeney – Blakeney said, "What? You disagree with what I'm doing? No? Then shut the fuck up." Mr. Sinclair bonded out and his case was ultimately dismissed. Mr. Sinclair related the bad reputation of Blakeney and said that several officers hinted that Blakeney is a problem officer and this sort of behavior is not unusual for him.

*DOI: 12/7/12. Nakita Jackson*

Nakita Jackson was visiting at her sister's home. They walked to the bus stop to meet her niece. There was a fight or tussle involving the children. The police arrived and Blakeney punched her in the face and choked her and others threw her to the ground, put a knee in her back and put a Taser against her neck. She yelled that she was pregnant and they did not Taser her. While on the ground, she had abdominal and back pain and vomited. She asked for medical attention and Blakeney said "her ass will be fine." She asked Blakeney why he hit her and he said, "get the fuck back before I hit you again." She was taken to jail, bonded out and all the charges were dismissed.

Blakeney made statements that contained racial slurs.

Ms. Jackson asked to speak to a supervisor and Blakeney said that he was in charge – that nobody was above him. Ms. Jackson complained to then Chief Ricky Collins who said, "Let me guess when this happened. 2nd shift, around 3:00 p.m. That shift is always fucking up." Blakeney ordered the arrest of multiple people, including children.

*DOI: 3/16/13. Kaleisha Beck*

Kaleisha Beck was staying with Racquel Wooten and family on James A. Harvey Lane, Wellston, a neighboring community to Pine Lawn. At approximately 10:30 p.m., K.B. came out of a main level room and saw five cops in living room. She was detained on a couch for 30 minutes at gunpoint.

Confidential - Produced Under Protective Order

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS
NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE
ADMISSIBLE IN ANY LAWSUIT
Page 3 of 5

The officers were from Pine Lawn and were in Wellston attempting to apprehend a woman who had a warrant. They apparently thought Racquel Wooten was the woman, but Racquel Wooten was the wanted woman's sister. The wanted woman was not present. It does not appear that they had a search warrant.

A Wellston officer, Sgt. Bickley, showed up and is a witness to the unlawful entry and search of the residence by Pine Law officers, including Blakeney. Racquel Wooten saw an argument between Sgt. Bickley and P.L. officers about them blocking the street.

*DOI: 3/16/13. Racquel Wooten*

Racquel Wooten at home, reading in her upstairs bedroom, when Pine Lawn officers came in looking for Katrena W. plus drawn. The police rounded up and detained at gunpoint Ms. Wooten and her five children, along with Kaleisha Beck and her small child. At some point, she encountered Sgt. Bickley from Wellston. He told her that it was not Wellston P.D. in home. She also saw Bickly arguing with a P.L. cop outside about unblocking the street. Ms. Wooten was cuffed and accused of being Katrena W.

The police had no arrest warrant and no search warrant

*DOI: 7/19/13 Roy Anthony Telano.*

Anthony Telano is a former police officer, up through the ranks Captain in the United States Army (now in IMA status) and employee of the National Geospatial Agency. While off duty (was believe), Blakeney orchestrated the traffic stop and arrest of Capt. Telano, the search and towing of his car and, the filing of charges against him. When the Pine Lawn officers pulled Capt. Telano over, Blakeney came running up yelling, "who's the tough guy." He assaulted Capt. Telano.

The charges were dismissed

Blakeney made a statement to Capt. Telano that he was a disgrace to the military. Blakeney made a comment about knowing where Capt. Telano lives, similar to what he said to Kristen Moore.

*DOI: 4/10/14. Jordan Mariner*

Jordan Mariner is a young college student who was traveling to her boyfriend's apartment in St. Louis from Columbia, Missouri. She was pulled over by Blakeney and, ultimately, arrested after questioning the lawfulness of the search of her car. When she retrieved her car from impound, she found that her personal belongings, including a computer, clothing and personal items, were damaged from grease and from having the spare tire thrown on top of them.

Confidential - Produced Under Protective Order

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS
NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE
ADMISSIBLE IN ANY LAWSUIT
Page 4 of 5

During their encounter, Blakeney examined Ms. Mariner's cell phone, ordered her to give him the pass code and texted a message posing as her to her boyfriend. He also asked her whether she like to go to raves.

After Blakeney arrested Ms. Mariner she began to cry. He seemed to enjoy that and said that she was going to find out how bad this part of town was.

*DOI: 6/13/14. Hamilton and Jones Families and Tony Richard II*

Seven people at a family gathering were arrested, assaulted, pepper sprayed and charged. The homeowner is a cancer patient and had hosted two family gatherings each year for approximately thirty years. The police first came because they said there was a complaint about shots fired. One of the men told the officer that they had not heard any shots. Blakeney arrived and began aggressively cursing the man talking to the officer. He then got on the loud speaker and told everyone to "get the fuck inside." The man who was talking to the officer told Blakeney that he had no call to curse, and that there were children inside the house. Blakeney said, "fuck the kids."

Then, the officers crossed the fence and began using force on people despite there being no threats against the officers and no resistance. The used force, including the Taser, pepper spray and hands on, against a number of the family members. They arrested women and men alike. One of the arrestees is a family friend who is active duty United States Coast Guard. One of the officers shoved the cancer victim homeowner against a door-frame and caused her chemo port to bang against the frame.

One family member was pepper sprayed because he was recording the abuses. Everyone who was arrested had their phones seized and all of the recorded footage was deleted from each phone.

### Additional Information Regarding Pine Lawn/Blakeney

- The Mayor of Pine Lawn, Sylvester Caldwell, has been indicted by the United States.
- Blakeney was (or still is) the subject of an order of protection that prohibits him from being armed except on duty in Pine Lawn.
- One of Blakeney's sons came home with a cell phone given to him by Blakeney. It is possible that the cell phone was seized by the P.L. police or Blakeney.
- Sidney Sinclair's phone was seized and was not returned to him when he bonded out. He utilized a tracking feature on the phone that located it in south St. Louis County at or near an address associated with Blakeney.

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS
NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE
ADMISSIBLE IN ANY LAWSUIT
Page 5 of 5

- A former officer can testify that he has seen Blakeney high or drunk and armed. On one occasion, he arrived at a multi-agency search for a missing person armed with an AR-15 and had come to the scene from the East Side.
- Blakeney tested positive for cocaine.
- Blakeney is known to frequent the strip clubs on the East Side and even goes there while on duty.
- Similar to the stop of Anthony Telano, Blakeney stopped the St. Ann Chief of Police. Blakeney and his partner followed the Chief's car from downtown, some 7 or 8 miles from Pine Lawn and after they passed through Pine Lawn, let the Chief's car pass and then pulled it over. Blakeney was apparently on duty on this occasion.
- Blakeney is a notorious liar.
- While in court with Capt. Telano, Blakeney was eavesdropping on a private conversation I was having with my client.
- One client who was at Pine Lawn to retrieve property or complain was told by the clerk, "Blakeney again."
- Blakeney started as a corporal and was promoted twice and is now a lieutenant.
- There may be a sizeable number of officers who will testify about Blakeney's abusive and extra-legal practices. For example, he is reported to go outside his jurisdiction and stop motorists in the City of St. Louis. He may secure plates from cars towed to Eddie's, affix them to his car and ride through the city assaulting people. Another report is that he will go to the East Side clubs while on duty and get drunk and/or high.
- Blakeney was accused of rape (off duty).
- Blakeney beat and humiliated his former wife. On one occasion he threw her down, locked her out of the house and stuck a pacifier in her mouth.
- Former Pine Law Chief of Police Ricky Collins has a troubled past. Among the cases of which I am aware, he broke a nightstick over the head of my client and charged him with the destruction of city property.

---

THE RYALS LAW FIRM, P.C.
ATTORNEYS AT LAW

STEPHEN M. RYALS

OF COUNSEL:
STEVEN J. OLSEN

16642 CHESTERFIELD GROVE ROAD
SUITE 100
CHESTERFIELD, MISSOURI 63005
TELEPHONE (314) 862-6262
FAX: (636) 536-6062

November 7, 2014

Blake D. Hill, Esq.
King, Krehbiel & Hellmich, LLC
2000 So. Hanley Road
St. Louis, Missouri 63144

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER
NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR
OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT

Re:   *Racquel Wooten v. City of Pine Lawn and Steven Blakeney*

Dear Blake:

To follow our recent discussions, I represent Racquel Wooten in her claim for damages against the City of Pine Lawn and Steven Blakeney arising from the unlawful enter and search of her residence by Steven Blakeney, and other Pine Lawn officers on March 16, 2013. Blakeney's conduct violated Ms. Wooten's Fourth Amendment rights for which she will seek redress pursuant to 42 U.S.C. §§1983 and 1988.

The City of Pine Lawn is liable for the constitutionally violative conduct of Blakeney because he has engaged, and continues to engage, in conduct that is unconstitutional. The City was and is aware of his conduct, and failed to exercise its duty to supervise and control Blakeney. Attached is a summary of additional cases. I represent each of the individuals identified in the attachment and each of them has committed to support Ms. Wooten and one another in pursuit of their remedies, including the public policy concerns of each of them.

*The Incident Involving Racquel Wooten, Her Children and Blakeney*

On March 16, 2013 at approximately 10:30 p.m., Racquel Wooten was upstairs in her bedroom, in her home located at 1819 ½ James A. Harvey Lane, in Wellston, Missouri. Her children, Raven and Canaan, were sitting in the living room when they heard a loud noise at the door and saw police officers come through the door. Raven yelled up to her mother that someone was in the house. As Ms. Wooten was responding

---

---

Confidential - Produced Under Protective Order

RACQUEL WOOTEN

---

Confidential - Produced Under Protective Order

Mr. Hill
November 7, 2014
Page 2 of 4

with "who," four officers barged into her room, yelling, "Are you Katrena Wooten[1]?" All four had weapons drawn, including a long gun. Ms. Wooten told them that she was not Katrena, and Blakeney continued yelling and accusing her of lying. Blakeney told Ms. Wooten that she had bigger problems because she was in low-income housing and wait until her landlord finds out.

Ms. Wooten saw that other officers were searching the rooms of her children and removing them. Her daughter Britney asked what was going on and Ms. Wooten told her to call her husband. The officers would not permit it, and continued to push the upstairs occupants down the hall and down the stairs at gunpoint.

Ms. Wooten was handcuffed and one officer – possibly Blakeney – lied to other officers and asserted that Ms. Wooten had identified herself as Katrina. She directed the officers to her identification and having secured it, she remained handcuffed. She was taken to a downstairs living room where her family was being detained. The officers searched her home and seized her son, who was asleep in his room, at gunpoint.

When she went downstairs, she encountered Sgt. Bickley from the Wellston Police Department who informed her that the officers in her home were not from Wellston, rather, they were from Pine Lawn.

In addition to her son, Brian, her other children, Brittany, Chineye, Canaan and Raven along with her sister, Kaleisha Beck and her infant, were also detained, at gunpoint, in the home.[2]

*Liability of Blakeney and Pine Lawn*

The Pine Lawn officers did not have a search warrant for the home of Ms. Wooten and, apparently, there was not even an arrest warrant for her sister, Katrena. The lawlessness of the police intrusion is beyond dispute. First the officers were not within their own city limits. Second, they had no warrant to enter the home or to arrest Katrina, if they found her. Third, there was no exigency or consent to enter the home. When Ms. Wooten protested the intrusion, Blakeney informed her that she lived in "low-income housing" and had bigger problems.

Blakeney's abusive actions are well known to others in the law enforcement community and to those in Pine Lawn with a duty to control him. Despite a clear and pervasive history of violations of the law and United States Constitution, Blakeney has

[1] Katrena Wooten is Racquel Wooten's sister and she did not reside at Racquel Wooten's residence.
[2] The claim of Kaleisha Beck, Ms. Wooten's sister, will be submitted separately.

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER
NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR
OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT

Mr. Hill
November 7, 2014
Page 3 of 4

not been disciplined, more closely supervised or re-trained. On the contrary, he has been promoted and is now a Lieutenant. He clearly is permitted to do what he wants, when he wants and where he wants.

There are ample indicators of Blakeney's unfitness to be a peace officer, apart from the multiple incidents reflected in the attachment. While an officer in New Athens, Illinois, two brother officers were so concerned about Blakeney's aggressiveness, inappropriate behavior and statements that they reported his actions to the command staff. Blakeney was dismissed from that agency because of discrepancies in his representations on his application that showed deception. Blakeney was dismissed from the Eastern Missouri Police Academy for behavioral problems, an issue that was noted by his fellow students as well as the cadre. Blakeney was dismissed from the St. Louis Metropolitan Police Department Academy. Blakeney, since beginning work for Pine Lawn, tested positive for cocaine. Blakeney has had orders of protection entered against him and had a firearms restriction that, I believe, he violated. Blakeney was found to be abusive to his former wife and on one occasion stuck a pacifier in her mouth.

Each of the individuals who are identified in the attached summary has committed to support all litigation that any of them may bring against Blakeney and Pine Lawn. Each of my clients is motivated to contribute to an effort to ensure an unbiased and careful review of Blakeney's conduct and his competence to serve as a peace officer. The jury in Ms. Wooten's case and in every other will hear a complete account of Blakeney's misconduct since employed by Pine Lawn.

**Racquel Wooten's Claims**

There is no more egregious violation that a citizen can suffer than to have the police unlawfully enter the home, guns drawn, seizing and detaining those who they find. To make the intrusion more offensive, Ms. Wooten's children were present and traumatized by the forceful intrusion of the police. Her oldest son, Brian, was asleep in his bedroom when awakened by loud men with guns pointed at him. All of the children, Brian, Brittany, Chineya, Cinnan and Raven, were herded into a single room at gunpoint command and detained while the search of the residence occurred.

**Offer of Settlement**

On behalf of Racquel Wooten, I have been authorized to convey an offer of settlement of her claim for damages and fees pursuant to 42 U.S.C. §§ 1983 and 1988. The terms of the offer:

1. The City of Pine Lawn shall immediately request an investigation of Blakeney by the St. Louis County Police or the Missouri State Highway Patrol. The

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER
NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR
OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT

Chr 1358

---

Confidential - Produced Under Protective Order

Mr. Hill
November 7, 2014
Page 4 of 4

investigation shall include his background, the incidents described in this letter and in the attachment, and any other incidents that come to light. It shall be in the nature of an internal investigation with the goal of determining whether Blakeney should be disciplined and what the discipline should be.

2. The results of the investigation shall be forwarded to the Missouri Peace Officer Standards and Training Commission (P.O.S.T.).

3. Pine Lawn shall direct that Blakeney shall not exercise police powers unless on duty and unless within the city limits of Pine Lawn.

4. Pine Lawn shall initiate a program of training that reflects instruction using the treatment Racquel Wooten and of the other violations described in the attachment as a foundation for instructing on the limits of the United States Constitution, and the laws and fully explaining how the actions of Blakeney violated them.

5. Pine Lawn and Blakeney shall pay Racquel Wooten the sum of One Hundred Twenty Five Thousand Dollars ($125,000.00) for damages resulting from the injuries suffered by Ms. Wooten and her children at the hands of Blakeney. The amount of the offer is inclusive of attorney fees. In exchange for the payment and acceptance of the other terms, Ms. Wooten and her adult child will provide Blakeney and Pine Lawn with a full release, including a release of attorney fees.

Ms. Wooten intends to engage in limited discussion about the settlement, pre-suit, of her cause and I invite you to reply at your first opportunity. Please let me know if your principal is interested in making a diligent effort to resolve Racquel Wooten's case and, importantly, if not, so I can commence suit without undue delay.

Very truly yours,

[signature]

Stephen R. Ryals

SMR/mvo
Enclosure: Case Synopses

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER
NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR
OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT

Chr 1356

---

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS
NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE
ADMISSIBLE IN ANY LAWSUIT
Page 1 of 5

### City of Pine Lawn/Steven Blakeney
### Case Synopses

*Date of Occurrence: 6/21/11. Kristen Moore.*

Blakeney was a corporal, off duty when he stopped Kristen Moore. while she was driving to work.

On June 23, 2011 at approximately 6:30 p.m., while driving to work at Washington University/Barnes Hospital in St. Louis from her home in Waterloo, Illinois. While off duty in his private SUV, Blakeney pulled over Kristen Moore. His children were in the vehicle with him. Blakeney approached Ms. Moore. In a rage and his behavior only got worse. He released Ms. Moore without a citation and she learned later that he had preferred a C&I charge against her that the State did not pursue.

Blakeney's personal vehicle was equipped with police lights and other police equipment.

Blakeney threatened Ms. Moore by telling her that he know where she lived and after the incident Ms. Moore saw him following her.

Ms. Moore lodged a complaint and a City official told her to excuse the conduct because Blakeney had come from a funeral.

A Google search of "officer steven blakeney" will lead to a new report on Fox 2 that reports on this incident.

*DOI: 10/3/12. Tremmell McCole*

With Sidney Sinclair, Tremmell McCole and Sidney Sinclair were walking from the home of Mr. McCole. As they were walking, they noticed an undercover police car in the middle of the street. Blakeney, brandishing a shotgun, approached the pair from a distance of a couple of houses away and said, "come here, boy." Other officers arrived and while Blakeney held the shotgun on them, threw Mr. McCole to the ground and began kicking him. Blakeney kicked Mr. McCole in the face. He was then pulled up and violently thrown against the police car and thrown in the back. Blakeney choked Mr. McCole while he was handcuffed.

Mr. McCole was held in jail for a week on charges related to a derelict vehicle and the failure to appear on those charges. Mr. McCole never resided in Pine Lawn and did not

Chr 1359

---

Confidential - Produced Under Protective Order

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS
NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE
ADMISSIBLE IN ANY LAWSUIT
Page 2 of 5

own a vehicle. He was also charged with Failure to Comply and Disorderly Conduct. All charges were dismissed.

*DOI: 10/5/12. Sidney Sinclair*

Walking with Tremmell McCole, Mr. Sinclair was in a suit as he had just come from a job interview. He witnessed Blakeney abusing Tremmell McCole and called for him to stop and then, "come here, boy." Blakeney then told him he was failing to comply and was going to jail. Mr. Sinclair told Blakeney that he had not done anything wrong and noted his suit. Blakeney said, "Oh, so being in a suit and tie makes you better than me?" As Mr. Sinclair saw Blakeney abusing Tremmell McCole he overheard officers and Blakeney – Blakeney said, "What? You disagree with what I'm doing? No? Then shut the fuck up." Mr. Sinclair bonded out and his case was ultimately dismissed. Mr. Sinclair related the bad reputation of Blakeney and said that several officers hinted that Blakeney is a problem officer and this sort of behavior is not unusual for him.

*DOI: 12/7/12. Nakita Jackson*

Nakita Jackson was visiting at her sister's home. They walked to the bus stop to meet her niece. There was a fight or tussle involving the children. The police arrived and Blakeney punched her in the face and choked her and others threw her to the ground, put a knee in her back and put a Taser against her neck. She yelled that she was pregnant and they did not Taser her. While on the ground, she had abdominal and back pain and vomited. She asked for medical attention and Blakeney said "her ass will be fine." She asked Blakeney why he hit her and he said, "get the fuck back before I hit you again." She was taken to jail, bonded out and all the charges were dismissed.

Blakeney made statements that contained racial slurs.

Ms. Jackson asked to speak to a supervisor and Blakeney said that he was in charge – that nobody was above him. Ms. Jackson complained to then Chief Ricky Collins who said, "Let me guess when this happened. 2nd shift, around 3:00 p.m. That shift is always fucking up." Blakeney ordered the arrest of multiple people, including children.

*DOI: 3/16/13. Kaleisha Beck*

Kaleisha Beck was staying with Racquel Wooten and family on James A. Harvey Lane, Wellston, a neighboring community to Pine Lawn. At approximately 10:30 p.m., K.B. came out of a main level room and saw five cops in living room. She was detained on a couch for 30 minutes at gunpoint.

Chr 1357

**CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS**
**NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE**
**ADMISSIBLE IN ANY LAWSUIT**
Page 3 of 5

The officers were from Pine Lawn and were in Wellston attempting to apprehend a woman who had a warrant. They apparently thought Racquel Wooten was the woman, but Racquel Wooten was the wanted woman's sister. The wanted woman was not present. It does not appear that they had a search warrant.

A Wellston officer, Sgt. Bickley, showed up and is a witness to the unlawful entry and search of the residence by Pine Law officers, including Blakeney. Racquel Wooten saw an argument between Sgt. Bickley and P.L. officers about them blocking the street.

**DOI: 3/16/13. Racquel Wooten**

Racquel Wooten was at home, reading in her upstairs bedroom, when Pine Lawn officers came in looking for Katrena W. guns drawn. The police rounded up and detained at gunpoint Ms. Wooten and her five children, along with Kahtisha Beck and her small child. At some point, she encountered Sgt. Bickley from Wellston. He told her that it was not Wellston P.D. in home. She also saw Bickly arguing with a P.L. cop outside about unblocking the street. Ms. Wooten was cuffed and accused of being Katrena W.

The police had no arrest warrant and no search warrant

**DOI: 7/19/13 Roy Anthony Telano.**

Anthony Telano is a former police officer, up through the ranks Captain in the United States Army (now in IMA status) and employee of the National Geospatial Agency. While off duty (we believe), Blakeney orchestrated the traffic stop and arrest of Capt. Telano, the search and towing of his car and, the filing of charges against him. When the Pine Lawn officers pulled Capt. Telano over, Blakeney came running up yelling, "who's the tough guy." He assaulted Capt. Telano.

The charges were dismissed

Blakeney made a statement to Capt. Telano that he was a disgrace to the military. Blakeney made a comment about knowing where Capt. Telano lives, similar to what he said to Kristen Moore.

**DOI: 4/10/14. Jordan Martner**

Jordan Martner is a young college student who was traveling to her boyfriend's apartment in St. Louis from Columbia, Missouri. She was pulled over by Blakeny and, ultimately, arrested after questioning the lawfulness of the search of her car. When she retrieved her car from impound, she found that her personal belongings, including a computer, clothing and personal items, were damaged from grease and from having the spare tire thrown on top of them.

---

**CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS**
**NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE**
**ADMISSIBLE IN ANY LAWSUIT**
Page 4 of 5

During their encounter, Blakeney examined Ms. Martner's cell phone, ordered her to give him the pass code and texted a message posing as her to her boyfriend. He also asked her whether she like to go to raves.

After Blakeney arrested Ms. Martner she began to cry. He seemed to enjoy that and said that she was going 'to find out how bad this part of town was.

**DOI: 5/13/14. Hamilton and Jones Families and Tony Richard II**

Seven people at a family gathering were arrested, assaulted, pepper sprayed and charged. The homeowner is a cancer patient and had hosted two family gatherings each year for approximately thirty years. The police first came because they said there was a complaint about shots fired. One of the men told the officer that they had not heard any shots. Blakeney arrived and began aggressively cursing the man talking to the officer. He then got on the loud speaker and told everyone to "get the fuck inside." The man who was talking to the officer told Blakeney that he had no call to curse, and that there were children inside the house. Blakeney said, "fuck the kids."

Then, the officers crossed the fence and began using force on people despite there being no threats against the officers and no resistance. The used force, including the Taser, pepper spray and hands on, against a number of the family members. They arrested women and men alike. One of the arrestees is a family friend who is active duty United States Coast Guard. One of the officers shoved the cancer victim homeowner against a door-frame and caused her chemo port to bang against the frame.

One family member was pepper sprayed because he was recording the abuses. Everyone who was arrested had their phones seized and all of the recorded footage was deleted from each phone.

*Additional Information Regarding Pine Lawn/Blakeney*

* The Mayor of Pine Lawn, Sylvester Caldwell, has been indicted by the United States.
* Blakeney was (or still is) the subject of an order of protection that prohibits him from being armed except on duty in Pine Lawn.
* One of Blakeney's sons came home with a cell phone given to him by Blakeney. It is possible that the cell phone was seized by the P.L. police or Blakeney.
* Sidney Sinclair's phone was seized and was not returned to him when he bonded out. He utilized a tracking feature on the phone that located it in south St. Louis County at or near an address associated with Blakeney.

---

**CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS**
**NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE**
**ADMISSIBLE IN ANY LAWSUIT**
Page 5 of 5

* A former officer can testify that he has seen Blakeney high or drunk and armed. On one occasion, he arrived at a multi-agency scene for a missing person armed with an AR-15 and had come to the scene from the East Side.
* Blakeney tested positive for cocaine.
* Blakeney is known to frequent the strip clubs on the East Side and even goes there while on duty.
* Similar to the stop of Anthony Telano, Blakeney stopped the St. Ann Chief of Police. Blakeney and his partner followed the Chief's car from downtown, some 7 or 8 miles from Pine Lawn and after they passed through Pine Lawn, let the Chief's car pass and then pulled it over. Blakeney was apparently on duty on this occasion.
* Blakeney is a notorious liar.
* While in court with Capt. Telano, Blakeney was eavesdropping on a private conversation I was having with my client.
* One client who was at Pine Lawn to retrieve property or complain was told by the clerk, "Blakeney again."
* Blakeney started as a corporal and was promoted twice and is now a lieutenant.
* There may be a sizeable number of officers who will testify about Blakeney's abusive and extra-legal practices. For example, he is reported to go outside his jurisdiction and stop motorists in the City of St. Louis. He may secure plates from cars towed to Eddie's, affix them to his car and ride through the city assaulting people. Another report is that he will go to the East Side clubs while on duty and get drunk and or high.
* Blakeney was accused of rape (off duty).
* Blakeney beat and humiliated his former wife. On one occasion he threw her down, locked her out of the house and stuck a pacifier in her mouth.
* Former Pine Law Chief of Police Ricky Collins has a troubled past. Among the cases of which I am aware, he broke a nightstick over the head of my client and charged him with the destruction of city property.

ROY ANTHONY TELANO

Confidential - Produced Under Protective Order

Mr. Hill
November 7, 2014
Page 5 of 8

Blakeney's abusive actions are well known to others in the law enforcement community and to those in Pine Lawn with a duty to control him. Despite a clear and pervasive history of violations of the law and United States Constitution, Blakeney has not been disciplined, more closely supervised or re-trained. On the contrary, he has been promoted and is now a Lieutenant.

Blakeney directed the stop and detention, at gunpoint, of Captain Telano, based on a lie. Blakeney's first encounter with Captain Telano happened miles from that stop. And Blakeney was the aggressor. Captain Telano committed no violation of Pine Lawn ordinance in the presence of Blakeney and, in fact, no violation of state law.

Blakeney used manifestly unreasonable force when, in a blind rage, he accosted and then struck Captain Telano, all while Captain Telano was handcuffed and offering no resistance.

Blakeney caused the arrest and the seizure of Captain Telano's car without probable cause.

Blakeney and Pine Lawn will be liable for damages for these violations of the Fourth Amendment to the United States Constitution. Captain Telano has served the United States as an officer in the United States Army and still serves in the intelligence community. He has a Top Secret compartmental clearance. He has been deployed to Afghanistan, Pakistan, Tajikistan, Uzbekistan, Kuwait and Iraq. Blakeney's statements and conduct were not only obscene, but Captain Telano also was abused while unable to defend himself and faced multiple sidearms pointed at him. Captain Telano was injured. His leg was injured where Blakeney kneed him, his wrists were chafed and bruised, and his hands were numb from the handcuffs.

Blakeney will be liable for punitive damages. Blakeney is the worst kind of bully. He is a coward who will abuse a citizen when he has the subject in cuffs and has other officers around. His conduct and statements to Captain Telano reveal his disregard for the law and the Constitution of the United States. Of equal importance, the repeated misconduct of Blakeney revealed on multiple occasions in multiple contexts, will be admitted on the issue of punitive damages and on the issue of municipal liability. As but one example, Blakeney told both Kristen Moore and Captain Telano that he knew where they lived as means of intimidation and abuse.

There are ample indicators of Blakeney's unfitness to be a peace officer. While an officer in New Athens, Illinois, two brother officers were so concerned about Blakeney's

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER
NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR
OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT

---

Confidential - Produced Under Protective Order

Mr. Hill
November 7, 2014
Page 6 of 8

aggressiveness, inappropriate behavior and statements that they reported his actions to the command staff. Blakeney was dismissed from that agency because of discrepancies in his representations on his application that showed deception. Blakeney was dismissed from the Eastern Missouri Police Academy for behavioral problems, an issue that was noted by his fellow students as well as the cadre. Blakeney was dismissed from the St. Louis Metropolitan Police Department Academy. Blakeney, since beginning work for Pine Lawn, tested positive for cocaine. Blakeney has had orders of protection entered against him and had a firearms restriction that, I believe, he violated. Blakeney was found to be abusive to his former wife and on one occasion stuck a pacifier in her mouth.

I was witness to Blakeney's lack of control and arrogance. When Captain Telano and I appeared prepared to try his charges, I informed the prosecuting attorney that I would be prepared to proceed as soon as my court reporter arrived. I observed Blakeney conferring with the prosecutor and shortly after, while I was having a private conversation with Captain Telano, he approached us and asked, "Do I know you?" He attempted to engage Captain Telano and me in conversation. Neither of us was interested in speaking to him and it was an uncomfortable encounter for many reasons. He then left and Captain Telano reported later that he moved behind me and pretended to be looking at a pamphlet or something, and was eavesdropping on our conversation. For a sworn peace officer to attempt to intercept a privileged communication between an attorney and his client is as reprehensible as anything else Blakeney had done. To compound the insult, after the cases were dismissed and Captain Telano, his wife, and I, were leaving, I learned that Blakeney had been staring down Captain Telano's wife and as we walked away from City Hall, he and his colleagues were seen starting and pointing and laughing at my client.

Blakeney caused the traffic stop of a local police chief and his colleagues that is remarkably similar to the stop of Captain Telano. Blakeney first encountered the Chief, in the downtown area, as he was traveling from a Cardinals game with colleagues. When they reached the city limits of Pine Lawn, Blakeney slowed to allow the Chief's car to pass and then initiated a traffic stop. The officer who accompanied Blakeney was in the background signaling to the Chief by making a circular motion with his index finger near the side of his head, which the Chief took as a comment on Blakeney's competence.

Each of the individuals who are identified in the attached summary has committed to support all litigation that any of them may bring against Blakeney and Pine Lawn. Each of my clients is motivated to contribute to an effort to cause an unbiased and careful review of Blakeney's conduct and his competence to serve as a peace officer. The jury in

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER
NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR
OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT

---

Confidential - Produced Under Protective Order

Mr. Hill
November 7, 2014
Page 7 of 8

Captain Telano's case and in every other will hear a complete account of Blakeney's misconduct since employed by Pine Lawn.

*Offer of Settlement*

On behalf of Captain Roy Anthony Telano, Jerome Dobson and I have been authorized to convey an offer of settlement of Captain Telano's claim for damages and fees pursuant to 42 U.S.C. §§ 1983 and 1988. The terms of the offer:

1. The City of Pine Lawn shall immediately request an investigation of Blakeney by the St. Louis County Police or the Missouri State Highway Patrol. The investigation shall include his background, the incidents described in this letter and in the attachment, and any other incidents that come to light, and shall be in the nature of an internal investigation with the goal of determining whether Blakeney should be disciplined and what the discipline should be.

2. The results of the investigation shall be forwarded to the Missouri Peace Officer Standards and Training Commission (P.O.S.T.).

3. Pine Lawn shall direct that Blakeney shall not exercise police powers unless on duty and unless within the city limits of Pine Lawn.

4. Pine Lawn shall initiate a program of training that reflects instruction using the conduct involving Captain Telano and of the other violations described in the attachment as a foundation for instructing on the constraints of the United States Constitution and the laws and fully explaining how the actions of Blakeney violated them.

5. Pine Lawn shall confess Captain Telano's petition to expunge his arrest record.

6. Pine Lawn and Blakeney shall pay "Captain Telano the sum of Three Hundred Thirty Five Thousand Dollars ($335,000.00) for damages resulting from the injuries suffered by Captain Telano at the hands of Blakeney. The amount of the offer is inclusive of attorney fees and in exchange for the payment and acceptance of the other terms, Captain Telano will provide Blakeney and Pine Lawn with a full release, including a release of attorney fees.

Captain Telano is interested in engaging in limited discussion about the settlement, pre-suit, of his cause and I invite you to reply at your first opportunity. In addition, Captain Telano would be pleased to meet with you to explain what occurred and

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER
NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR
OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT

---

Confidential - Produced Under Protective Order

Mr. Hill
November 7, 2014
Page 8 of 8

how it affected him. Please let me know if your principal is interested in making a diligent effort to resolve Captain Telano's case and, importantly, if not, so I can commence suit without undue delay.

Very truly yours,

Stephen M. Ryals

SMR/mvo
Enclosure: Case Synopses

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER
NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR
OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT

Confidential - Produced Under Protective Order

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS
NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE
ADMISSIBLE IN ANY LAWSUIT
Page 1 of 5

## City of Pine Lawn/Steven Blakeney
## Case Synopses

*Date of Occurrence: 6/23/11. Kristen Moore.*

Blakeney was a corporal, off duty when he stopped Kristen Moore, while she was driving to work.

On June 23, 2011 at approximately 6:30 p.m., while driving to work at Washington University/Barnes Hospital In St. Louis from her home in Waterloo, Illinois. While off duty in his private SUV, Blakeney pulled over Kristen Moore. His children were in the vehicle with him. Blakeney approached Ms. Moore. In a rage and his behavior only got worse. He released Ms. Moore without a citation and she learned later that he had proffered a C&I charge against her that the State did not pursue.

Blakeney's personal vehicle was equipped with police lights and other police equipment.

Blakeney threatened Ms. Moore by telling her that he knew where she lived and after the incident Ms. Moore saw him following her.

Ms. Moore lodged a complaint and a City official told her to excuse the conduct because Blakeney had come from a funeral.

A Google search of "officer steven blakeney" will lead to a new report on Fox 2 that reports on this incident.

*DOI: 10/5/12. Tremmell McCole*

With Sidney Sinclair. Tremmell McCole and Sidney Sinclair were walking from the home of Mr. McCole. As they were walking, they noticed an undercover police car in the middle of the street. Blakeney, brandishing a shotgun, approached the pair from a distance of a couple of houses away and said, "come here, boy." Other officers arrived and while Blakeney held the shotgun on them, threw Mr. McCole to the ground and began kicking him. Blakeney kicked Mr. McCole in the face. He was then pulled up and violently thrown against the police car and thrown in the back. Blakeney choked Mr. McCole while he was handcuffed.

Mr. McCole was held in jail for a week on charges related to a derelict vehicle and the failure to appear on those charges. Mr. McCole never resided in Pine Lawn and did not

Confidential - Produced Under Protective Order

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS
NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE
ADMISSIBLE IN ANY LAWSUIT
Page 2 of 5

own a vehicle. He was also charged with Failure to Comply and Disorderly Conduct. All charges were dismissed.

*DOI: 10/5/12. Sidney Sinclair*

Walking with Tremmell McCole. Mr. Sinclair was in a suit as he had just come from a job interview. He witnessed Blakeney abusing Tremmell McCole and yelled for him to stop and then, "come here, boy." Blakeney then told him he was falling to comply and was going to jail. Mr. Sinclair told Blakeney that he had not done anything wrong and noted his suit. Blakeney said, "Oh, so being in a suit and tie makes you better than me?" As Mr. Sinclair saw Blakeney abusing Tremmell McCole he overheard officers and Blakeney – Blakeney said, "What? You disagree with what I'm doing? No? Then shut the fuck up." Mr. Sinclair bonded out and his case was ultimately dismissed. Mr. Sinclair related the bad reputation of Blakeney and said that several officers hinted that Blakeney is a problem officer and this sort of behavior is not unusual for him.

*DOI: 12/7/12. Nakita Jackson*

Nakita Jackson was visiting at her sister's home. They walked to the bus stop to meet her niece. There was a fight or tussle involving the children. The police arrived and Blakeney punched her in the face and choked her and others threw her to the ground, put a knee in her back and put a Taser against her neck. She yelled that she was pregnant and they did not Taser her. While on the ground, she had abdominal and back pain and vomited. She asked for medical attention and Blakeney said "her ass will be fine." She asked Blakeney why he hit her and he said, "get the fuck back before I hit you again." She was taken to jail, bonded out and all the charges were dismissed.

Blakeney made statements that contained racial slurs.

Ms. Jackson asked to speak to a supervisor and Blakeney said that he was in charge – that nobody was above him. Ms. Jackson complained to then Chief Ricky Collins who said, "Let me guess when this happened. 2nd shift, around 3:00 p.m. That shift is always fucking up." Blakeney ordered the arrest of multiple people, including children.

*DOI: 3/16/13. Kaleisha Beck*

Kaleisha Beck was staying with Racquel Wooten and family on James A. Harvey Lane, Wellston, a neighboring community to Pine Lawn. At approximately 10:30 p.m., K.B. came out of a main level room and saw five cops in living room. She was detained on a couch for 30 minutes at gunpoint.

Confidential - Produced Under Protective Order

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS
NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE
ADMISSIBLE IN ANY LAWSUIT
Page 3 of 5

The officers were from Pine Lawn and were in Wellston attempting to apprehend a woman who had a warrant. They apparently thought Racquel Wooten was the woman, but Racquel Wooten was the wanted woman's sister. The wanted woman was not present. It does not appear that they had a search warrant.

A Wellston officer, Sgt. Bickley, showed up and is a witness to the unlawful entry and search of the residence by Pine Lawn officers, including Blakeney. Racquel Wooten saw an argument between Sgt. Bickley and P.L. officers about them blocking the street.

*DOI: 3/16/13. Racquel Wooten*

Racquel Wooten sat home, reading in her upstairs bedroom, when Pine Lawn officers came in looking for Katrena W. guns drawn. The police rounded up and detained at gunpoint Ms. Wooten and her five children, along with Kaleisha Beck and her small child. At some point, she encountered Sgt. Bickley from Wellston. He told her that it was not Wellston P.D. in home. She also saw Bickly arguing with a P.L. cop outside about unblocking the street. Ms. Wooten was cuffed and accused of being Katrena W.

The police had no arrest warrant and no search warrant

*DOI: 7/19/13 Roy Anthony Telano.*

Anthony Telano is a former police officer, up through the ranks Captain in the United States Army (now in IMA status) and employee of the National Geospatial Agency. While off duty (we believe), Blakeney orchestrated the traffic stop and arrest of Capt. Telano, the search and towing of his car and, the filing of charges against him. When the Pine Lawn officers pulled Capt. Telano over, Blakeney came running up yelling, "who's the tough guy." His assaulted Capt. Telano.

The charges were dismissed

Blakeney made a statement to Capt. Telano that he was a disgrace to the military. Blakeney made a comment about knowing where Capt. Telano lives, similar to what he said to Kristen Moore.

*DOI: 4/10/14. Jordan Mariner*

Jordan Mariner is a young college student who was traveling to her boyfriend's apartment in St. Louis from Columbia, Missouri. She was pulled over by Blakeney and, ultimately, arrested after questioning the lawfulness of the search of her car. When she retrieved her car from impound, she found that her personal belongings, including a computer, clothing and personal items, were damaged from grease and from having the spare tire thrown on top of them.

Confidential - Produced Under Protective Order

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS
NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE
ADMISSIBLE IN ANY LAWSUIT
Page 4 of 5

During their encounter, Blakeney examined Ms. Mariner's cell phone, ordered her to give him the pass code and texted a message posing as her to her boyfriend. He also asked her whether she like to go to raves.

After Blakeney arrested Ms. Mariner she began to cry. He seemed to enjoy that and said that she was going to find out how bad this part of town was.

*DOI: 6/13/14. Hamilton and Jones Families and Tony Richard II*

Seven people at a family gathering were arrested, assaulted, pepper sprayed and charged. The homeowner is a cancer patient and had hosted two family gatherings each year for approximately thirty years. The police first came because they said there was a complaint about shots fired. One of the men told the officers that they had not heard any shots. Blakeney arrived and began aggressively cursing the man talking to the officer. He then got on the loud speaker and told everyone to "get the fuck inside." The man who was talking to the officer told Blakeney that he had no call to curse, and that there were children inside the house. Blakeney said, "fuck the kids."

Then, the officers crossed the fence and began using force on people despite there being no threats against the officers and no resistance. The used force, including the Taser, pepper spray and hands on, against a number of the family members. They arrested women and men alike. One of the arrestees is a family friend who is active duty United States Coast Guard. One of the officers shoved the cancer victim homeowner against a door-frame and caused her chemo port to hang against the frame.

One family member was pepper sprayed because he was recording the abuses. Everyone who was arrested had their phones seized and all of the recorded footage was deleted from each phone.

### Additional Information Regarding Pine Lawn/Blakeney

* The Mayor of Pine Lawn, Sylvester Caldwell, has been indicted by the United States.
* Blakeney was (or still is) the subject of an order of protection that prohibits him from being armed except on duty in Pine Lawn.
* One of Blakeney's sons came home with a cell phone given to him by Blakeney. It is possible that the cell phone was seized by the P.L. police or Blakeney.
* Sidney Sinclair's phone was seized and was not returned to him when he bonded out. He utilized a tracking feature on the phone that located it in south St. Louis County at or near an address associated with Blakeney.

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS
NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE
ADMISSIBLE IN ANY LAWSUIT
Page 5 of 5

* A former officer can testify that he has seen Blakeney high or drunk and armed. On one occasion, he arrived at a multi-agency search for a missing person armed with an AR-15 and had come to the scene from the East Side.
* Blakeney tested positive for cocaine.
* Blakeney is known to frequent the strip clubs on the East Side and even goes there while on duty.
* Similar to the stop of Anthony Telano, Blakeney stopped the St. Ann Chief of Police. Blakeney and his partner followed the Chief's car from downtown, some 7 or 8 miles from Pine Lawn and after they passed through Pine Lawn, let the Chief's car pass and then pulled it over. Blakeney was apparently on duty on this occasion.
* Blakeney is a notorious liar.
* While in court with Capt. Telano, Blakeney was eavesdropping on a private conversation I was having with my client.
* One client who was at Pine Lawn to retrieve property or complain was told by the clerk, "Blakeney again."
* Blakeney started as a corporal and was promoted twice and is now a lieutenant.
* There may be a sizeable number of officers who will testify about Blakeney's abusive and extra-legal practices. For example, he is reported to go outside his jurisdiction and stop motorists in the City of St. Louis. He may secure plates from cars towed to Eddie's, affix them to his car and ride through the city assaulting people. Another report is that he will go to the East Side clubs while on duty and get drunk and/or high.
* Blakeney was accused of rape (off duty).
* Blakeney beat and humiliated his former wife. On one occasion he threw her down, locked her out of the house and stuck a pacifier in her mouth.
* Former Pine Lawn Chief of Police Ricky Collins has a troubled past. Among the cases of which I am aware, he broke a nightstick over the head of my client and charged him with the destruction of city property.

Confidential - Produced Under Protective Order

KALEISHA BECK

---

THE RYALS LAW FIRM, P.C.
ATTORNEYS AT LAW

STEPHEN M. RYALS

OF COUNSEL:
STEVEN J. CAPIZZI

16640 CHESTERFIELD GROVE ROAD
SUITE 100
CHESTERFIELD, MISSOURI 63005
TELEPHONE (314) 862-6262
FAX: (636) 536-6062

November 7, 2014

Blake D. Hill, Esq.
King, Krehbiel & Hellmich, LLC
2000 So. Hanley Road
St. Louis, Missouri 63144

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER
NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR
OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT

Re: *Kaleisha Beck v. City of Pine Lawn and Steven Blakeney*

Dear Blake:

To follow our recent discussions, I represent Kaleisha Beck in her claim for damages against the City of Pine Lawn and Steven Blakeney arising from the unlawful entry and search of her residence by Steven Blakeney and other Pine Lawn officers on March 16, 2013. Blakeney's conduct violated Ms. Beck's Fourth Amendment rights for which she will seek redress pursuant to 42 U.S.C. §§1983 and 1988.

The City of Pine Lawn is liable for the constitutionally violative conduct of Blakeney because Blakeney has engaged, and continues to engage, in conduct that is unconstitutional and The City was and is aware of his conduct and failed to exercise its duty to supervise and control Blakeney. Attached is a summary of additional cases. I represent each of the individuals identified in the attachment and each of them has committed to support Ms. Beck and one another in pursuit of their remedies, including the public policy concerns of each of them.

*The Incident Involving Kaleisha Beck and Blakeney*

On March 16, 2013 at approximately 10:30 p.m., Kaleisha Beck was in the computer room on the ground floor of her home located at 1819 ½ James A. Harvey Lane, located in Wellston, Missouri when she heard loud noises. She rounded a corner and encountered multiple police officers, weapons displayed. She was holding her two-year old child, Sanya. The officers immediately detained her and ordered her to sit on a couch while they conducted a search of the residence that lasted approximately thirty minutes.

Confidential - Produced Under Protective Order

Mr. Hill
November 7, 2014
Page 2 of 4

*Liability of Blakeney and Pine Lawn*

The Pine Lawn officers did not have a search warrant for the home of Ms. Beck and, apparently, there was not even an arrest warrant for Katrena Wooten. The lawfulness of the police intrusion is beyond dispute. First the officers were not within their own city limits. Second, they had no warrant to enter the home (or to arrest Katrena, if they found her). Third, there was no exigency or consent to enter the home.

Blakeney's abusive actions are well known to others in the law enforcement community and to those in Pine Lawn with a duty to control him. Despite a clear and pervasive history of violations of the law and United States Constitution, Blakeney has not been disciplined, more closely supervised or re-trained. On the contrary, he has been promoted and is now a Lieutenant. He clearly is permitted to do what he wants, when he wants and where he wants.

There are ample indicators of Blakeney's unfitness to be a peace officer, apart from the multiple incidents reflected in the attachment. While an officer in New Athens, Illinois, two brother officers were so concerned about Blakeney's aggressiveness, inappropriate behavior and statements that they reported his actions to the command staff. Blakeney was dismissed from that agency because of discrepancies in his representations on his application that showed deception. Blakeney was dismissed from the Eastern Missouri Police Academy for behavioral problems, an issue that was noted by his fellow students as well as the cadre. Blakeney was dismissed from the St. Louis Metropolitan Police Department Academy. Blakeney, since beginning work for Pine Lawn, tested positive for cocaine. Blakeney has had orders of protection entered against him and had a firearms restriction that, I believe, he violated. Blakeney was found to be abusive to his former wife and on one occasion stuck a pacifier in her mouth.

Each of the individuals who are identified in the attached summary has committed to support all litigation that any of them may bring against Blakeney and Pine Lawn. Each of my clients is motivated to contribute to an effort to cause an unbiased and careful review of Blakeney's conduct and his competence to serve as a peace officer. The jury in Ms. Beck's case and in every other will hear a complete account of Blakeney's misconduct since employed by Pine Lawn.

*Kaleisha Beck's Claims*

There is perhaps no more egregious violation than a citizen can suffer than to have the police unlawfully enter the home, guns drawn, seizing and detaining those who they find. To make the intrusion more offensive, Ms. Beck's child was present.

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER
NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR
OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT

Confidential - Produced Under Protective Order

Mr. Hill
November 7, 2014
Page 3 of 4

*Offer of Settlement*

On behalf of Kaleisha Beck, I have been authorized to convey an offer of settlement of her claim for damages and fees pursuant to 42 U.S.C. §§ 1983 and 1988. The terms of the offer:

1.  The City of Pine Lawn shall immediately request an investigation of Blakeney by the St. Louis County Police or the Missouri State Highway Patrol. The investigation shall include his background, the incidents described in this letter and in the attachment and any other incidents that come to light, and shall be in the nature of an internal investigation with the goal of determining whether Blakeney should be disciplined and what the discipline should be.

2.  The results of the investigation shall be forwarded to the Missouri Peace Officer Standards and Training Commission (P.O.S.T.).

3.  Pine Lawn shall direct that Blakeney shall not exercise police powers unless on duty and unless within the city limits of Pine Lawn.

4.  Pine Lawn shall initiate a program of training that reflects instruction using the treatment Kaleisha Beck and of the other violations described in the attachment as a foundation for instructing on the limits of the United States Constitution and the laws and fully explaining how the actions of Blakeney violated them.

5.  Pine Lawn and Blakeney shall pay Kaleisha Beck the sum of Seventy Five Thousand Dollars ($75,000.00) for damages resulting from the injuries suffered by Ms. Beck and her children at the hands of Blakeney. The amount of the offer is inclusive of attorney fees and in exchange for the payment and acceptance of the other terms, Ms. Beck will provide Blakeney and Pine Lawn with a full release, including a release of attorney fees.

Ms. Beck intends to engage in limited discussion about the settlement, pre-suit, of her cause and I invite you to reply at your first opportunity. Please let me know if your principal is interested in making a diligent effort to resolve Kaleisha Beck's case and, importantly, if not, so I can commence suit without undue delay.

Very truly yours,

Stephen M. Ryals

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER
NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR
OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT

City 1326

---

Confidential - Produced Under Protective Order

Mr. Hill
November 7, 2014
Page 4 of 4

SMR/avo
Enclosure: Case Synopses

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER
NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR
OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT

City 1329

---

Confidential - Produced Under Protective Order

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS
NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE
ADMISSIBLE IN ANY LAWSUIT
Page 1 of 5

City of Pine Lawn/Steven Blakeney
Case Synopses

*Date of Occurrence: 6/23/11. Kristen Moore.*

Blakeney was a corporal, off duty when he stopped Kristen Moore. while she was driving to work.

On June 23, 2011 at approximately 6:30 p.m., while driving to work at Washington University/Barnes Hospital in St. Louis from her home in Waterloo, Illinois. While off duty in his private SUV, Blakeney pulled over Kristen Moore. His children were in the vehicle with him. Blakeney approached Ms. Moore. in a rage and his behavior only got worse. He released Ms. Moore without a citation and she learned later that he had preferred a C&I charge against her that the State did not pursue.

Blakeney's personal vehicle was equipped with police lights and other police equipment.

Blakeney threatened Ms. Moore by telling her that he knew where she lived and after the incident Ms. Moore saw him following her.

Ms. Moore lodged a complaint and a City official told her to excuse the conduct because Blakeney had come from a funeral.

A Google search of "officer steven blakeney" will lead to a new report on Fox 2 that reports on this incident.

*DOI: 10/3/12. Tremmell McCole*

With Sidney Sinclair, Tremmell McCole and Sidney Sinclair were walking from the home of Mr. McCole. As they were walking, they noticed an undercover police car in the middle of the street. Blakeney, brandishing a shotgun, approached the pair from a distance of a couple of houses away and said, "come here, boy." Other officers arrived and while Blakeney held the shotgun on them, threw Mr. McCole to the ground and began kicking him. Blakeney kicked Mr. McCole in the face. He was then pulled up and violently thrown against the police car and thrown in the back. Blakeney choked Mr. McCole while he was handcuffed.

Mr. McCole was held in jail for a week on charges related to a derelict vehicle and the failure to appear on those charges. Mr. McCole never resided in Pine Lawn and did not

City 1330

---

Confidential - Produced Under Protective Order

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS
NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE
ADMISSIBLE IN ANY LAWSUIT
Page 2 of 5

own a vehicle. He was also charged with Failure to Comply and Disorderly Conduct. All charges were dismissed.

*DOI: 10/3/12. Sidney Sinclair*

Walking with Tremmell McCole. Mr. Sinclair was in a suit as he had just come from a job interview. He witnessed Blakeney abusing Tremmell McCole and yelled for him to stop and then, "come here, boy." Blakeney then told him he was failing to comply and was going to jail. Mr. Sinclair told Blakeney that he had not done anything wrong and noted his suit. Blakeney said, "Oh, so being in a suit and tie makes you better than me?" As Mr. Sinclair saw Blakeney abusing Tremmell McCole he overheard officers and Blakeney – Blakeney said, "What? You disagree with what I'm doing? No? Then shut the fuck up." Mr. Sinclair bonded out and his case was ultimately dismissed. Mr. Sinclair related the bad reputation of Blakeney and said that several officers hinted that Blakeney is a problem officer and this sort of behavior is not unusual for him.

*DOI: 12/7/12. Nakita Jackson*

Nakita Jackson was visiting at her sister's home. They walked to the bus stop to meet her niece. There was a fight or tussle involving the children. The police arrived and Blakeney punched her in the face and choked her and others threw her to the ground, put a knee in her back and put a Taser against her neck. She yelled that she was pregnant and they did not Taser her. While on the ground, she had abdominal and back pain and vomited. She asked for medical attention and Blakeney said "her ass will be fine." She asked Blakeney why he hit her and he said, "get the fuck back before I hit you again." She was taken to jail, bonded out and all the charges were dismissed.

Blakeney made statements that contained racial slurs.

Ms. Jackson asked to speak to a supervisor and Blakeney said that he was in charge – that nobody was above him. Ms. Jackson complained to then Chief Ricky Collins who said, "Let me guess when this happened. 2nd shift, around 3:00 p.m. That shift is always fucking up." Blakeney ordered the arrest of multiple people, including children.

*DOI: 3/16/13. Kaleisha Beck*

Kaleisha Beck was staying with Raequel Wooten and family on James A. Harvey Lane, Wellston, a neighboring community to Pine Lawn. At approximately 10:30 p.m., K.B. came out of a main level room and saw five cops in living room. She was detained on a couch for 30 minutes at gunpoint.

City 1331

Confidential - Produced Under Protective Order

**CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS
NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE
ADMISSIBLE IN ANY LAWSUIT
Page 3 of 5**

The officers were from Pine Lawn and were in Wellston attempting to apprehend a woman who had a warrant. They apparently thought Racquel Wooten was the woman, but Racquel Wooten was the wanted woman's sister. The wanted woman was not present. It does not appear that they had a search warrant.

A Wellston officer, Sgt. Bickley, showed up and is a witness to the unlawful entry and search of the residence by Pine Law officers, including Blakeney. Racquel Wooten saw an argument between Sgt. Bickley and P.L. officers about them blocking the street.

*DOI: 3/16/13. Racquel Wooten*

Racquel Wooten was at home, reading in her upstairs bedroom, when Pine Lawn officers came in looking for Katrena W. guns drawn. The police rounded up and detained at gunpoint Ms. Wooten and her five children, along with Kaleisha Beck and her small child. At some point, she encountered Sgt. Bickley from Wellston. He told her that it was not Wellston P.D. in home. She also saw Bickly arguing with a P.L. cop outside about unblocking the street. Ms. Wooten was cuffed and accused of being Katrena W.

The police had no arrest warrant and no search warrant

*DOI: 7/19/13  Ray Anthony Telano.*

Anthony Telano is a former police officer, up through the ranks Captain in the United States Army (now in IMA status) and employee of the National Geospatial Agency. While off duty (we believe), Blakeney orchestrated the traffic stop and arrest of Capt. Telano, the search and towing of his car and, the filing of charges against him. When the Pine Lawn officers pulled Capt. Telano over, Blakeney came running up yelling, "who's the tough guy." He assaulted Capt. Telano.

The charges were dismissed

Blakeney made a statement to Capt. Telano that he was a disgrace to the military. Blakeney made a comment about knowing where Capt. Telano lives, similar to what he said to Kristen Moore.

*DOI: 4/10/14.  Jordan Martner*

Jordan Martner is a young college student who was traveling to her boyfriend's apartment in St. Louis from Columbia, Missouri. She was pulled over by Blakeny and, ultimately, arrested after questioning the lawfulness of the search of her car. When she retrieved her car from impound, she found that her personal belongings, including a computer, clothing and personal items, were damaged from grease and from having the spare tire thrown on top of them.

Confidential - Produced Under Protective Order

**CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS
NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE
ADMISSIBLE IN ANY LAWSUIT
Page 4 of 5**

During their encounter, Blakeney examined Ms. Martner's cell phone, ordered her to give him the pass code and texted a message posing as her to her boyfriend. He also asked her whether she like to go to raves.

After Blakeney arrested Ms. Martner she began to cry. He seemed to enjoy that and said that she was going to find out how bad this part of town was.

*DOI: 6/13/14.  Hamilton and Jones Families and Tony Richard II*

Seven people at a family gathering were arrested, assaulted, pepper sprayed and charged. The homeowner is a cancer patient and had hosted two family gatherings each year for approximately thirty years. The police first came because they said there was a complaint about shots fired. One of the men told the officer that they had not heard any shots. Blakeney arrived and began aggressively cursing the men talking to the officer. He then got on the loud speaker and told everyone to "get the fuck inside." The man who was talking to the officer told Blakeney that he had no cell to curse, and that there were children inside the house. Blakeney said, "fuck the kids."

Then, the officers crossed the fence and began using force on people despite there being no threats against the officers and no resistance. The used force, including the Taser, pepper spray and hands on, against a number of the family members. They arrested women and men alike. One of the arrestees is a family friend who is active duty United States Coast Guard. One of the officers shoved the cancer victim homeowner against a door-frame and caused her chemo port to bang against the frame.

One family member was pepper sprayed because he was recording the abuses. Everyone who was arrested had their phones seized and all of the recorded footage was deleted from each phone.

*Additional Information Regarding Pine Lawn/Blakeney*

- The Mayor of Pine Lawn, Sylvester Caldwell, has been indicted by the United States.
- Blakeney was (or still is) the subject of an order of protection that prohibits him from being armed except on duty in Pine Lawn.
- One of Blakeney's sons came home with a cell phone given to him by Blakeney. It is possible that the cell phone was seized by the P.L. police or Blakeney.
- Sidney Sinclair's phone was seized and was not returned to him when he bonded out. He utilized a tracking feature on the phone that located it in south St. Louis County at or near an address associated with Blakeney.

Confidential - Produced Under Protective Order

**CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS
NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE
ADMISSIBLE IN ANY LAWSUIT
Page 5 of 5**

- A former officer can testify that he has seen Blakeney high or drunk and armed. On one occasion, he arrived at a multi-agency search for a missing person armed with an AR-15 and had come to the scene from the East Side.
- Blakeney tested positive for cocaine.
- Blakeney is known to frequent the strip clubs on the East Side and even goes there while on duty.
- Similar to the stop of Anthony Telano, Blakeney stopped the St. Ann Chief of Police. Blakeney and his partner followed the Chief's car from downtown, some 7 or 8 miles from Pine Lawn and after they passed through Pine Lawn, let the Chief's car pass and then pulled it over. Blakeney was apparently on duty on this occasion.
- Blakeney is a notorious liar.
- While in court with Capt. Telano, Blakeney was eavesdropping on a private conversation I was having with my client.
- One client who was at Pine Lawn to retrieve property or complain was told by the clerk, "Blakeney again."
- Blakeney started as a corporal and was promoted twice and is now a lieutenant.
- There may be a sizeable number of officers who will testify about Blakeney's abusive and extra-legal practices. For example, he is reported to go outside his jurisdiction and stop motorists in the City of St. Louis. He may secure plates from cars towed to Eddie's, affix them to his car and ride through the city assaulting people. Another report is that he will go to the East Side clubs while on duty and get drunk and or high.
- Blakeney was accused of rape (off duty).
- Blakeney beat and humiliated his former wife. On one occasion he threw her down, locked her out of the house and stuck a pacifier in her mouth.
- Former Pine Law Chief of Police Ricky Collins has a troubled past. Among the cases of which I am aware, he broke a nightstick over the head of my client and charged him with the destruction of city property.

Confidential - Produced Under Protective Order

JORDAN MARTNER

Confidential - Produced Under Protective Order

## THE RYALS LAW FIRM, P.C.
### ATTORNEYS AT LAW

STEPHEN M. RYALS

OF COUNSEL:
STEVEN I. GRAM

16640 CHESTERFIELD GROVE ROAD
SUITE 100
CHESTERFIELD, MISSOURI 63005
TELEPHONE (314) 862-6262
FAX (636) 536-6062

November 7, 2014

Blake D. Hill, Esq.
King, Krehbiel & Hellmich, LLC
2000 So. Hanley Road
St. Louis, Missouri 63144

**CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER**
**NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR**
**OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT**

Re: *Jordan Martner v. City of Pine Lawn and Steven Blakeney*

Dear Blake:

To follow our recent discussions, I represent Jordan Martner in her claim for damages against the City of Pine Lawn and Steven Blakeney arising from the unlawful stop, search and arrest by Steven Blakeney on April 14, 2014. Blakeney's conduct violated Ms. Martner's Fourth Amendment rights for which she will seek redress pursuant to 42 U.S.C. §§1983 and 1988.

The City of Pine Lawn is liable for the constitutionally violative conduct of Blakeney because Blakeney has engaged, and continues to engage, in conduct that is unconstitutional and the City was and is aware of his conduct and failed to exercise its duty to supervise and control Blakeney. Attached is a summary of additional cases. I represent each of the individuals identified in the attachment and each of them has committed to support Ms. Martner and one another in pursuit of their remedies, including the public policy concerns of each of them.

**The Incident Involving Jordan Martner and Blakeney**

On April 10, 2014 at approximately 1:00 a.m., Jordan Martner was traveling from Columbia, Missouri, where she was a student, to St. Louis where she was visiting a friend. She was approaching the Broadway exit in downtown St. Louis when she saw a car approaching her at a high rate of speed from the rear. Her radar detector chirped and she merged to the right lane. The fast approaching car followed and then activated emergency lights causing Ms. Martner to pull over and stop.

Confidential - Produced Under Protective Order

Mr. Hill
November 7, 2014
Page 2 of 5

Blakeney immediately appeared at her window and ordered Ms. Martner to get out. She complied. She provided her identification as requested and Blakeney asked what she was doing before he pulled her over. She did not understand the question and inquired what he meant. He accused her of "being an ass and playing games with me" as he approached. Blakeney accused her of going 80 miles per hour. She demurred. He then said, "O.K. 75 then."

As she sat on the back bumper as directed, she observed that Blakeney was conducting a search of her car, going into the center console, the glove-box and under the seat. There was another officer at the scene and she asked him why her vehicle was being searched. He replied that he did not know and she should ask Blakeney. So, she did. His reply was (with a laugh), "Because I can. What, are you a criminal justice major, or something?" Ms. Martner replied that she was not, but that her dad is an attorney and that there was no probable cause to search her car. Blakeney then told her, "I don't give a shit what your dad is," as he charged toward her aggressively. Then he said, "You are interrupting my work. Want to know what happens now? Turn around, you are under arrest for speeding." Blakeney cuffed her and placed her in the back of the second officer's car. He then continued the search of her car.

Blakeney told Ms. Martner that because of how "disrespectful" she was, she would have to pay a bond and pay for her car to be towed. He also told her that he was taking her to the "ghetto." Blakeney asked who would be picking her up at the police station. After she told him that it would be her friend, Brett, Blakeney accessed her phone and sent a text message to Brett, pretending to be Ms. Martner. When the phone locked, he demanded her security code, which she provided. Blakeney then asked her if she liked to go to raves and why she had so many apps on her phone. Lastly, Blakeney asked whether Ms. Martner knew where she was. She replied that it was an unsafe area? That gave Blakeney glee as he smiled and stated that she was "about to find out." Prior to making that statement to Ms. Martner, she was weeping and Blakeney's comment was an unadulterated cruelty.

The officer who transported Ms. Martner asked her whether she knew Blakeney's name. She told him that she did not. The officer then volunteered that it was Blakeney. Ms. Martner asked the officer whether she had been disrespectful and he replied, "No."

The next morning, Ms. Martner went to Pine Lawn to secure a release for her car. The clerk asked whether she had any prior arrests, a suspended license or other negative history. She then informed Ms. Martner that she has seen Blakeney do this many times and nothing is ever done about it.

**CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER**
**NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR**
**OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT**

Mr. Hill
November 7, 2014
Page 3 of 5

When she recovered her car from Eddie's Towing, she discovered that the car had been trashed. Her glasses were ripped from their case, the case was damaged and papers were strewn throughout the car. The worst, however, was what she found in the trunk. Her clothes were removed from her luggage and scattered in the trunk. Her make-up case was emptied and dumped on her clothes. The spare tire was thrown on top of her book bag that contained her laptop and the laptop was broken. Two bottles of oil had been thrown and oil was spilled on her personal items.

Ms. Martner is charged with careless and imprudent driving, no seat belt, failure to signal a turn, no proof of insurance, and no operator's license in possession.

*Liability of Blakeney and Pine Lawn*

An incident report was prepared alleging that Ms. Martner stopped her vehicle at I-70 and Union. That is a lie as are the details of the alleged offenses. She was not pulled over until near the new Musial Veteran's Bridge, downtown, some seven or so miles away. Moreover, even assuming the truth of the report, it does not appear that Ms. Martner committed an offense within the city limits of Pine Lawn, or at best, it is questionable. Blakeney's habit of pulling taking enforcement action outside of Pine Lawn is well established.

Blakeney's abusive actions are well known to others in the law enforcement community and to those in Pine Lawn with a duty to control him. Despite a clear and pervasive history of violations of the law and United States Constitution, Blakeney has not been disciplined, more closely supervised or re-trained. On the contrary, he has been promoted and is now a Lieutenant. He clearly is permitted to do what he wants, when he wants and where he wants.

There are ample indicators of Blakeney's unfitness to be a peace officer, apart from the multiple incidents reflected in the attachment. While an officer in New Athens, Illinois, two brother officers were so concerned about Blakeney's aggressiveness and inappropriate behavior and statements that that reported his actions to the command staff. Blakeney was dismissed from that agency because of discrepancies in his representations on his application that showed deception. Blakeney was dismissed from the Eastern Missouri Police Academy for behavioral problems, an issue that was noted by his fellow students as well as the cadre. Blakeney was dismissed from the St. Louis Metropolitan Police Department Academy. Blakeney, since beginning work for Pine Lawn, tested positive for cocaine. Blakeney has had orders of protection entered against him and had a firearms restriction that, I believe, he violated. Blakeney was found to be abusive to his former wife and on one occasion stuck a pacifier in her mouth.

**CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER**
**NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR**
**OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT**

Mr. Hill
November 7, 2014
Page 4 of 5

Each of the individuals who are identified in the attached summary has committed to support all litigation that any of them may bring against Blakeney and Pine Lawn. Each of my clients is motivated to contribute to an effort to cause an unbiased and careful review of Blakeney's conduct and his competence to serve as a peace officer. The jury in Ms. Martner's case and in every other will have a more complete account of Blakeney's misconduct since employed by Pine Lawn.

*Jordan Martner's Claims*

This time, Blakeney chose as the object of his deviance, a young, attractive student who was particularly vulnerable based on her age and inexperience. Blakeney unlawfully characterized her asking a question about his search of her vehicle (having said he was searching it "because I can"), as an interruption of his "work" and disrespectful. It was neither and, in fact, was nothing more or less than the exercise of the First Amendment right to question the government and its agents. There is no radar proof of speed and the rest of the account relies on the integrity of Blakeney, which is to say, it is without foundation.

Perhaps as offensive as the retaliation for Ms. Martner's "disrespect," including the damage to her property and the unlawful arrest, detention and seizure of her vehicle (by Eddie's Towing), is that Blakeney once again evidenced his cruelty. He took particular delight in Ms. Martner's distress and exacerbated it with the final statement that she was about to find out how unsafe the area was.

Ms. Martner's encounter and aftermath is not the first time that others – both officer and city employees – have made comments that support the well-known history of Blakeney.

*Offer of Settlement*

On behalf of Jordan Martner, I have been authorized to convey an offer of settlement of her claim for damages and fees pursuant to 42 U.S.C. §§ 1983 and 1988. The terms of the offer:

1. All ordinance violation charges against Ms. Martner shall be dismissed without costs and her bond money is immediately refunded *in toto*.

2. Pine Lawn shall confess Ms. Martner's petition for expungement of her arrest record.

3. The City of Pine Lawn shall immediately request an investigation of Blakeney by the St. Louis County Police or the Missouri State Highway Patrol. The

**CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER**
**NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR**
**OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT**

No

Mr. Hill
November 7, 2014
Page 5 of 5

investigation shall include his background, the incidents described in this letter and in the attachment and any other incidents that come to light, and shall be in the nature of an internal investigation with the goal of determining whether Blakeney should be disciplined and what the discipline should be.

4. The results of the investigation shall be forwarded to the Missouri Peace Officer Standards and Training Commission (P.O.S.T.).

5. Pine Lawn shall direct that Blakeney shall not exercise police powers unless on duty and unless within the city limits of Pine Lawn.

6. Pine Lawn shall initiate a program of training that reflects instruction using the treatment Jordan Martner and of the other violations described in the attachment as a foundation for instructing on the limits of the United States Constitution, and the laws and fully explaining how the actions of Blakeney violated them.

7. Pine Lawn and Blakeney shall pay Jordan Martner the sum of Four Hundred Sixty Five Thousand Dollars ($465,000.00) for damages resulting from the injuries suffered by Ms. Martner at the hands of Blakeney. The amount of the offer is inclusive of attorney fees and in exchange for the payment and acceptance of the other terms, Ms. Martner will provide Blakeney and Pine Lawn with a full release, including a release of attorney fees.

Ms. Martner intends to engage in limited discussion about the settlement, pre-suit, of her cause and I invite you to reply at your first opportunity. Please let me know if your principal is interested in making a diligent effort to resolve Jordan Martner's case and, importantly, if not, so I can commence suit without undue delay.

Very truly yours,

Siegfried M. Ryals

SMR/rmvo
Enclosure: Case Synopses

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER
NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR
OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT

---

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS
NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE
ADMISSIBLE IN ANY LAWSUIT
Page 1 of 5

## City of Pine Lawn/Steven Blakeney
### Case Synopses

*Date of Occurrence: 5/23/11. Kristen Moore.*

Blakeney was a corporal, off duty when he stopped Kristen Moore. while she was driving to work.

On June 23, 2011 at approximately 6:30 p.m., while driving to work at Washington University/Barnes Hospital in St. Louis from her home in Waterloo, Illinois. While off duty in his private SUV, Blakeney pulled over Kristen Moore. His children were in the vehicle with him. Blakeney approached Ms. Moore. In a rage and his behavior only got worse. He released Ms. Moore without a citation and she learned later that he had preferred a C&I charge against her that the State did not pursue.

Blakeney's personal vehicle was equipped with police lights and other police equipment.

Blakeney threatened Ms. Moore by telling her that he knew where she lived and after the incident Ms. Moore saw him following her.

Ms. Moore lodged a complaint and a City official told her to excuse the conduct because Blakeney had come from a funeral.

A Google search of "officer steven blakeney" will lead to a news report on Fox 2 that reports on this incident.

*DOI: 10/5/12. Tremmell McCole*

With Sidney Sinclair, Tremmell McCole and Sidney Sinclair were walking from the home of Mr. McCole. As they were walking, they noticed an undercover police car in the middle of the street. Blakeney, brandishing a shotgun, approached the pair from a distance of a couple of houses away and said, "come here, boy." Other officers arrived and while Blakeney held the shotgun on them, threw Mr. McCole to the ground and began kicking him. Blakeney kicked Mr. McCole in the face. He was then pulled up and violently thrown against the police car and thrown in the back. Blakeney choked Mr. McCole while he was handcuffed.

Mr. McCole was held in jail for a week on charges related to a derelict vehicle and the failure to appear on those charges. Mr. McCole never resided in Pine Lawn and did not

---

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER
NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE
ADMISSIBLE IN ANY LAWSUIT
Page 2 of 5

own a vehicle. He was also charged with Failure to Comply and Disorderly Conduct. All charges were dismissed.

*DOI: 10/5/12. Sidney Sinclair*

Walking with Tremmell McCole. Mr. Sinclair was in a suit as he had just come from a job interview. He witnessed Blakeney abusing Tremmell McCole and yelled for him to stop and then, "come here, boy." Blakeney then told him he was failing to comply and was going to jail. Mr. Sinclair told Blakeney that he had not done anything wrong and noted his suit. Blakeney said, "Oh, so being in a suit and tie makes you better than me?" As Mr. Sinclair saw Blakeney abusing Tremmell McCole he overheard officers and Blakeney – Blakeney said, "What? You disagree with what I'm doing? No? Then shut the fuck up." Mr. Sinclair bonded out and his case was ultimately dismissed. Mr. Sinclair related the bad reputation of Blakeney and said that several officers hinted that Blakeney is a problem officer and this sort of behavior is not unusual for him.

*DOI: 12/7/12. Nakita Jackson*

Nakita Jackson was visiting at her sister's home. They walked to the bus stop to meet her niece. There was a fight or tussle involving the children. The police arrived and Blakeney punched her in the face and choked her and others threw her to the ground, put a knee in her back and put a Taser against her neck. She yelled that she was pregnant and they did not Taser her. While on the ground, she had abdominal and back pain and vomited. She asked for medical attention and Blakeney said "her ass will be fine." She asked Blakeney why he hit her and he said, "get the fuck back before I hit you again." She was taken to jail, bonded out and all the charges were dismissed.

Blakeney made statements that contained racial slurs.

Ms. Jackson asked to speak to a supervisor and Blakeney said that he was in charge – that nobody was above him. Ms. Jackson complained to then Chief Ricky Collins who said, "Let me guess when this happened. 2nd shift, around 3:00 p.m. That shift is always fucking up." Blakeney ordered the arrest of multiple people, including children.

*DOI: 3/16/13. Kaleisha Beck*

Kaleisha Beck was staying with Racquel Wooten and family on James A. Harvey Lane, Wellston, a neighboring community to Pine Lawn. At approximately 10:30 p.m., K.B. came out of a main level room and saw five cops in living room. She was detained on a couch for 30 minutes at gunpoint.

---

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS
NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE
ADMISSIBLE IN ANY LAWSUIT
Page 3 of 5

The officers were from Pine Lawn and were in Wellston attempting to apprehend a woman who had a warrant. They apparently thought Racquel Wooten was the woman, but Racquel Wooten was the wanted woman's sister. The wanted woman was not present. It does not appear that they had a search warrant.

A Wellston officer, Sgt. Bickley, showed up and is a witness to the unlawful entry and search of the residence by Pine Lawn officers, including Blakeney. Racquel Wooten saw an argument between Sgt. Bickley and P.L. officers about them blocking the street.

*DOI: 3/16/13. Racquel Wooten*

Racquel Wooten was at home, reading in her upstairs bedroom, when Pine Lawn officers came in looking for Katrena W. guns drawn. The police rounded up and detained at gunpoint Ms. Wooten and her five children, along with Kaleisha Beck and her small child. At some point, she encountered Sgt. Bickley from Wellston. He told her that it was not Wellston P.D. in home. She also saw Bickly arguing with a P.L. cop outside about unblocking the street. Ms. Wooten was cuffed and accused of being Katrena W.

The police had no arrest warrant and no search warrant

*DOI: 7/19/13  Roy Anthony Telano.*

Anthony Telano is a former police officer, up through the ranks Captain in the United States Army (now in IMA status) and employee of the National Geospatial Agency. While off duty (we believe), Blakeney orchestrated the traffic stop and arrest of Capt. Telano, the search and towing of his car and, the filing of charges against him. When the Pine Lawn officers pulled Capt. Telano over, Blakeney came running up yelling, "who's the tough guy." He assaulted Capt. Telano.

The charges were dismissed

Blakeney made a statement to Capt. Telano that he was a disgrace to the military. Blakeney made a comment about knowing where Capt. Telano lives, similar to what he said to Kristen Moore.

*DOI: 4/10/14. Jordan Martner*

Jordan Martner is a young college student who was travelling to her boyfriend's apartment in St. Louis from Columbia, Missouri. She was pulled over by Blakey and, ultimately, arrested after questioning the lawfulness of the search of her car. When she retrieved her car from impound, she found that her personal belongings, including a computer, clothing and personal items, were damaged from grease and from having the spare tire thrown on top of them.

Confidential - Produced Under Protective Order

**CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE ADMISSIBLE IN ANY LAWSUIT**
Page 4 of 5

During their encounter, Blakeney examined Ms. Martner's cell phone, ordered her to give him the pass code and texted a message posing as her to her boyfriend. He also asked her whether she like to go to raves.

After Blakeney arrested Ms. Martner she began to cry. He seemed to enjoy that and said that she was going to find out how bad this part of town was.

DOI: 6/13/14. Hamilton and Jones Families and Tory Richard II

Seven people at a family gathering were arrested, assaulted, pepper sprayed and charged. The homeowner is a cancer patient and had hosted two family gatherings each year for approximately thirty years. The police first came because they said there was a complaint about shots fired. One of the men told the officer that they had not heard any shots. Blakeney arrived and began aggressively cursing the man talking to the officer. He then got on the loud speaker and told everyone to "get the fuck inside." The man who was talking to the officer told Blakeney that he had no call to curse, and that there were children inside the house. Blakeney said, "fuck the kids."

Then, the officers crossed the fence and began using force on people despite there being no threats against the officers and no resistance. The used force, including the Taser, pepper spray and hands on, against a number of the family members. They arrested women and men alike. One of the arrestees is a family friend who is active duty United States Coast Guard. One of the officers shoved the cancer victim homeowner against a door-frame and caused her chemo port to bang against the frame.

One family member was pepper sprayed because he was recording the abuses. Everyone who was arrested had their phones seized and all of the recorded footage was deleted from each phone.

*Additional Information Regarding Pine Lawn/Blakeney*

- The Mayor of Pine Lawn, Sylvester Caldwell, has been indicted by the United States.
- Blakeney was (or still is) the subject of an order of protection that prohibits him from being armed except on duty in Pine Lawn.
- One of Blakeney's sons came home with a cell phone given to him by Blakeney. It is possible that the cell phone was seized by the P.L. police or Blakeney.
- Sidney Sinclair's phone was seized and was not returned to him when he bonded out. He utilized a tracking feature on the phone that located it in south St. Louis County at or near an address associated with Blakeney.

Ctx 1344

---

Confidential - Produced Under Protective Order

**CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE ADMISSIBLE IN ANY LAWSUIT**
Page 5 of 5

- A former officer can testify that he has seen Blakeney high or drunk and armed. On one occasion, he arrived at a multi-agency search for a missing person armed with an AR-15 and had come to the scene from the East Side.
- Blakeney tested positive for cocaine.
- Blakeney is known to frequent the strip clubs on the East Side and even goes there while on duty.
- Similar to the stop of Anthony Telano, Blakeney stopped the St. Ann Chief of Police. Blakeney and his partner followed the Chief's car from downtown, some 7 or 8 miles from Pine Lawn and after they passed through Pine Lawn, let the Chief's car pass and then pulled it over. Blakeney was apparently on duty on this occasion.
- Blakeney is a notorious liar.
- While in court with Capt. Telano, Blakeney was eavesdropping on a private conversation I was having with my client.
- One client who was at Pine Lawn to retrieve property or complain was told by the clerk, "Blakeney again."
- Blakeney started as a corporal and was promoted twice and is now a lieutenant.
- There may be a sizeable number of officers who will testify about Blakeney's abusive and extra-legal practices. For example, he is reported to go outside his jurisdiction and stop motorists in the City of St. Louis. He may secure plates from cars towed to Eddie's, affix them to his car and ride through the city assaulting people. Another report is that he will go to the East Side clubs while on duty and get drunk and or high.
- Blakeney was accused of rape (off duty).
- Blakeney beat and humiliated his former wife. On one occasion he threw her down, locked her out of the house and stuck a pacifier in her mouth.
- Former Pine Law Chief of Police Ricky Collins has a troubled past. Among the cases of which I am aware, he broke a nightstick over the head of my client and charged him with the destruction of city property.

Ctx 1345

---

Confidential - Produced Under Protective Order

# THE RYALS LAW FIRM, P.C.
ATTORNEYS AT LAW

STEPHEN M. RYALS                                           16649 CHESTERFIELD GROVE ROAD
                                                                          SUITE 100
OF COUNSEL:                                                   CHESTERFIELD, MISSOURI 63005
STEVEN J. CORN                                               TELEPHONE: (314) 862-6262
                                                                    FAX: (636) 536-6062

November 7, 2014

Blake D. Hill, Esq.
King, Krehbiel & Hellmich, LLC
2000 So. Hanley Road
St. Louis, Missouri 63144

**CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER. NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT**

Re: *Sidney Sinclair v. City of Pine Lawn and Steven Blakeney*

Dear Blake:

To follow our recent discussions, I represent Sidney Sinclair in his claim for damages against the City of Pine Lawn and Steven Blakeney arising from the stop, detention, and unlawful seizure of his person by Steven Blakeney on October 5, 2012. Blakeney's conduct violated Mr. Sinclair's Fourth Amendment rights for which he will seek redress pursuant to 42 U.S.C. §§1983 and 1988.

The City of Pine Lawn is liable for the constitutionally violative conduct of Blakeney because Blakeney has engaged, and continues to engage, in conduct that is unconstitutional and The City was and is aware of his conduct and failed to exercise its duty to supervise and control Blakeney. Attached is a summary of additional cases. I represent each of the individuals identified in the attachment and each of them has committed to support Mr. Sinclair and one another in pursuit of their remedies, including the public policy concerns of each of them.

*The Incident Involving Mr. Sinclair and Blakeney*

On October 5, 2012 Sidney Sinclair was walking with his friend, Tremmell McCole, toward a bus-stop at Jennings Station Road and Greer in Pine Lawn. Mr. Sinclair had come from a job interview, was wearing a suit and tie, and had stopped at the home of his friend between busses. As they walked past a police car, several officers emerged from behind a house. Then Blakeney emerged with a shotgun in his hands. The officers ordered the pair to stop, which they did. Blakeney told the men to walk toward

Ctx 1347

Mr. Hill
November 7, 2014
Page 2 of 5

him. Blakeney said, "Don't run boy. I've got a partner who will run you down." They asked why as they moved toward the other officers because Blakeney was pointing the shotgun at them, which threatened and frightened them. When they asked what was going on, Blakeney told them to shut up – that they didn't listen and were now going to jail.

Blakeney handed the shotgun to another officer and grabbed Mr. McCole by his elbows, from behind and began his assault of Mr. McCole. Blakeney slammed McCole to the ground and cuffed him. Mr. Sinclair, observing the assault of his friend attempted to explain that he was wearing a suit and tie, had just come from an interview and that they had not done anything. Blakeney responded that they didn't comply and were going to jail. As he shoved the handcuffed Mr. Sinclair in the chest, he said, "Oh, so being in a suit and tie makes you better than me?"

As he sat there, he saw that Blakeney was further assaulting Mr. McCole by slamming him against a car, and then down on the pavement where he kicked him. Mr. Sinclair saw Blakeney kick Mr. McCole repeatedly and heard Mr. McCole screaming and asking whether the other officers were going to just allow him to kick Mr. McCole in the face like that? Mr. Sinclair could not hear what the other officers were saying, but heard Blakeney say, "What? You disagree with me? No? Then shut the fuck up."

At the jail, Blakeney taunted Mr. Sinclair. He said, "Yeah. You're talking all that shit now. That's why you'll be doing this (making a circular motion with his finger above his head), while I'll be doing this with a Margarita (miming taking a drink). This is similar to a remark Blakeney made to Nakita Jackson.

Mr. Sinclair reports that the other officers did not act inappropriately, and that they insinuated that Blakeney was out of control and had done this sort of thing before.

Mr. Sinclair was jailed and was held overnight until he was permitted to bond out. He repeatedly asked to bond out and officers "asked a supervisor," who refused to permit him to post bond, even though he had the money. He was charged with Failure to Comply and Resisting Arrest. He defended the ordinance violation charges and all cases were dismissed.

*Liability of Blakeney and Pine Lawn*

Blakeney has been abusing citizens, in Pine Lawn, and out, since at least 2011. Attached is summary form, is a list of other individuals who have suffered violations of their constitutional rights by Blakeney and by Blakeney and other Pine Lawn police officers.

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER
NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR
OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT

Ch. 1348

Confidential - Produced Under Protective Order

Mr. Hill
November 7, 2014
Page 3 of 5

Blakeney's abusive actions are well known to others in the law enforcement community and to those in Pine Lawn with a duty to control him. Despite a clear and pervasive history of violations of the law and United States Constitution, Blakeney has not been disciplined, more closely supervised or re-trained. On the contrary, he has been promoted and is now a Lieutenant.

Blakeney stopped and detained Mr. Sinclair at gunpoint, and arrested, jailed and charged him. Mr. Sinclair had committed no offense, reflected in the fact that the charges were dismissed. Blakeney and Pine Lawn will be liable for damages for these violations of the Fourth Amendment to the United States Constitution.

Blakeney will be liable for punitive damages. His conduct towards Mr. Sinclair reveals his disregard for the law and the Constitution of the United States. Of equal importance, the repeated misconduct of Blakeney revealed on multiple occasions in multiple contexts, will be admitted on the issue of punitive damages and on the issue of municipal liability.

There are ample indicators of Blakeney's unfitness to be a peace officer. While an officer in New Athens, Illinois, two brother officers were so concerned about Blakeney's aggressiveness, inappropriate behavior and statements that they reported his actions to the command staff. Blakeney was dismissed from that agency because of discrepancies in his representations on his application that showed deception. Blakeney was dismissed from the Eastern Missouri Police Academy for behavioral problems, an issue that was noted by his fellow students as well as the cadre. Blakeney was dismissed from the St. Louis Metropolitan Police Department Academy. Blakeney, since beginning work for Pine Lawn, tested positive for cocaine. Blakeney has had orders of protection entered against him and had a firearms restriction that, I believe, he violated. Blakeney was found to be abusive to his former wife and on one occasion stuck a pacifier in her mouth.

Blakeney caused the traffic stop of a local police chief and his colleagues that is remarkably similar to the stop of Captain Teleno. Blakeney first encountered the Chief, in the downtown area, as he was traveling from a Cardinals game with colleagues. When they reached the city limits of Pine Lawn, Blakeney slowed to allow the Chief's car to pass and then initiated a traffic stop. The officer who accompanied Blakeney was in the background signaling to the Chief by making a circular motion with his index finger near the side of his head, which the Chief took as a comment on Blakeney's competence.

Each of the individuals who are identified in the attached summary has committed to support all litigation that any of them may bring against Blakeney and Pine Lawn. Each of my clients is motivated to contribute to an effort to cause an unbiased and careful review of Blakeney's conduct and his competence to serve as a peace officer. The jury in

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER
NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR
OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT

Ch. 1350

Mr. Hill
November 7, 2014
Page 4 of 5

Mr. Sinclair's case and in every other will hear a complete account of Blakeney's misconduct since employed by Pine Lawn.

*Offer of Settlement*

On behalf of Sidney Sinclair, I have been authorized to convey an offer of settlement of Sinclair's claim for damages and fees pursuant to 42 U.S.C. §§ 1983 and 1988. The terms of the offer:

1. The City of Pine Lawn shall immediately request an investigation of Blakeney by the St. Louis County Police or the Missouri State Highway Patrol. The investigation shall include his background, the incidents described in this letter and in the attachment and any other incidents that come to light and shall be in the nature of an internal investigation with the goal of determining whether Blakeney should be disciplined and what the discipline should be.

2. The results of the investigation shall be forwarded to the Missouri Peace Officer Standards and Training Commission (P.O.S.T.).

3. Pine Lawn shall direct that Blakeney shall not exercise police powers unless on duty and unless within the city limits of Pine Lawn.

4. Pine Lawn shall initiate a program of training that reflects instruction using the conduct involving Sinclair and of the other violations described in the attachment as a foundation for instructing on the constraints of the United States Constitution and the laws, and fully explaining how the actions of Blakeney violated them.

5. Pine Lawn shall confess Mr. Sinclair's petition to expunge his arrest record.

6. Pine Lawn and Blakeney shall pay Mr. Sinclair the sum of One Hundred Twenty Five Thousand Dollars ($125,000.00) for damages resulting from the injuries suffered by Mr. Sinclair at the hands of Blakeney. The amount of the offer is inclusive of attorney fees and in exchange for the payment and acceptance of the other terms, Mr. Sinclair will provide Blakeney and Pine Lawn with a full release, including a release of attorney fees.

Mr. Sinclair is interested in engaging in limited discussion about the settlement, pre-suit, of his cause and I invite you to reply at your first opportunity. Please let me know if your principal is interested in making a diligent effort to resolved Mr. Sinclair's case and, importantly, if not, so I can commence suit without undue delay.

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER
NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR
OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT

Ch. 1352

Confidential - Produced Under Protective Order

Mr. Hill
November 7, 2014
Page 5 of 5

Very truly yours,

Stephen M. Ryals

SMR/mvs
Enclosure: Case Synopses

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER
NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR
OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT

Confidential - Produced Under Protective Order

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS
NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE
ADMISSIBLE IN ANY LAWSUIT
Page 1 of 5

## City of Pine Lawn/Steven Blakeney
### Case Synopses

*Date of Occurrence: 6/21/11. Kristen Moore.*

Blakeney was a corporal, off duty when he stopped Kristen Moore. while she was driving to work.

On June 23, 2011 at approximately 6:30 p.m., while driving to work at Washington University/Barnes Hospital in St. Louis from her home in Waterloo, Illinois. While off duty in his private SUV, Blakeney pulled over Kristen Moore. His children were in the vehicle with him. Blakeney approached Ms. Moore, in a rage and his behavior only got worse. He released Ms. Moore without a citation and she learned later that he had preferred a C&I charge against her that the State did not pursue.

Blakeney's personal vehicle was equipped with police lights and other police equipment.

Blakeney threatened Ms. Moore by telling her that he knew where she lived and after the incident Ms. Moore saw him following her.

Ms. Moore lodged a complaint and a City official told her to excuse the conduct because Blakeney had come from a funeral.

A Google search on "officer steven blakeney" will lead to a new report on Fox 2 that reports on this incident.

*DOI: 10/3/12. Tremmell McCole*

With Sidney Sinclair. Tremmell McCole and Sidney Sinclair were walking from the home of Mr. McCole. As they were walking, they noticed an undercover police car in the middle of the street. Blakeney, brandishing a shotgun, approached the pair from a distance of a couple of houses away and said, "come here, boy." Other officers arrived and while Blakeney held the shotgun on them, threw Mr. McCole to the ground and began kicking him. Blakeney kicked Mr. McCole in the face. He was then pulled up and violently thrown against the police car and thrown in the back. Blakeney choked Mr. McCole while he was handcuffed.

Mr. McCole was held in jail for a week on charges related to a derelict vehicle and the failure to appear on those charges. Mr. McCole never resided in Pine Lawn and did not

Confidential - Produced Under Protective Order

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS
NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE
ADMISSIBLE IN ANY LAWSUIT
Page 2 of 5

own a vehicle. He was also charged with Failure to Comply and Disorderly Conduct. All charges were dismissed.

*DOI: 10/3/12. Sidney Sinclair*

Walking with Tremmell McCole. Mr. Sinclair was in a suit as he had just come from a job interview. He witnessed Blakeney abusing Tremmell McCole and yelled for him to stop and then, "come here, boy." Blakeney then told him he was failing to comply and was going to jail. Mr. Sinclair told Blakeney that he had not done anything wrong and noted his suit. Blakeney said, "Oh, so being in a suit and tie makes you better than me?" As Mr. Sinclair saw Blakeney abusing Tremmell McCole he overheard officers and Blakeney – Blakeney said, "What? You disagree with what I'm doing? No? Then shut the fuck up." Mr. Sinclair bonded out and his case was ultimately dismissed. Mr. Sinclair related the bad reputation of Blakeney and said that several officers hinted that Blakeney is a problem officer and this sort of behavior is not unusual for him.

*DOI: 12/7/12. Nakita Jackson*

Nakita Jackson was visiting at her sister's home. They walked to the bus stop to meet her niece. There was a fight or tussle involving the children. The police arrived and Blakeney punched her in the face and choked her and others threw her to the ground, put a knee in her back and put a Tazer against her neck. She yelled that she was pregnant and they did not Tazer her. While on the ground, she had abdominal and back pain and vomited. She asked for medical attention and Blakeney said "her ass will be fine." She asked Blakeney why he hit her and he said, "get the fuck back before I hit you again." She was taken to jail, bonded out and all the charges were dismissed.

Blakeney made statements that contained racial slurs.

Ms. Jackson asked to speak to a supervisor and Blakeney said that he was in charge – that nobody was above him. Ms. Jackson complained to then Chief Ricky Collins who said, "Let me guess when this happened. 2nd shift, around 3:00 p.m. That shift is always fucking up." Blakeney ordered the arrest of multiple people, including children.

*DOI: 3/16/13. Kaleisha Beck*

Kaleisha Beck was staying with Racquel Wooten and family on James A. Harvey Lane, Wellston, a neighboring community to Pine Lawn. At approximately 10:30 p.m., K.B. came out of a main level room and saw five cops in living room. She was detained on a couch for 30 minutes at gunpoint.

Confidential - Produced Under Protective Order

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS
NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE
ADMISSIBLE IN ANY LAWSUIT
Page 3 of 5

The officers were from Pine Lawn and were in Wellston attempting to apprehend a woman who had a warrant. They apparently thought Racquel Wooten was the woman, but Racquel Wooten was the wanted woman's sister. The wanted woman was not present. It does not appear that they had a search warrant.

A Wellston officer, Sgt. Bickley, showed up and is a witness to the unlawful entry and search of the residence by Pine Lawn officers, including Blakeney. Racquel Wooten saw an argument between Sgt. Bickley and P.L. officers about them blocking the street.

*DOI: 3/16/13. Racquel Wooten*

Racquel Wooten was at home, reading in her upstairs bedroom, when Pine Lawn officers came in looking for Katrena W. guns drawn. The police rounded up and detained at gunpoint Ms. Wooten and her five children, along with Kaleisha Beck and her small child. At some point, she encountered Sgt. Bickley from Wellston. He told her that it was not Wellston P.D. in home. She also saw Bickly arguing with a P.L. cop outside about unblocking the street. Ms. Wooten was cuffed and accused of being Katrena W.

The police had no arrest warrant and no search warrant

*DOI: 7/19/13 Roy Anthony Telano.*

Anthony Telano is a former police officer, up through the ranks Captain in the United States Army (now in IMA status) and employee of the National Geospatial Agency. While off duty (we believe), Blakeney obstructed the traffic stop and arrest of Capt. Telano, the search and towing of his car and, the filing of charges against him. When the Pine Lawn officers pulled Capt. Telano over, Blakeney came running up yelling, "who's the tough guy." He assaulted Capt. Telano.

The charges were dismissed

Blakeney made a statement to Capt. Telano that he was a disgrace to the military. Blakeney made a comment about knowing where Capt. Telano lives, similar to what he said to Kristen Moore.

*DOI: 4/10/14. Jordan Martner*

Jordan Martner is a young college student who was traveling to her boyfriend's apartment in St. Louis from Columbia, Missouri. She was pulled over by Blakeney and, ultimately, arrested after questioning the lawfulness of the search of her car. When she retrieved her car from impound, she found that her personal belongings, including a computer, clothing and personal items, were damaged from grease and from having the spare tire thrown on top of them.

Confidential - Produced Under Protective Order

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS
NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE
ADMISSIBLE IN ANY LAWSUIT
Page 4 of 5

During their encounter, Blakeney examined Ms. Martner's cell phone, ordered her to give him the pass code and texted a message posing as her to her boyfriend. He also asked her whether she like to go to raves.

After Blakeney arrested Ms. Martner she began to cry. He seemed to enjoy that and said that she was going to find out how bad this part of town was.

*DOI: 6/13/14. Hamilton and Jones Families and Tony Richard II*

Seven people at a family gathering were arrested, assaulted, pepper sprayed and charged. The homeowner is a cancer patient and had hosted two family gatherings each year for approximately thirty years. The police first came because they said there was a complaint about shots fired. One of the men told the officer that they had not heard any shots. Blakeney arrived and began aggressively cursing the man talking to the officer. He then got on the loud speaker and told everyone to "get the fuck inside." The man who was talking to the officer told Blakeney that he had no call to curse, and that there were children inside the house. Blakeney said, "fuck the kids."

Then, the officers crossed the fence and began using force on people despite there being no threats against the officers and no resistance. The used force, including the Tazer, pepper spray and hands on, against a number of the family members. They arrested women and men alike. One of the arrestees is a family friend who is active duty United States Coast Guard. One of the officers shoved the cancer victim homeowner against a door-frame and caused her chemo port to bang against the frame.

One family member was pepper sprayed because he was recording the abuses. Everyone who was arrested had their phones seized and all of the recorded footage was deleted from each phone.

### Additional Information Regarding Pine Lawn/Blakeney

* The Mayor of Pine Lawn, Sylvester Caldwell, has been indicted by the United States.
* Blakeney was (or still is) the subject of an order of protection that prohibits him from being armed except on duty in Pine Lawn.
* One of Blakeney's sons came home with a cell phone given to him by Blakeney. It is possible that the cell phone was seized by the P.L. police or Blakeney.
* Sidney Sinclair's phone was seized and was not returned to him when he bonded out. He utilized a tracking feature on the phone that located it in south St. Louis County at or near an address associated with Blakeney.

Confidential - Produced Under Protective Order

**CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS**
**NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE**
**ADMISSIBLE IN ANY LAWSUIT**
Page 5 of 5

- A former officer can testify that he has seen Blakeney high or drunk and armed. On one occasion, he arrived at a multi-agency search for a missing person armed with an AR-15 and had come to the scene from the East Side.
- Blakeney tested positive for cocaine.
- Blakeney is known to frequent the strip clubs on the East Side and even goes there while on duty.
- Similar to the stop of Anthony Telano, Blakeney stopped the St. Ann Chief of Police. Blakeney and his partner followed the Chief's car from downtown, some 7 or 8 miles from Pine Lawn and after they passed through Pine Lawn, let the Chief's car pass and then pulled it over. Blakeney was apparently on duty on this occasion.
- Blakeney is a notorious liar.
- While in court with Capt. Telano, Blakeney was eavesdropping on a private conversation I was having with my client.
- One client who was at Pine Lawn to retrieve property or complain was told by the clerk, "Blakeney again."
- Blakeney started as a corporal and was promoted twice and is now a lieutenant.
- There may be a sizeable number of officers who will testify about Blakeney's abusive and extra-legal practices. For example, he is reported to go outside his jurisdiction and stop motorists in the City of St. Louis. He may secure plates from cars towed to Eddie's, affix them to his car and ride through the city assaulting people. Another report is that he will go to the East Side clubs while on duty and get drunk and or high.
- Blakeney was accused of rape (off duty).
- Blakeney beat and humiliated his former wife. On one occasion he threw her down, locked her out of the house and stuck a pacifier in her mouth.
- Former Pine Law Chief of Police Ricky Collins has a troubled past. Among the cases of which I am aware, he broke a nightstick over the head of my client and charged him with the destruction of city property.

Confidential - Produced Under Protective Order

KRISTEN MOORE

---

# THE RYALS LAW FIRM, P.C.
## ATTORNEYS AT LAW

STEPHEN M. RYALS

OF COUNSEL:
STEVEN J. GUNN

16440 Chesterfield Grove Road
Suite 100
Chesterfield, Missouri 63005
Telephone (314) 862-6262
Fax (636) 536-6062

November 7, 2014

Blake D. Hill, Esq.
King, Krehbiel & Hellmich, LLC
2000 So. Hanley Road
St. Louis, Missouri 63144

**CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER**
**NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR**
**OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT**

Re: *Kristen Moore v. City of Pine Lawn and Steven Blakeney*

Dear Blake:

To follow our recent discussions, I represent Kristen Moore in her claim for damages against the City of Pine Lawn and Steven Blakeney arising from the stop and detention of Ms. Moore by Steven Blakeney on July 23, 2011. Blakeney's conduct violated Ms. Moore's Fourth Amendment rights for which she will seek redress pursuant to 42 U.S.C. §§1983 and 1988.

The City of Pine Lawn is liable for the constitutionally violative conduct of Blakeney because Blakeney has engaged, and continues to engage, in conduct that is unconstitutional, and The City was and is aware of his conduct and failed to exercise its duty to supervise and control Blakeney. I represent each of the individuals identified in the attachment and each of them has committed to support Ms. Moore and one another in pursuit of their remedies, including the public policy concerns of each of them, including the public policy concerns of each of them.

### The Incident Involving Kristen Moore and Blakeney

On June 23, 2011 at approximately 6:30 p.m., Kristen Moore was travelling from her home in Waterloo, Illinois to her job as a medical technician at Washington University School of Medicine. As she traveled in the far right lane of Interstate 270 to exit to Northbound Interstate 55, traffic slowed at the Interchange and Ms. Moore noticed a white SUV three lanes over that changed lanes to the one immediately to her left. As traffic continued to move, she noticed the white SUV coming into her lane and then slowing enough to suddenly move in behind her. The vehicle was perilously close to her

Confidential - Produced Under Protective Order

Mr. Hill
November 7, 2014
Page 2 of 5

when it moved over. Soon after she heard a siren and began to look for the emergency vehicle. The white SUV was so close to her that she could not see emergency lights, at first. When Ms. Moore realized that the vehicle behind her had emergency equipment activated, she pulled to the shoulder and the white SUV followed.

As Ms. Moore was lowering her window and reaching for her driving credentials, Blakeney suddenly appeared at her window, placed his face close to hers and began screaming at her, with profanity and name-calling. He accused her of deliberately cutting him off and of "road rage." He made reference to nearly causing a collisions and how he had a young child in his vehicle.[1] Blakeney stated that he loved to pull over "road rage" drivers like her, that she should not have a license and that she was a disgrace. At one point, Ms. Moore attempted to explain the she did not realize he was attempting to merge into her lane from three lanes over, and that she accelerated in keeping with the flow of traffic and not in an effort to prevent him from merging into her lane. That is what she wanted to explain, but all she was able to state was, "I didn't realize..." when Blakeney interrupted and yelled, "Didn't realize that I am a cop? Of course not, you idiot, I'm in an unmarked car." Blakeney continued to yell that Ms. Moore was insane and "don't try to talk your way out of this one. I've been a police officer a long time and you are a disgrace."

Ms. Moore asked repeatedly to see his badge because Blakeney was in a t-shirt and shorts. After a number of inquiries, Blakeney flashed a badge so quickly that Ms. Moore could not examine it. She stated that she was concerned because there had been reports of individuals impersonating police officers. The more she made inquiry, the angrier Blakeney became. At one point he made a statement: "Now you get a ticket. Don't question me or what I'm doing!! If you want me to arrest you, just keep it up." At some point Blakeney made a remark about Ms. Moore's residence in Illinois and how he was a police officer in Illinois, knew a number of officers there and she had better watch out. He told her, "Now you're getting a $500.00 ticket because you can't keep your mouth shut." Ultimately, Blakeney attempted to persuade Ms. Moore to concede that she had been careless in return for him declining to issue a ticket. She refused to admit to something that was untrue. Then Blakeney allowed her to leave and told her she would receive a ticket in the mail, but not before he told her he knew where she lived and "I have a lot of friends in Illinois. I used to work there. I suggest you watch yourself every time you pull out of your driveway."

Ms. Moore was so shaken by the incident that she drove to the first available turn-off and pulled over to regain her composure. She was crying, shaking and felt as if she would vomit. She called her husband and he recommended that they contact Pine Lawn to lodge a complaint. She arrived late for work and then spoke with a Detective of the St.

---

[1] Blakeney later denied that he had a child in his vehicle.

**CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER**
**NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR**
**OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT**

Confidential - Produced Under Protective Order

Mr. Hill
November 7, 2014
Page 3 of 5

Louis County Police Department. She never received a citation in the mail, but apparently there was something filed in court and Ms. Moore spent many months attempting to resolve the matter, constantly in fear that she would be arrested.

She lodged a complaint with Pine Lawn and later spoke the City Administrator who minimized the event and attempted to deflect Blakeney's misconduct by telling Ms. Moore that Blakeney had just come from a funeral.

On other occasions, after the stop and detention of Ms. Moore, and after she lodged complaints, Blakeney followed her and would draw dangerously close to her bumper.

**Liability of Blakeney and Pine Lawn**

Blakeney's stop and detention of Ms. Moore was without probable cause and therefore, violated her rights under the Fourth Amendment to the United States Constitution. His tirade exacerbated her distress and provides the foundation for punitive damages against Blakeney.

Ms. Moore's encounter is the first known incident, while employed by Pine Lawn, of Blakeney acting in an abusive and unlawful manner. If this case is filed, I anticipate that we will discover others. His history, at the Eastern Missouri Police Academy and at New Athens, Illinois P.D. is predictive that Blakeney would engage in this level of abuse, or worse. Pine Lawn had the opportunity to learn of his history and to assure that Blakeney comported himself in a lawful manner. It failed to do so.

The stop and detention of Ms. Moore was the subject of a news report on Channel 4 in St. Louis. Pine Lawn knew about it. Pine Lawn took no action to correct Blakeney's conduct and, for that, Pine Lawn is liable.

Blakeney's abusive actions are well known to others in the law enforcement community and to those in Pine Lawn with a duty to control him. Despite a clear and pervasive history of violations of the law and United States Constitution, Blakeney has not been disciplined, more closely supervised or re-trained. On the contrary, he has been promoted and is now a Lieutenant.

There are ample indicators of Blakeney's unfitness to be a peace officer, apart from the multiple incidents reflected in the attachment. While an officer in New Athens, Illinois, two brother officers were so concerned about Blakeney's aggressiveness, inappropriate behavior and statements that they reported his actions to the command staff. Blakeney was dismissed from that agency because of discrepancies in his representations on his application that showed deception. Blakeney was dismissed from

**CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER**
**NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR**
**OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT**

---

Confidential - Produced Under Protective Order

Mr. Hill
November 7, 2014
Page 4 of 5

the Eastern Missouri Police Academy for behavioral problems, an issue that was noted by his fellow students as well as the cadre. Blakeney was dismissed from the St. Louis Metropolitan Police Department Academy. Blakeney, since beginning work for Pine Lawn, tested positive for cocaine. Blakeney has had orders of protection entered against him and had a firearms restriction that, I believe, he violated. Blakeney was found to be abusive to his former wife and on one occasion stuck a pacifier in her mouth.

Blakeney caused the traffic stop of a local police chief and his colleagues that is remarkably similar to the stop of Captain Telano. Blakeney first encountered the Chief, in the downtown area, as he was traveling from a Cardinal's game with colleagues. When they reached the city limits of Pine Lawn, Blakeney slowed to allow the Chief's car to pass and then initiated a traffic stop. The officer who accompanied Blakeney was in the background signaling to the Chief by making a circular motion with his index finger near the side of his head, which the Chief took as a comment on Blakeney's competence.

Each of the individuals who are identified in the attached summary has committed to support all litigation that any of them may bring against Blakeney and Pine Lawn. Each of my clients is motivated to contribute to an effort to cause an unbiased and careful review of Blakeney's conduct and his competence to serve as a peace officer. The jury in Captain Telano's case and in every other will hear a complete account of Blakeney's misconduct since employed by Pine Lawn.

**Offer of Settlement**

On behalf of Kristen Moore, I have been authorized to convey an offer of settlement of her claim for damages and fees pursuant to 42 U.S.C. §§ 1983 and 1988. The terms of the offer:

1. The City of Pine Lawn shall immediately request an investigation of Blakeney by the St. Louis County Police and the Missouri State Highway Patrol. The investigation shall include his background, the incidents described in this letter and in the attachment and any other incidents that come to light, and shall be in the nature of an internal investigation with the goal of determining whether Blakeney should be disciplined and what the discipline should be.

2. The results of the investigation shall be forwarded to the Missouri Peace Officer Standards and Training Commission (P.O.S.T.).

3. Pine Lawn shall direct that Blakeney shall not exercise police powers unless on duty and unless within the city limits of Pine Lawn.

**CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER**
**NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR**
**OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT**

---

Confidential - Produced Under Protective Order

Mr. Hill
November 7, 2014
Page 5 of 5

4. Pine Lawn shall initiate a program of training that reflects instruction using the conduct involving Captain Telano and of the other violations described in the attachment as a foundation for instructing on the limits of the United States Constitution and the laws, and fully explaining how the actions of Blakeney violated them.

5. Pine Lawn and Blakeney shall pay Kristen Moore the sum of One Hundred Twenty Five Thousand Dollars ($125,000.00) for damages resulting from the injuries suffered by Ms. Moore at the hands of Blakeney. The amount of the offer is inclusive of attorney fees and in exchange for the payment and acceptance of the other terms, Ms. Moore will provide Blakeney and Pine Lawn with a full release, including a release of attorney fees.

Ms. Moore intends to engage in limited discussion about the settlement, pre-suit, of her case and I invite you to reply at your first opportunity. In addition, Ms. Moore would be pleased to meet with you to explain what occurred and how it affected her. Please let me know if your principal is interested in making a diligent effort to resolve Kristen Moore's case and, importantly, if not, so I can commence suit without undue delay.



Very truly yours,

Stephen M. Ryals

SMR/mvo
Enclosure: Case Synopses

**CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER**
**NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR**
**OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT**

---

Confidential - Produced Under Protective Order

**CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS**
**NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE**
**ADMISSIBLE IN ANY LAWSUIT**
Page 1 of 5

**City of Pine Lawn/Steven Blakeney**
**Case Synopses**

*Date of Occurrence: 6/23/11. Kristen Moore.*

Blakeney was a corporal, off duty when he stopped Kristen Moore. while she was driving to work.

On June 23, 2011 at approximately 6:30 p.m., while driving to work at Washington University/James Hospital in St. Louis from her home in Wentzloo, Illinois. While off duty in his private SUV, Blakeney pulled over Kristen Moore. His children were in the vehicle with him. Blakeney approached Ms. Moore. in a rage and his behavior only got worse. He released Ms. Moore without a citation and she learned later that he had preferred a C&I charge against her that the State did not pursue.

Blakeney's personal vehicle was equipped with police lights and other police equipment.

Blakeney threatened Ms. Moore by telling her that he knew where she lived and after the incident Ms. Moore saw him following her.

Ms. Moore lodged a complaint and a City official told her to excuse the conduct because Blakeney had come from a funeral.

A Google search of "officer steven blakeney" will lead to a new report on Fox 2 that reports on this incident.

*DOI: 10/5/12. Tremmell McCole*

With Sidney Sinclair. Tremmell McCole and Sidney Sinclair were walking from the home of Mr. McCole. As they were walking, they noticed an undercover police car in the middle of the street. Blakeney, brandishing a shotgun, approached the pair from a distance of a couple of houses away and said, "come here, boy." Other officers arrived and while Blakeney held the shotgun on them, threw Mr. McCole to the ground and began kicking him. Blakeney kicked Mr. McCole in the face. He was then pulled up and violently thrown against the police car and thrown in the back. Blakeney choked Mr. McCole while he was handcuffed.

Mr. McCole was held in jail for a week on charges related to a derelict vehicle and the failure to appear on those charges. Mr. McCole never resided in Pine Lawn and did not

Confidential - Produced Under Protective Order

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS
NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE
ADMISSIBLE IN ANY LAWSUIT
Page 2 of 5

own a vehicle. He was also charged with Failure to Comply and Disorderly Conduct. All charges were dismissed.

*DOI: 10/3/12. Sidney Sinclair*

Walking with Tremmell McCole. Mr. Sinclair was in a suit as he had just come from a job interview. He witnessed Blakeney abusing Tremmell McCole and yelled for him to stop and then, "come here, boy." Blakeney then told him he was failing to comply and was going to jail. Mr. Sinclair told Blakeney that he had not done anything wrong and noted his suit. Blakeney said, "Oh, so being in a suit and tie makes you better than me?" As Mr. Sinclair saw Blakeney abusing Tremmell McCole he overheard officers and Blakeney – Blakeney said, "What? You disagree with what I'm doing? No? Then shut the fuck up." Mr. Sinclair bonded out and his case was ultimately dismissed. Mr. Sinclair related the bad reputation of Blakeney and said that several officers hinted that Blakeney is a problem officer and this sort of behavior is not unusual for him.

*DOI: 12/7/12. Nakita Jackson*

Nakita Jackson was visiting at her sister's home. They walked to the bus stop to meet her niece. There was a fight or tussle involving the children. The police arrived and Blakeney punched her in the face and choked her and others threw her to the ground, put a knee in her back and put a Taser against her neck. She yelled that she was pregnant and they did not Taser her. While on the ground, she had abdominal and back pain and vomited. She asked for medical attention and Blakeney said "her ass will be fine." She asked Blakeney why he hit her and he said, "get the fuck back before I hit you again." She was taken to jail, bonded out and all the charges were dismissed.

Blakeney made statements that contained racial slurs.

Ms. Jackson asked to speak to a supervisor and Blakeney said that he was in charge – that nobody was above him. Ms. Jackson complained to then Chief Ricky Collins who said, "Let me guess when this happened. 2nd shift, around 3:00 p.m. That shift is always fucking up." Blakeney ordered the arrest of multiple people, including children.

*DOI: 3/16/13. Kaleisha Beck*

Kaleisha Beck was staying with Racquel Wooten and family on James A. Harvey Lane, Wellston, a neighboring community to Pine Lawn. Wellston apparently had a search warrant. At approximately 10:30 p.m., K.B. came out of a main level room and saw five cops in living room. She was detained on a couch for 30 minutes at gunpoint.

The officers were from Pine Lawn and were in Wellston attempting to apprehend a woman who had a warrant. They apparently thought Racquel Wooten was the woman, but Racquel Wooten was the wanted woman's sister. The wanted woman was not present. It does not appear that they had a search warrant.

A Wellston officer, Sgt. Bickley, showed up and is a witness to the unlawful entry and search of the residence by Pine Lawn officers, including Blakeney. Racquel Wooten saw an argument between Sgt. Bickley and P.L. officers about them blocking the street.

*DOI: 3/16/13. Racquel Wooten*

Racquel Wooten was at home, reading in her upstairs bedroom, when Pine Lawn officers came in looking for Katrena W. guns drawn. The police rounded up and detained at gunpoint Ms. Wooten and her five children, along with Kaleisha Beck and her small child. At some point, she encountered Sgt. Bickley from Wellston. He told her that it was not Wellston P.D. in home. She also saw Bickly arguing with a P.L. cop outside about unblocking the street. Ms. Wooten was cuffed and accused of being Katrena W.

The police had no arrest warrant and no search warrant

*DOI: 7/19/13 Roy Anthony Telano.*

Anthony Telano is a former police officer, up through the ranks Captain in the United States Army (now in IMA status) and employee of the National Geospatial Agency. While off duty (we believe), Blakeney orchestrated the traffic stop and arrest of Capt. Telano, the search and towing of his car and, the filing of charges against him. When the Pine Lawn officers pulled Capt. Telano over, Blakeney came running up yelling, "who's the tough guy." He assaulted Capt. Telano.

The charges were dismissed

Blakeney made a statement to Capt. Telano that he was a disgrace to the military. Blakeney made a comment about knowing where Capt. Telano lives, similar to what he said to Kristen Moore.

*DOI: 4/10/14. Jordan Martzer*

Jordan Martzer is a young college student who was traveling to her boyfriend's apartment in St. Louis from Columbia, Missouri. She was pulled over by Blakeny and, ultimately, arrested after questioning the lawfulness of the search of her car. When she retrieved her car from impound, she found that her personal belongings, including a computer, clothing and personal items, were damaged from grease and from having the spare tire thrown on top of them.

---

Confidential - Produced Under Protective Order

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS
NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE
ADMISSIBLE IN ANY LAWSUIT
Page 4 of 5

During their encounter, Blakeney examined Ms. Martzer's cell phone, ordered her to give him the pass code and texted a message posing as her to her boyfriend. He also asked her whether she like to have him see bad this part of town was.

After Blakeney arrested Ms. Martzer she began to cry. He seemed to enjoy that and said that she was going to find out how bad this part of town was.

DOI: 6/13/14. Hamilton and Jones Families and Tony Richard II

Seven people at a family gathering were arrested, assaulted, pepper sprayed and charged. The homeowner is a cancer patient and had hosted two family gatherings each year for approximately thirty years. The police first came because they said there was a complaint about shots fired. One of the men told the officer that they had not heard any shots. Blakeney arrived and began aggressively cursing the men talking to the officer. He then got on the loud speaker and told everyone to "get the fuck inside." The man who was talking to the officer told Blakeney that he had no call to curse, and that there were children inside the house. Blakeney said, "fuck the kids."

Then, the officers crossed the fence and began using force on people despite there being no threats against the officers and no resistance. The used force, including the Taser, pepper spray and hands on, against a number of the family members. They arrested women and men alike. One of the arrestees is a family friend who is active duty United States Coast Guard. One of the officers shoved the cancer victim homeowner against a door-frame and caused her chemo port to bang against the frame.

One family member was pepper sprayed because he was recording the abuses. Everyone who was arrested had their phones seized and all of the recorded footage was deleted from each phone.

*Additional Information Regarding Pine Lawn/Blakeney*

• The Mayor of Pine Lawn, Sylvester Caldwell, has been indicted by the United States.
• Blakeney was (or still is) the subject of an order of protection that prohibits him from being armed except on duty in Pine Lawn.
• One of Blakeney's sons came home with a cell phone given to him by Blakeney. It is possible that the cell phone was seized by the P.L. police or Blakeney.
• Sidney Sinclair's phone was seized and was not returned to him when he bonded out. He utilized a tracking feature on the phone that located it in south St. Louis County at or near an address associated with Blakeney.

---

Confidential - Produced Under Protective Order

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS
NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE
ADMISSIBLE IN ANY LAWSUIT
Page 3 of 5

• A former officer can testify that he has seen Blakeney high or drunk and armed. On one occasion, he arrived at a multi-agency search for a missing person armed with an AR-15 and had come to the scene from the East Side.
• Blakeney tested positive for cocaine.
• Blakeney is known to frequent the strip clubs on the East Side and even goes there while on duty.
• Similar to the stop of Anthony Telano, Blakeney stopped the St. Ann Chief of Police. Blakeney and his partner followed the Chief's car from downtown, some 7 or 8 miles from Pine Lawn and after they passed through Pine Lawn, let the Chief's car pass and then pulled it over. Blakeney was apparently on duty on this occasion.
• Blakeney is a notorious liar.
• While in court with Capt. Telano, Blakeney was eavesdropping on a private conversation I was having with my client.
• One client who was at Pine Lawn to retrieve property or complain was told by the clerk, "Blakeney again."
• Blakeney started as a corporal and was promoted twice and is now a lieutenant.
• There may be a sizeable number of officers who will testify about Blakeney's abusive and extra-legal practices. For example, he is reported to go outside his jurisdiction and stop motorists in the City of St. Louis. He may secure plates from cars towed to Eddie's, affix them to his car and ride through the city assaulting people. Another report is that he will go to the East Side clubs while on duty and get drunk and or high.
• Blakeney was accused of rape (off duty).
• Blakeney beat and humiliated his former wife. On one occasion he threw her down, locked her out of the house and stuck a pacifier in her mouth.
• Former Pine Law Chief of Police Ricky Collins has a troubled past. Among the cases of which I am aware, he broke a nightstick over the head of my client and charged him with the destruction of city property.

Confidential - Produced Under Protective Order

NAKITA JACKSON

Confidential - Produced Under Protective Order

# THE RYALS LAW FIRM, P.C.
## ATTORNEYS AT LAW

STEPHEN M. RYALS

OF COUNSEL:
STEVEN J. QUINN

16640 CHESTERFIELD GROVE ROAD
SUITE 100
CHESTERFIELD, MISSOURI 63005
TELEPHONE (314) 862-6062
FAX: (636) 534-6062

November 7, 2014

Blake D. Hill, Esq.
King, Krehbiel & Hellmich, LLC
2000 So. Hanley Road
St. Louis, Missouri 63144

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER
NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR
OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT

Re: *Nakita Jackon v. City of Pine Lawn and Steven Blakeney*

Dear Blake:

To follow our recent discussions, I represent Nakita Jackson in her claim for damage against the City of Pine Lawn and Steven Blakeney arising from the seizure of Ms. Jackson by Steven Blakeney on December 7, 2012. Blakeney's conduct violated Ms. Jackson's Fourth Amendment rights for which she will seek redress pursuant to 42 U.S.C. §§1983 and 1988.

The City of Pine Lawn is liable for the constitutionally violative conduct of Blakeney because Blakeney has engaged, and continues to engage, in conduct that is unconstitutional. The City was and is aware of his conduct and failed to exercise its duty to supervise and control Blakeney. I represent each of the individuals identified in the attachment and each of them has committed to support Ms. Jackson and one another in pursuit of their remedies, including the public policy concerns of each of them.

*The Incident Involving Nakita Jackson and Blakeney*

On December 7, 2012 at approximately 3:00 p.m., Nakita Jackson was a guest in the home of her sister at 4244 Peyton in Pine Lawn. Ms. Jackson was awaiting the arrival of her nieces from school so that she and her sister, Lisa Jackson could leave to retrieve her car that was being repaired. The sisters could not leave until the children arrived because Lisa Smith's infant was napping and the school children were going to sit for her while their mother and aunt retrieved Nakita's car.

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER
NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR
OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT

---

Mr. Hill
November 7, 2014
Page 2 of 5

Nakita and Lisa began leaving the residence when they saw the children approaching. Lisa left first while Nakita was donning her shoes and then followed shortly after. Nakita was pregnant.

It appears that Nakita's niece, Bryesha, had been in some sort of altercation at the bus stop. Nakita was not aware of that fact. When Nakita emerged from the home, she was beginning to talk to her niece when Blakeney ran up and struck Nakita in the face and unleashed a stream of profanity at her. When she asked him why he struck her and why the police were grabbing Bryesha, Blakeney replied, "Get the fuck back before I hit you again." Blakeney ordered other officers to arrest Nakita and several officers threw her to the ground from behind while another choked her from the front. One forcefully placed a knee in her back while another placed a Taser at her neck. She informed the officers that she was pregnant, and begged them not to taser her. As she continuously told the officers that she was pregnant, one officer lifted her and slammed her down, telling her to "shut the fuck up" and "lay flat." As a result of the actions of the officers, Nakita vomited. Nakita was in pain and requested medical assistance. Blakeney stated, "Her ass will be fine."

While in the jail, Blakeney's taunting continued. He made a comment about him going to Applebee's and Nakita being in jail. This comment is similar to the one Blakeney made to Sidney Sinclair.

After they were released, the Jackson sisters contacted the Chief of Police, Ricky Collins, to lodge a complaint about their treatment. The Chief stated, "Let me guess. This happened second shift, around 3:00 p.m. That shift is always fucking up. I told these boys that they were going to dig themselves into something they can't get out of."

The charges against Nakita – Assault on a Law Enforcement Officer and Interfering – were dismissed.

*Liability of Blakeney and Pine Lawn*

Nakita Jackson did not assault a law enforcement officer or anyone else. She was physically abused, arrested and charged based on the orders/lies of Blakeney. Chief Collins acknowledged that Blakeney (then a Sergeant) and the others in his squad were abusive. Inferentially, the beating and arrest of Nakita was not the first incident involving Blakeney and as the attachment reveals, it was not the last.

Blakeney's abusive actions are well known to others in the law enforcement community and to those in Pine Lawn with a duty to control him. Despite a clear and pervasive history of violations of the law and United States Constitution, Blakeney has

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER
NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR
OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT

---

Mr. Hill
November 7, 2014
Page 3 of 5

not been disciplined, more closely supervised or re-trained. On the contrary, he has been promoted and is now a Lieutenant.

There are ample indicators of Blakeney's unfitness to be a peace officer, apart from the multiple incidents reflected in the attachment. While an officer in New Athens, Illinois, two brother officers were so concerned about Blakeney's aggressiveness, inappropriate behavior and statements that they reported his actions to the command staff. Blakeney was dismissed from that agency because of discrepancies in his representations on his application that showed deception. Blakeney was dismissed from the Eastern Missouri Police Academy for behavioral problems, an issue that was noted by his fellow students as well as the cadre. Blakeney was dismissed from the St. Louis Metropolitan Police Department Academy. Blakeney, since beginning work for Pine Lawn, tested positive for cocaine. Blakeney has had orders of protection entered against him and had a firearms restriction that, I believe, he violated. Blakeney was found to be abusive to his former wife and on one occasion stuck a pacifier in her mouth.

Blakeney caused the traffic stop of a local police chief and his colleagues that is remarkably similar to the stop of Captain Telano. Blakeney first encountered the Chief, in the downtown area, as he was traveling from a Cardinals game with colleagues. When they reached the city limits of Pine Lawn, Blakeney slowed to allow the Chief's car to pass and then initiated a traffic stop. The officer who accompanied Blakeney was in the background signaling to the Chief by making a circular motion with his index finger near the side of his head, which the Chief took as a comment on Blakeney's competence.

Each of the individuals who are identified in the attached summary has committed to support all litigation that any of them may bring against Blakeney and Pine Lawn. Each of my clients is motivated to contribute to an effort to cause an unbiased and careful review of Blakeney's conduct and his competence to serve as a peace officer. The jury in Ms. Jackson's case and in every other will hear a complete account of Blakeney's misconduct since employed by Pine Lawn.

*Nakita Jackson's Claims*

Ms. Jackson, at the time of her encounter with Blakeney, was pregnant and was a criminal justice student. Since the incidents, she gave birth to a healthy daughter and completed her degree, and is planning to pursue her Master's Degree.

In addition to the emotional distress of her encounter with Blakeney and other Pine Lawn officers, she suffered injuries, particularly to her neck. Because of her pregnancy, she could not take certain medications to relieve the pain and spasm and suffered due to that fact.

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER
NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR
OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT

Confidential - Produced Under Protective Order

Mr. Hill
November 7, 2014
Page 4 of 5

It was particularly disquieting for her to be assaulted and abused by a law enforcement officer given her chosen profession in the law enforcement community. Moreover, she has been and continues to suffer distress over concern with how the arrest and prosecution will affect her job prospects.

*Offer of Settlement*

On behalf of Nakita Jackson, I have been authorized to convey an offer of settlement of her claim for damages and fees pursuant to 42 U.S.C. §§ 1983 and 1988. The terms of the offer:

1. The City of Pine Lawn shall immediately request an investigation of Blakeney by the St. Louis County Police or the Missouri State Highway Patrol. The investigation shall include his background, the incidents described in this letter and in the attachment, and any other incidents that come to light and shall be in the nature of an internal investigation with the goal of determining whether Blakeney should be disciplined and what the discipline should be.

2. The results of the investigation shall be forwarded to the Missouri Peace Officer Standards and Training Commission (P.O.S.T.).

3. Pine Lawn shall direct that Blakeney shall not exercise police powers unless on duty and unless within the city limits of Pine Lawn.

4. Pine Lawn shall initiate a program of training that reflects instruction using the treatment of Nakita Jackson, and of the other violations described in the attachment as a foundation for instructing on the limits of the United States Constitution, and the laws and fully explaining how the actions of Blakeney violated them.

5. Pine Lawn shall confess Nakita Jackson's petition to expunge her arrest record.

6. Pine Lawn and Blakeney shall pay Nakita Jackson the sum of One Hundred Fifty Thousand Dollars ($150,000.00) for damages resulting from the injuries suffered by Ms. Jackson at the hands of Blakeney. The amount of the offer is inclusive of attorney fees and in exchange for the payment and acceptance of the other terms, Ms. Jackson will provide Blakeney and Pine Lawn with a full release, including a release of attorney fees.

Ms. Jackson intends to engage in limited discussion about the settlement, pre-suit, of her cause and I invite you to reply at your first opportunity. Please let me know if your

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER
NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR
OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT

---

Confidential - Produced Under Protective Order

Mr. Hill
November 7, 2014
Page 5 of 5

principal is interested in making a diligent effort to resolve Nakita Jackson's case and, importantly, if not, so I can commence suit without undue delay.

Very truly yours,

*[signature]*

Stephen M. Ryals

SMR/envo
Enclosure: Case Synopses

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER
NO PART OF THIS LETTER OR CONTENTS IS AN ADMISSION OR
OTHERWISE ADMISSIBLE IN THIS OR ANY OTHER LAWSUIT

---

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS
NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE
ADMISSIBLE IN ANY LAWSUIT
Page 1 of 5

### City of Pine Lawn/Steven Blakeney
#### Case Synopses

*Date of Occurrence: 6/23/11. Kristen Moore.*

Blakeney was a corporal, off duty when he stopped Kristen Moore, while she was driving to work.

On June 23, 2011 at approximately 6:30 p.m., while driving to work at Washington University/Barnes Hospital in St. Louis from her home in Waterloo, Illinois. While off duty in his private SUV, Blakeney pulled over Kristen Moore. His children were in the vehicle with him. Blakeney approached Ms. Moore. In a rage and his behavior only got worse. He released Ms. Moore without a citation and she learned later that he had preferred a C&I charge against her that the State did not pursue.

Blakeney's personal vehicle was equipped with police lights and other police equipment.

Blakeney threatened Ms. Moore by telling her that he knew where she lived and after the incident Ms. Moore saw him following her.

Ms. Moore lodged a complaint and a City official told her to excuse the conduct because Blakeney had come from a funeral.

A Google search of "officer steven blakeney" will lead to a new report on Fox 2 that reports on this incident.

*DOI: 10/5/12. Tremmell McCole*

With Sidney Sinclair, Tremmell McCole and Sidney Sinclair were walking from the home of Mr. McCole. As they were walking, they noticed an undercover police car in the middle of the street. Blakeney, brandishing a shotgun, approached the pair from a distance of a couple of houses away and said, "come here, boy." Other officers arrived and while Blakeney held the shotgun on them, threw Mr. McCole to the ground and began kicking him. Blakeney kicked Mr. McCole in the face. He was then pulled up and violently thrown against the police car and thrown in the back. Blakeney choked Mr. McCole while he was handcuffed.

Mr. McCole was held in jail for a week on charges related to a derelict vehicle and the failure to appear on those charges. Mr. McCole never resided in Pine Lawn and did not

---

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS
NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE
ADMISSIBLE IN ANY LAWSUIT
Page 2 of 5

own a vehicle. He was also charged with Failure to Comply and Disorderly Conduct. All charges were dismissed.

*DOI: 10/5/12. Sidney Sinclair*

Walking with Tremmell McCole. Mr. Sinclair was in a suit as he had just come from a job interview. He witnessed Blakeney abusing Tremmell McCole and yelled for him to stop and then, "come here, boy." Blakeney then told him he was failing to comply and was going to jail. Mr. Sinclair told Blakeney that he had not done anything wrong and noted his suit. Blakeney said, "Oh, so being in a suit and tie makes you better than me?" As Mr. Sinclair saw Blakeney abusing Tremmell McCole he overheard officers and Blakeney – Blakeney said, "What? You disagree with what I'm doing? No? Then shut the fuck up." Mr. Sinclair bonded out and his case was ultimately dismissed. Mr. Sinclair related the bad reputation of Blakeney and said that several officers hinted that Blakeney is a problem officer and this sort of behavior is not unusual for him.

*DOI: 12/7/12. Nakita Jackson*

Nakita Jackson was visiting at her sister's home. They walked to the bus stop to meet her niece. There was a fight or tussle involving the children. The police arrived and Blakeney punched her in the face and choked her and others threw her to the ground, put a knee in her back and put a Taser against her neck. She yelled that she was pregnant and they did not Taser her. While on the ground, she had abdominal and back pain and vomited. She asked for medical attention and Blakeney said "her ass will be fine." She asked Blakeney why he hit her and he said, "get the fuck back before I hit you again." She was taken to jail, bonded out and all the charges were dismissed.

Blakeney made statements that contained racial slurs.

Ms. Jackson asked to speak to a supervisor and Blakeney said that he was in charge – that nobody was above him. Ms. Jackson complained to then Chief Ricky Collins who said, "Let me guess when this happened. 2nd shift, around 3:00 p.m. That shift is always fucking up." Blakeney ordered the arrest of multiple people, including children.

*DOI: 3/16/13. Kaleisha Beck*

Kaleisha Beck was staying with Racquel Wooten and family on James A. Harvey Lane, Wellston, a neighboring community to Pine Lawn. At approximately 10:30 p.m., K.B. came out of a main level room and saw five cops in living room. She was detained on a couch for 30 minutes at gunpoint.

Confidentials Produced Under Protective Order

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS
NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE
ADMISSIBLE IN ANY LAWSUIT
Page 3 of 5

The officers were from Pine Lawn and were in Wellston attempting to apprehend a woman who had a warrant. They apparently thought Raequel Wooten was the woman, but Raequel Wooten was the wanted woman's sister. The wanted woman was not present. It does not appear that they had a search warrant.

A Wellston officer, Sgt. Bickley, showed up and is a witness to the unlawful entry and search of the residence by Pine Law officers, including Blakeney. Raequel Wooten saw an argument between Sgt. Bickley and P.L. officers about them blocking the street.

*DOI: 3/16/13.* Raequel Wooten

Raequel Wooten was at home, reading in her upstairs bedroom, when Pine Lawn officers came in looking for Katrena W. guns drawn. The police rounded up and detained at gunpoint Ms. Wooten and her five children, along with Kaleisha Beck and her small child. At some point, she encountered Sgt. Bickley from Wellston. He told her that it was not Wellston P.D. is home. She also saw Bickly arguing with a P.L. cop outside about unblocking the street. Ms. Wooten was cuffed and accused of being Katrena W.

The police had no arrest warrant and no search warrant

*DOI: 7/19/13* Roy Anthony Telano.

Anthony Telano is a former police officer, up through the ranks Captain in the United States Army (now in IMA status) and employee of the National Geospatial Agency. While off duty (we believe), Blakeney orchestrated the traffic stop and arrest of Capt. Telano, the search and towing of his car and, the filing of charges against him. When the Pine Lawn officers pulled Capt. Telano over, Blakeney came running up yelling, "who's the tough guy." He assaulted Capt. Telano.

The charges were dismissed

Blakeney made a statement to Capt. Telano that he was a disgrace to the military. Blakeney made a comment about knowing where Capt. Telano lives, similar to what he said to Kristen Moore.

*DOI: 4/10/14.* Jordan Martner

Jordan Martner is a young college student who was traveling to her boyfriend's apartment in St. Louis from Columbia, Missouri. She was pulled over by Blakeney and, ultimately, arrested after questioning the lawfulness of the search of her car. When she retrieved her car from impound, she found that her personal belongings, including a computer, clothing and personal items, were damaged from grease and from having the spare tire thrown on top of them.

Confidentials Produced Under Protective Order

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS
NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE
ADMISSIBLE IN ANY LAWSUIT
Page 4 of 5

During their encounter, Blakeney examined Ms. Martner's cell phone, ordered her to give him the pass code and texted a message posing as her to her boyfriend. He also asked her whether she like to go to raves.

After Blakeney arrested Ms. Martner she began to cry. He seemed to enjoy that and said that she was going to find out how bad this part of town was.

*DOI: 6/13/14.* Hamilton and Jones Families and Tony Richard II

Seven people at a family gathering were arrested, assaulted, pepper sprayed and charged. The homeowner is a cancer patient and had hosted two family gatherings each year for approximately thirty years. The police first came because they said there was a complaint about shots fired. One of the men told the officer that they had not heard any shots. Blakeney arrived and began aggressively cursing the man talking to the officer. He then got on the loud speaker and told everyone to "get the fuck inside." The man who was talking to the officer told Blakeney that he had no call to curse, and that there were children inside the house. Blakeney said, "fuck the kids."

Then, the officers crossed the fence and began using force on people despite there being no threats against the officers and no resistance. The used force, including the Taser, pepper spray and hands on, against a number of the family members. They arrested women and men alike. One of the arrestees is a family friend who is an active duty United States Coast Guard. One of the officers shoved the cancer victim homeowner against a door-frame and caused her chemo port to bang against the frame.

One family member was pepper sprayed because he was recording the abuses. Everyone who was arrested had their phones seized and all of the recorded footage was deleted from each phone.

### *Additional Information Regarding Pine Lawn/Blakeney*

* The Mayor of Pine Lawn, Sylvester Caldwell, has been indicted by the United States.
* Blakeney was (or still is) the subject of an order of protection that prohibits him from being armed except on duty in Pine Lawn.
* One of Blakeney's sons came home with a cell phone given to him by Blakeney. It is possible that the cell phone was seized by the P.L. police or Blakeney.
* Sidney Sinclair's phone was seized and was not returned to him when he bonded out. He utilized a tracking feature on the phone that located it in south St. Louis County at or near an address associated with Blakeney.

Confidentials Produced Under Protective Order

CONFIDENTIAL AND PRIVILEGED SETTLEMENT OFFER CONTENTS
NO PART OF THESE SYNOPSES CONTAIN ANY ADMISSION OR ARE
ADMISSIBLE IN ANY LAWSUIT
Page 5 of 5

* A former client can testify that he has seen Blakeney high or drunk and armed. On one occasion, he arrived at a multi-agency search for a missing person armed with an AR-15 and had come to the scene from the East Side.
* Blakeney tested positive for cocaine.
* Blakeney is known to frequent the strip clubs on the East Side and even goes there while on duty.
* Similar to the stop of Anthony Telano, Blakeney stopped the St. Ann Chief of Police. Blakeney and his partner followed the Chief's car from downtown, some 7 or 8 miles from Pine Lawn and after they passed through Pine Lawn, let the Chief's car pass and then pulled it over. Blakeney was apparently on duty on this occasion.
* Blakeney is a notorious liar.
* While in court with Capt. Telano, Blakeney was eavesdropping on a private conversation I was having with my client.
* One client who was at Pine Lawn to retrieve property or complain was told by the clerk, "Blakeney again."
* Blakeney started as a corporal and was promoted twice and is now a lieutenant.
* There may be a sizeable number of officers who will testify about Blakeney's abusive and extra-legal practices. For example, he is reported to go outside his jurisdiction and stop motorists in the City of St. Louis. He may secure plates from cars towed to Eddie's, affix them to his car and ride through the city assaulting people. Another report is that he will go to the East Side clubs while on duty and get drunk and or high.
* Blakeney was accused of rape (off duty).
* Blakeney beat and humiliated his former wife. On one occasion he threw her down, looked her out of the house and stuck a pacifier in her mouth.
* Former Pine Law Chief of Police Ricky Collins has a troubled past. Among the cases of which I am aware, he broke a nightstick over the head of my client and charged him with the destruction of city property.