UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| STEVE BLAKENEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:19-cv-02017-SNLJ |
| | ) | |
| CITY OF PINE LAWN, MISSOURI, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on twelve motions. Plaintiff's first amended complaint was filed midway between the myriad motions, mooting several of them directed to a since-nullified complaint. *See Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1139 (8th Cir. 2014) (an amended complaint nullifies the original complaint). As such, the following motions are **DENIED AS MOOT**: defendant City of Pine Lawn's motion to dismiss (ECF #40), defendant Missouri Public Entity Risk Management Fund's ("MOPERM") motion to dismiss (ECF #45), defendants Anthony Gray, Brian Krueger, and Donnell Smith's motion to dismiss (ECF #48), defendants Lashawn Colquitt, Willie Epps, Clarence Harmon, Paul Rinck, and John Struckhoff's motion to dismiss (ECF #53), and MOPERM's substitute motion to dismiss (ECF #55).

That leaves the following motions to be decided: plaintiff's motion to disqualify judge (ECF #42), defendant City of Pine Lawn's motion to dismiss (ECF #67), defendants Gray, Krueger, and Smith's motion to dismiss (ECF #69), defendant MOPERM's motion to dismiss (ECF #73), defendants Colquitt, Epps, Harmon, Rinck,

and Struckhoff's motion to dismiss (ECF #80), defendant MOPERM's motion for

sanctions (ECF #96), and defendant Donnell Smith & Associates, LLC.'s ("Smith &

Associates") motion to dismiss (ECF #108).

## I. BACKGROUND

Plaintiff, a former police officer for Pine Lawn, Missouri, brings more than 150

counts against Pine Lawn and various employees thereof alleging they retaliated against

him and worked to use the judicial process in their favor after he attempted to

whistleblow about various circumstances of corruption within Pine Lawn's ranks. Before

this case was filed, plaintiff was convicted and sentenced in October 2016 to 51 months

in prison involving claims that he orchestrated the arrest of mayoral candidate Nakisha

Ford during a 2013 mayoral election. Prior to that, plaintiff was also terminated by

unanimous vote of the Pine Lawn Board of Alderman in December, 2014, allegedly

because he drugged or otherwise managed to incapacitate two women (one a police

officer) after meeting with them at a bar—both women having "woken up at [plaintiff's

home" with "no memory" of what happened. Plaintiff says these events and outcomes,

among many others, were based on falsities perpetrated by the various defendants to

make plaintiff "look like a terrible person and a bad police officer." In total, plaintiff says

he diligently tried to expose Pine Lawn's mass corruption and paid the price for doing so

through a total destruction of his livelihood and reputation.

Plaintiff brings various counts to this effect, including whistleblowing, retaliation,

intentional infliction of emotional distress, several Section 1983 claims based on

provisions of the U.S. Constitution, invasion of privacy, abuse of process, malicious

2

prosecution, and civil conspiracy. Defendants have filed many motions to dismiss arguing, similarly with each other, that sovereign immunity and the applicable statute of limitations bar plaintiff's claims. In addition, defendants attack the elements of plaintiff's claims or point to pleading deficiencies as further reason to dismiss them. In several instances, plaintiff concedes that certain counts should be dismissed; but, many others remain in dispute. The Court endeavors to address each of the many remaining arguments below.

## II. ANALYSIS

### A.  Plaintiff's Motion to Disqualify Judge, ECF #42

The Court begins with plaintiff's motion to disqualify. Plaintiff asserts that, in this case, he is seeking "damages related to the sentence imposed by this Court," which was influenced by "false, misleading, and illegally/improperly offered [] evidence" perpetrated by defendants. He alleges that "[t]his Court will likely be a material witness in this proceeding." He also points out how this Court, when imposing its sentence in the underlying criminal matter, said "[Blakeney is] the one who has become a disgrace."

None of these arguments suffice to justify disqualification. 28 U.S.C. § 455(a) states that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." A "party introducing a motion to recuse carries a heavy burden of proof; a judge is presumed to be impartial and the party seeking disqualification bears the substantial burden of proving otherwise." *In Re Steward*, 828 F.3d 672, 682 (8th Cir. 2016). A "party is not entitled to recusal merely because a judge is 'exceedingly ill disposed' toward

3

them, where the judge's 'knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings.'" *Id*. (quoting *Liteky v. United States*, 510 U.S. 540, 551 (1994)).

As it has already in a separate case, this Court's comment about Blakeney being a "disgrace" was "a comment related to Blakeney's misconduct as a police officer" that was "based solely on the evidence presented to this Court." *Blakeney v. United States*, 4:19-cv-00079-SNLJ, ECF #32 (E.D. Mo. Aug. 2, 2019). If, from this case, the evidence previously relied upon turns out to have been false or misleading as plaintiff now argues, nothing in his motion even remotely hints at the impossibility for this Court to remain impartial as to those revelations. Terse as his arguments are, plaintiff does nothing to carry the "heavy burden of proof" his motion imposes. *In Re Steward*, 828 F.3d at 682. Nor does plaintiff's bald suggestion that "this Court will likely be a material witness" require recusal. Those comments—taken alone and in the vacuum for which they were argued in plaintiff's brief—are self-serving, subjectively based, and nothing but conjecture. Section 455(a) "establishes an ***objective*** standard" and "is not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice." *White v. National Football League*, 585 F.3d 1129, 1138 (8th Cir. 2009) (emphasis added).  Plaintiff's motion to disqualify is denied.

### B.  Defendant City of Pine Lawn's Motion to Dismiss, ECF #67

Defendant City of Pine Lawn's Rule 12(b)(6) motion notes 17 counts have been filed against it.[1]  Through the briefing, plaintiff conceded that certain counts should be legally dismissed, including Counts II, X, XI, and XVI. Those counts are so dismissed. Another count, Count IV, contains strikethrough lines, fails to state a legally cognizable claim (referred to simply as "Missouri Common Law"), and appears to be inadvertently included in the complaint—certainly plaintiff does nothing to defend it. It will also be dismissed. Many arguments have been made regarding the remaining 12 counts, but the threshold issue of sovereign immunity takes center stage. The Court begins there.

### i.  State Sovereign Immunity Applicable to Plaintiff's State Claims

Sovereign immunity "protects governmental entities from tort liability." *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 190 (Mo. banc. 2019). It is the rule, rather than the exception, *Metro. St. Louis Sewer Dist. v. City of Bellefontaine Neighbors*, 476 S.W.3d 913, 922 (Mo. banc. 2016), and as such "is not an affirmative defense but is part

---

[1] For context, the counts include:
Count I—Missouri Common Law Whistleblower
Count II—Missouri Common Law Retaliation, Violation of State Constitution
Count III—Missouri Common Law Retaliation, Acting as a Witness
Count IV—Missouri Common Law
Count V—Intentional Infliction of Emotional Distress
Count VI—Violation of U.S. Constitution, Right to Free Speech (Section 1983)
Count VII—Violation of U.S. Constitution, Right to Freedom of Association (Section 1983)
Count VIII—Violation of U.S. Constitution, Right to Procedural Due Process (Section 1983)
Count IX—Violation of U.S. Constitution, 14th Amend. Right to Equal Protection (Section 1983)
Count X—Violation of 42 U.S.C. § 1981
Count XI—Violation of Privacy Act 5 U.S.C. §552a(b)
Count XII—Abuse of Process
Count XIII—Malicious Prosecution
Count XIV—Invasion of Privacy, Intrusion Upon Selection
Count XV—Invasion of Privacy, Publication of Private Facts
Count XVI—Whistleblower Act 2017
Count CLXX—Civil Conspiracy, Malicious Prosecution

of the plaintiff's *prima facie* case." *St. John's Clinic, Inc. v. Pulaski Cty. Ambulance Dist.*, 422 S.W.3d 469, 471 (Mo. App. S.D. 2014) (compiling cases), *cited approvingly in Newsome v. Kansas City, Mo.*, 520 S.W.3d 769, 776 (Mo. banc. 2017). Accordingly, "plaintiff must plead with specificity facts demonstrating his claim falls within an exception to sovereign immunity." *Parish v. Novus Equities Co.*, 231 S.W.3d 236, 242 (Mo. App. E.D. 2007); *Stat ex rel. City of Lee's Summit v. Garrett*, 568 S.W.3d 515, 519 (Mo. App. W.D. 2019) (accord); *see also State ex rel. City of Kansas City v. Harrell*, 575 S.W.3d 489, 492 (Mo. App. W.D. 2019) (to survive dismissal, petition must plead specific facts that, taken as true, establish an exception to the rule of sovereign immunity).

As applied to municipalities, sovereign immunity is not all-encompassing but is, instead, limited in several respects. First, "municipalities are not provided immunity for proprietary functions—those performed for the benefit or profit of the municipality as a corporate entity." *Southers v. City of Farmington*, 263 S.W.3d 603, 609 (Mo. banc. 2008). But, municipalities "are immune for government functions—those performed for the common good." *Id.* Second, sovereign immunity is statutorily waived for injuries caused by the negligent operation of a motor vehicle by public employees and for injuries caused by the dangerous conditions of public property, § 537.600.1(1)-(2) RSMo, as well as when liability insurance is purchased to cover tort claims other than those just described—though only in an amount of and for the purposes covered by the insurance purchased. *See* § 537.610.1 RSMo; *see also* § 71.185 RSMo (liability insurance purchased by municipalities to cover "tort liability for governmental acts").

6

Plaintiff says immunity does not exist here both because Pine Lawn was engaged in a proprietary function and because it purchased insurance covering his claims. Those arguments are diametrically opposed, though. Proprietary functions are never immunized and simply do not come under the purview of sovereign immunity, whereas insurance acts as a waiver to otherwise applicable immunity. *See, e.g., Gregg v. City of Kansas City*, 272 S.W.3d 353, 359 (Mo. App. W.D. 2008) (treating proprietary function and insurance arguments in the disjunctive). This is seen specifically in Section 71.185, which allows a municipality to carry liability insurance, and thus waive immunity, for injuries "caused while in the exercise of [] *governmental functions*." § 71.185.1, RSMo (emphasis added); *see also Southers*, 263 S.W.3d at 609 ("municipalities are not provided immunity for proprietary functions"). In any event, this Court assumes, *arguendo*, that plaintiff makes these arguments in the alternative.

Regarding propriety function, plaintiff argues "the complaint more than adequately plead (sic) claims that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," suggesting he could add the "magic words 'proprietary function'" in a "single sentence" if this Court were truly concerned about the sufficiency of his complaint. He goes on, "[t]here can be no public function [] attendant to intentionally thwarting justice, wrongfully terminating, defaming, wrongfully accusing, and then incarcerating [him] for a crime he did not commit," thus "[t]he conduct [he alleges] against Pine Lawn can ONLY be interpreted as proprietary."

That argument misses the mark. Foremost, plaintiff is required to "plead with ***specificity*** facts which indicate that the City was engaged in a proprietary function." *State*

7

*ex rel. City of Lee's Summit*, 568 S.W.3d at 520 (emphasis added). Using the so-called magic words of "proprietary function" is nothing more than injecting a legal conclusion into the pleadings. Moreover, not every tort is a proprietary function. In evaluating whether a particular function is governmental or proprietary, "a court must look to the nature of the activity performed, not the nature of the tort." *Crouch v. City of Kansas City*, 444 S.W.3d 517, 523 (Mo. App. W.D. 2014) (internal citations omitted). Further, the "particular defendant's conduct and the motives behind it are less important than the generic nature of the activity." *A.F. v. Hazelwood School Dist.*, 491 S.W.3d 628, 634 (Mo. App. E.D. 2016). So, plaintiff must demonstrate through specific factual allegations that he was injured through Pine Lawn's exercise of its corporate powers, viewed broadly. *See State ex rel. City of Kansas City*, 575 S.W.3d at 493; *Southers*, 263 S.W.3d at 609. In other words, he must demonstrate Pine Lawn was engaged in an activity "for profit or for the special benefit of the municipality" that injured him. *Bennartz v. City of Columbia*, 300 S.W.3d 251, 259 (Mo. App. W.D. 2009).

Plaintiff's complaint provides a veritable mountain of facts emphasizing particularized conduct and motives by Pine Lawn and its employees to build his claims, but none of it can be generalized into an activity that would constitute a proprietary function. The balance of his allegations revolves around employment-related concerns. But, "[p]ersonnel decisions and the internal administration of operating a municipal department" are government, not proprietary, functions. *Id.* (quoting *Kunzie v. City of Olivette*, 184 S.W.3d 570, 574 (Mo. banc. 2006)). Thus, plaintiff's claims for wrongful discharge and constructive discharge, including when couched in terms of

whistleblowing and retaliation (Counts I and III), have "consistently been found to be barred by sovereign immunity." *Id.*; *see also Brooks v. City of Sugar Creek*, 340 S.W.3d 201, 206 (Mo. App. W.D. 2011) (termination of city police officer was government function entitled to sovereign immunity even if alleged conduct by superiors was based on personal motives to protect close friend of police chief). Similarly, plaintiff's claim for emotional distress (Count V) is tied to no specific activity that would constitute a proprietary function—it belies logic to believe Pine Lawn, as a corporate entity, gains profit or a special benefit from imposing emotional distress upon its employees. *See Duncan v. Creve Couer Fire Protection Dist.*, 802 S.W.2d 205, 207 (Mo. App. E.D. 1991) (sovereign immunity applied to claim for intentional infliction of emotional distress). The same goes for plaintiff's invasion of privacy, abuse of process, malicious prosecution, and civil conspiracy (based on malicious prosecution) claims (Counts XII, XIII, XIV, XV, CLXX)—all are derivative and do not reveal the proprietary function plaintiff relies on. *See Hazlett v. City of Pine Lawn*, 2013 WL 4482864 at *2 (E.D. Mo. Aug. 19, 2013); *Burgett v. Kansas City Area Transp. Authority*, 2013 WL 4027439 at *2 (W.D. Mo. Aug. 7, 2013); *Smith v. New Liberty Hosp. Dist. of Clay Cty.*, 339 S.W.3d 573 (Mo. App. W.D. 2011) (per curiam); *Fischer v. Steward*, 2010 WL 147865 at *12 (E.D. Mo. Jan. 11, 2010). In total, plaintiff's claims—all tied to issues of personnel management and internal administration of Pine Lawn Police Department—are either incidental to a governmental function, or else fail to reveal (with specificity) the independent corporate nature of Pine Lawn's activities; certainly, his claims do not comport with any traditional understanding of proprietary functions. *See, e.g.*, *Parish v.*

9

*Novus Equities Co*., 231 S.W.3d 236 (Mo. App. E.D. 2007) (provision of water for private use); *Thomas v. City of Kansas City*, 92 S.W.3d 92 (Mo. App. W.D. 2002) (operation of drainage system); *Larabee v. City of Kansas City*, 697 S.W.2d 177 (Mo. App. W.D. 1985) (demolition of private property); *Davis v. City of St. Louis*, 612 S.W.2d 812 (Mo. App. E.D. 1981) (street sweeping); *St. Joseph Light & Power Co. v. Kaw Valley Tunneling, Inc*., 589 S.W.2d 260 (Mo. banc. 1979) (sewer construction).

Plaintiff's alternative argument—that sovereign immunity was waived because of the purchase of insurance—is made in a single sentence, repeated in most every claim, which is simply that "Pine Lawn has a policy of insurance which provides coverage for the conduct Plaintiff has alleged against Pine Lawn," or that plaintiff "has procured liability insurance [for] claims such as this."  It thus appears this argument was more of an afterthought or a fall-back position that plaintiff tacitly concedes is tenuous.  Indeed, plaintiff offers no support for this position in any of the briefing other than the one sentence itself and, instead, plaintiff relies almost exclusively on his failed argument that the conduct in question was proprietary, not governmental.

The insurance exception to sovereign immunity is quite narrow, the extent of which is "expressly dictated, and limited, by the terms of the insurance policy." *Topps v. City of Country Club Hills*, 272 S.W.3d 409, 415 (Mo. App. E.D. 2008). And "plaintiff shoulders the burden of proving the existence of an insurance policy, and that the terms of the policy cover the claims asserted by the plaintiff against the municipality." *Id.* In fact, because a lack of sovereign immunity is "part of the plaintiff's *prima facie* case," *St. John's Clinic, Inc*., 422 S.W.3d at 471, plaintiff is required—upfront—to "plead[] ***with***

10

*specificity* those facts giving rise to an exception to sovereign immunity." *Hazelwood School Dist.*, 491 S.W.3d at 633 (emphasis added).

Through 271 pages of allegations covering many months, many defendants, and more than 150 counts, plaintiff simply concludes that the relevant defendant (in this case, Pine Lawn) "has procured liability insurance" for "claims such as this." It is difficult to tell what concrete claims have formed from the sprawling list of allegations such that they can be judged against the availability of insurance. In that regard, the roving nature of plaintiff's complaint makes it nearly impossible to tell what the relevant policy period is and what the relevant incident or occurrence might be. Still, in *Kunzie v. City of Olivette*, the Missouri Supreme Court was content with an allegation that "[plaintiff] alleges that the city maintains liability insurance 'to handle the consequences of employment related actions brought against them.'" 184 S.W.3d 570, 574 (Mo. banc. 2006). How this meets the specificity requirement is, frankly, unclear—the hurdle appears exceptionally low. In fact, more recent caselaw from the Missouri Court of Appeals suggests that additional specificity is required. See, e.g., *Hazelwood School Dist.*, 491 S.W.3d at 635 (pleading allegation that school "has insurance[,] which provides coverage for the incident in question" deemed insufficient where it was not tied to the details of any particular incident covering many allegations of wrongdoing); *Hendricks v. Curator of Univ. of Mo.*, 308 S.W.3d 740, 747 (Mo. App. W.D. 2010) (pleading allegation that "at all relevant times herein pertinent the Defendants … waived the application of sovereign immunity in that [they were] covered by the [insurance] plan" deemed a legal conclusion insufficient to avoid dismissal); *see also McConnell v.*

11

*West Bend Mut. Ins. Co.*, -- S.W.3d --, 2020 WL 2529019 at *7-8 (Mo. App. W.D. May 19, 2020) (allegations failing "to establish how coverage [] applie[d]" rendered allegation "a legal conclusion, wholly lacking in supportive facts" that was insufficient "to preclude dismissal"). Nonetheless, on the basis of *Kunzie*, plaintiff's bare-bones allegations seem to suffice, and it therefore behooves defendants to show—rather than simply tell—that insurance coverage does not exist for plaintiff's many claims. On the record before it, this Court cannot determine whether the insurance waiver exception to sovereign immunity applies against Pine Lawn.

All that said, the state law claims against Pine Lawn, save one, must still be dismissed on the merits. That is because the underlying claims against individual defendants, on which the claims against Pine Lawn are dependent, must be dismissed. Pine Lawn is merely a body politic that relies on its "agents and servants … [to] act." *State ex rel. State Highway Commission v. City of St. Louis*, 575 S.W.2d 712, 719 (Mo. App. E.D. 1978); *see also Rail Switching Servs., Inc. v. Marquis-Missouri Terminal, LLC.*, 533 S.W.3d 245, 255 (Mo. App. E.D. 2017). As will be explained, the claims against the individual defendants either do not pass muster on the pleadings or plaintiff has simply abandoned the individual defendant claims (in both their individual and official capacities). Those state law claims against Pine Lawn will be dismissed in kind— including Counts I, III, V, XII, XIII, XIV, and CLXX. *See B.A.B., Jr. v. Bd. of Educ. of City of St. Louis*, 698 F.3d 1037, 1041 (8th Cir. 2012) (applying Missouri law and noting official capacity suits are "equivalent to a suit against the government entity itself" and personal capacity suits are suits against the individual); *accord Kentucky v. Graham*, 473

U.S. 159, 165 (1985). That leaves only Count XV, invasion of privacy, that will proceed

forward as it is parallel to Count CXVII against Colquitt (in his official capacity) that

also proceeds forward as explained below in Section D.iii.

### ii. *Monell* Liability and Plaintiff's Federal Claims

That leaves plaintiff's remaining federal claims, which all come under 42 U.S.C. §

1983. These claims rely on the same conduct animating plaintiff's state law claims—that

is, Pine Lawn's purported retaliation against plaintiff affecting his employment. But,

plaintiff additionally notes an "unofficial policy or custom" by Pine Lawn to engage in

such acts, which is apparently an invocation of so-called *Monell* liability. *See Monell v.*

*Dept. of Social Servs. of City of New York*, 436 U.S. 658, 690-691 (1978) (finding that

local governments may be liable if the alleged constitutional violation is official policy or

establish through a custom or usage). He also asserts that various co-defendants were

"final policymakers," thus using the magic words to invoke another angle of *Monell*

liability. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (*Monell* liability

also reaches "a decision on a single occasion" that may constitute "an unconstitutional

municipal policy" when made by final policymakers). Deriving from federal law, *Monell*

liability goes beyond a municipality's state-granted immunities and must, therefore, be

considered independently of them. *See Howlett By and Through Howlett v. Rose*, 496

U.S. 356, 376 (1990); *see also Webb v. City of Maplewood*, 889 F.3d 483, 485-486 (8th

Cir. 2018).

Once again, however, plaintiff's allegations are alarmingly terse. In alleging an

unofficial custom, plaintiff states: "Pine Lawn an (sic) unofficial custom or practice of

the type of conduct alleged in this count which has been shown through the repeated acts

of final policymakers including [] defendants Sylvester Caldwell, Anthony Gray, Brian

Krueger, and Donnell Smith." This Court is not required to accept such conclusory

allegations as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). There is simply no

attempt by plaintiff to show a "continuing, widespread, and persistent pattern of

unconstitutional misconduct," *Bolderson v. City of Wentzville, Mo*., 840 F.3d 982, 986

(8th Cir. 2016), and pointing solely to his own experiences, though it may show

continuity and/or persistence, fails to show that the alleged conduct was so ***widespread*** as

to have "the force of law." *Praprotnik*, 485 U.S. at 127; *see also Russell v. Hennepin*

*Cty.*, 420 F.3d 841, 849 (8th Cir. 2005) (widespread pattern of constitutional misconduct

not shown by plaintiff's own circumstances alone); *Diggs v. City of St. Louis*, 2020 WL

1248653 at *2 (E.D. Mo. Mar. 16, 2020) (claims of retaliation against plaintiff related

only to his "individual experience" and did not exhibit a "widespread" custom of

whistleblowing retaliation).

And even when considering plaintiff's final policymaker arguments, which might

allow "a single occasion" to "establish an unconstitutional municipal policy," *Praprotnik*,

485 U.S. at 123, the conclusory nature of plaintiff's allegations are laid bare when

considering, specifically, his claim that Caldwell, Gray, Krueger, and Smith are the so-

called "final policymakers" of Pine Lawn. He does not dispute that Pine Lawn is a fourth-

class city under Missouri law, which this Court has itself recently determined to be the

case. *See Collins v. City of Pine Lawn, Mo*., 2017 WL 1196477 at *5 (E.D. Mo. Mar. 31,

2017). And he does not deny that, in a fourth-class city, it is the "mayor and board of

aldermen," collectively, who have "management and control of the city and its finances" pursuant to § 79.110, RSMo. *See Atkinson v. City of Mountain View, Mo*., 709 F.3d 1201, 1206 (8th Cir. 2013) (noting that it was the mayor and city council of a fourth-class city who had "final authority on the police department's policies"); *Copeland v. Locke*, 613 F.3d 875, 882 (8th Cir. 2010) ("Under Missouri state law, the mayor and the board of aldermen of a [Fourth Class City] are the final policymakers for the 'good government of the city [and] the preservation of peace and good order.'"). In fact, he seems to concede Section 79.110 is applicable, but argues that "does nothing to vitiate Pine Lawn's liability." That's a curious stance however because, of Caldwell, Gray, Krueger, and Smith, only Caldwell is actually implicated by Section 79.110—being the former mayor of Pine Lawn—and he was only permitted a *tie-breaking vote* when the board of aldermen were otherwise stalemated. *See* § 79.120, RSMo. Moreover, only "with the consent of a majority of all members elected to the board of aldermen" is a mayor permitted to "remove from office any appointive officer of the city." § 79.240 RSMo. Plaintiff's "final policymaker" argument is, thus, specious at best. Indeed, plaintiff's complaint acknowledges that he was appointed by the board of aldermen to the position of "Commander of Operations and Criminal Investigations" and that it was, ultimately, *their* decision to remove him from that position. Therefore, it does not matter what Caldwell, Gray, Krueger, or Smith did for purposes of his *Monell* claims—they are not the final policymakers, here, and Pine Lawn cannot otherwise be held liable for their conduct through *respondeat superior*. *See Hamilton v. City of Hayti, Mo.,* 948 F.3d 921, 929 (8th Cir. 2020) ("a municipality may not be held liable under § 1983 for the

constitutional violations of its employees"). Plaintiff's federal Section 1983 claims

(Counts VI, VII, VIII, and IX) fail.

### C.  Defendants Gray, Krueger, and Smith's Motion to Dismiss, ECF #69

Defendants Gray, Krueger, and Smith track 52 claims against them in total.[2] But,

they are the same standard formulations as those made against Pine Lawn—variations of

state law claims alleging wrongful discharge, invasion of privacy, abuse of process,

malicious prosecution and civil conspiracy, as well as various Section 1983 claims based

on the U.S. Constitution. This is made clear by plaintiff's memorandum in opposition,

which frequently confuses Gray, Krueger, and Smith for Pine Lawn; many of the

---

[2] The counts include:

Count XXXIV (Krueger), Count LIV (Smith), Count CXIX (Gray)—Mo. Law, Whistleblower
Count XXXV (Krueger), Count LV (Smith), Count CXX (Gray)—Mo. Law Retaliation, Violation of State Constitution
Count XXXVI (Krueger), Count LVI (Smith), Count CXXI (Gray)—Mo. Law Retaliation, Acting as a Witness
Counts XXXVIII & LII (Krueger), Count LVIII (Smith), Count CXXIII (Gray)—Intentional Infliction of Emotional Distress
Count XXXIX (Krueger), Count LIX (Smith), Count CXXIV (Gray)—§ 1983, Free Speech
Count XL (Krueger), Count LX (Smith), Count CXXVI (Gray)—§ 1983, Freedom of Association
Count XLI (Krueger), Count LXI (Smith), Count CXXVII (Gray)—§ 1983, Procedural Due Process
Count XLII (Krueger), Count LXII (Smith), Count CXXVIII (Gray)—§ 1983, 14th Amend. Equal Protection
Count XLIII (Krueger), Count LXIII (Smith), Count CXXIX (Gray)—§ 1981
Count XLIV (Krueger), Count LXIV (Smith), Count CXXX (Gray)—Privacy Act 5 U.S.C. §552a(b)
Count XLV (Krueger), Count LXV (Smith), Count CXXXI (Gray)—Abuse of Process
Count XLVI (Krueger), Count LXVI (Smith), Count CXXXII (Gray)—Malicious Prosecution
Count XLVIII (Krueger), Count LXVII (Smith), Count CXXXIII (Gray)—Invasion of Privacy, Intrusion Upon Seclusion
Count XLIX (Krueger), Count LXVIII (Smith), Count CXXXIV (Gray)—Invasion of Privacy, Publication of Private Facts
Count L (Krueger), Count LXIX (Smith), Count CXXXV (Gray)—Whistleblower Act 2017
Count LI (Krueger), Count CXXII (Gray)—Mo. Common Law, Unspecified
Count LIII (Krueger), Count LXX (Smith)—Intentional Interference with Economic Relationship
Count CLXIX (Krueger, Smith, and Gray)—Civil Conspiracy, Abuse of Process
Count CLXX (Krueger, Smith, and Gray)—Civil Conspiracy, Malicious Prosecution

arguments are nearly identical, if not completely identical, and even incorrectly address the claims against Pine Lawn rather than those against defendants.  As he did with Pine Lawn, plaintiff concedes the counts alleging a violation of the 5 U.S.C. § 552a(b)—Counts XLIV, LXIV, and CXXX—should be dismissed. Further, as this Court has tracked the arguments, plaintiff only responded to a limited number of arguments involving intentional infliction of emotional distress, violations of procedural due process (§1983), abuse of process, malicious prosecution, and conspiracy (based on abuse of process and malicious prosecution). He did not respond to defendants' arguments made against the following claims: state law whistleblowing (Counts XXXIV, LIV, CXIX), retaliation (Counts XXXV, XXXVI, LV, LVI, CXX, CXXI), free speech under Section 1983 (Counts XXXIX, LIX, CXXIV), freedom of association under Section 1983 (Counts XL, LX, CXXVI), equal protection under Section 1983 (Counts XLII, LXII, CXXVIII), Section 1981 claims (Counts XLIII, LXIII, CXXIX), invasion of privacy (Counts XLVIII, XLIX, LXVII, LXVIII, CXXXIII, CXXXIV), "Whistleblowing Act 2017" (Counts L, LXIX, CXXXV), unspecified "Missouri common law" (Counts LI, CXXII), or intentional interference with a business relationship (Counts LIII, LXX). The failure to respond to arguments in a motion to dismiss constitutes an abandonment of those claims. *Thomas v. Walmart Stores, LLP*., 2014 WL 117645 at *2 (E.D. Mo. Jan 13, 2014) (compiling cases). Those claims, therefore, are dismissed.

That leaves the following claims: (1) Counts XXXVIII, LII, LVIII, and CXXIII—claims for intentional infliction of emotional distress; (2) Counts XLI, LXI, and CXXVII—Section 1983 claims for violation of procedural due process; and (3) Counts

17

XLV, XLVI, LXV, LXVI, CXXXI, CXXXII, CLXIX, and CLXX—claims for malicious

prosecution, abuse of process, and conspiracy base on the same conduct. The arguments

against each of these categories are addressed below.

### i.   Adequacy of Plaintiff's Intentional Infliction of Emotional Distress Claims

Defendants say the intentional infliction of emotional distress claims fail because

"nowhere in [the] First Amended Complaint does [it] allege that defendants['] actions

resulted in plaintiff having emotional distress that is medically diagnosable or medically

significant." Further, the complaint "does not allege that inflicting emotional distress on

plaintiff was the sole motivation of defendants." Plaintiff points to paragraph 371, which

states he "suffers from PTSD from termination and the abuse he underwent in prison."

Yet again, he also asks for "leave of court to amend the complaint to add the 'magic

words' in the counts" if this Court is inclined to agree with defendants.

"To recover for intentional infliction of emotional distress, a plaintiff must show

(1) the defendant's conduct was extreme and outrageous; (2) the defendant acted

intentionally or recklessly; and (3) the defendant's conduct caused extreme emotional

distress resulting in bodily harm." *Gillis v. Principia Corp*., 111 F. Supp. 3d 978, 986

(E.D. Mo. 2015), *aff'd*, 832 F.3d 865 (8th Cir. 2016). The mental injury suffered must be

"medically diagnosable and significant." *Fetick v. American Cyanamid Co*., 38 S.W.3d

415, 419 (Mo. banc. 2001); *Rummans v. Chester Bross Constr. Co*., 2018 WL 6981249 at

*1 (E.D. Mo. Dec. 3, 2018). Moreover, the alleged misconduct "must be intended only to

cause extreme emotional distress to the victim." *Gibson v. Brewer*, 952 S.W.2d 239, 249

(Mo. banc. 1997). This narrowing—to conduct targeting only the imposition of emotional

distress—is intended to prevent an emotional distress claim from "swallowing" other, "existing forms of recover." *K.G. v. R.T.R.*, 918 S.W.2d 795, 799 (Mo. banc. 1996). Thus, when "a defendant's conduct is intended to invade other legally-protected interests of the plaintiff … damages for mental suffering are recoverable for those other intentional tort claims," with "the recovery for emotional distress [being] duplicative." *Diehl v. Fred Weber, Inc*., 309 S.W.3d 309, 322 (Mo. App. E.D. 2010).

Plaintiff's failure to allege that defendants' purported misconduct was the sole cause of his emotional distress is dispositive. In each of the counts at issue, plaintiff does nothing more than reincorporate the hundreds of preceding paragraphs in his complaint—taking special note only to say, in conclusory fashion, that insurance has been procured for each claim (so as to waive sovereign immunity). And in plaintiff's other claims, he repeatedly references the emotional distress that he suffered as part of his damages. Thus, his emotional distress claims are not independent of his other claims, and he does nothing to attempt to separate them by alleging what—if any—conduct defendants engaged in that was solely targeted at causing his emotional distress. Rather, the totality of the complaint makes clear that his emotional distress claims derive from his termination. Having failed to allege any misconduct by defendants that was solely intended to cause emotional distress, *Gibson*, 952 S.W.2d at 249, plaintiff's emotional distress claims (Counts XXXVIII, LII, LVIII, and CXXIII) must fail.

### ii.    Adequacy of Plaintiff's Procedural Due Process Claims (Section 1983)

Defendants argue that "[w]hen asserting a due process claim under § 1983 … a plaintiff must establish a property interest to which the Fourteenth Amendment applies."

According to their brief, "police officers of fourth-class Missouri cities do not have a property interest in their jobs." Plaintiff counters by pointing to Section 84.120 RSMo, which he says gives him a property interest in his employment. Alternatively, he vaguely points to "policies, ordinances, and regulations" that provide him "specific rights of due process." Finally, he says "public employees plainly [have] a property interest in continued employment" citing *Cleveland Bd. of Educ. of Loudermill*, 470 U.S. 532 (1985).

Plaintiff's first two arguments have already been rejected in a recent decision by this Court. *See Collins v. City of Pine Lawn*, 2017 WL 878035 at *8 (E.D. Mo. Mar. 6, 2017). Section 84.120 does not apply to fourth-class cities such as Pine Lawn, but instead applies only to St. Louis and Kansas City. *Id.* Moreover, as an appointive officer of a fourth-class city, plaintiff is an at-will employee without a property interest in his continued employment. § 79.240, RSMo.; *see also Margiotta v. Christian Hosp. Northeast Northwest*, 315 S.W.3d 342, 345-346 (Mo. banc 2010). Nothing about Pine Lawn's "policies or customs override the at-will presumption." *Crews v. Monarch Fire Protection Dist.*, 771 F3d 1085, 1091 (8th Cir. 2014) (applying Missouri law to a three fire chiefs' claims of wrongful termination violating their due process rights); *Collins*, 2017 WL 878035 at *8 (accord). Nor does plaintiff identify "[an] ordinance that creates any such right." *Collins*, 2017 WL 878035 at *8. And as an "employee at will," plaintiff simply has "no property interest in his [] employment and [was] not entitled to procedural due process upon [his] termination." *State ex rel. Lupo v. City of Wentzville*, 886 S.W.2d

727, 731 (Mo. App. E.D. 1994) (police officers of fourth-class city could be removed for any reason, or no reason, and had no procedural due process rights before termination).

*Loudermill* does not change this result—it supports it. The Supreme Court made clear that "[p]roperty interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." 470 U.S. at 538. Thus, the Missouri Supreme Court, in discussing *Loudermill*, has looked specifically to a police officer's due process rights as provided by "statute, ordinance, or [] contract." *Belton v. Bd. of Police Com'rs of Kansas City*, 708 S.W.2d 131, 137 (Mo. banc. 1986). As contrasted to this case, *Belton* shows when a police officer does possess certain due process rights; in that case, the plaintiff was a police officer for Kansas City, which by statute permits removal "only for cause." *Id*. (*citing* § 84.600, RSMo). Plaintiff, comparatively, is not protected by "for cause" termination mandates. *Compare* § 84.600 RSMo ("[h]aving served at least six months' probationary service … such policemen … shall be appointed to the police force of [Kansas City] and shall thereafter be subject to discharge or removal only for cause"); *with* § 79.240, RSMo ("[t]he mayor may, with the consent of a majority of all the members elected to the board of aldermen, remove from office any appointive officer of the city at will"). Lacking a property interest in his employment, plaintiff's due process claims (Counts XLI, LXI, and CXXVII) must fail.

### iii.  Adequacy of Plaintiff's Malicious Prosecution, Abuse of Process, and Conspiracy Claims

Defendants say plaintiff's malicious prosecution claims, including the conspiracy claims based thereon, are time-barred by § 516.140, RSMo. The parties agree that the statute of limitations period for malicious prosecution claims is two years and that plaintiff's claims would ordinarily be stale by the time he filed his initial complaint. However, plaintiff says defendants are equitably estopped from asserting the limitations period because defendants "actively hid[], secreted, or fraudulently concealed evidence." He explains how "defendants manufactured and hid evidence only to produce documents when it [was] convenient, such as at sentencing hearings."

According to plaintiff's own complaint, he was convicted and sentenced on October 6, 2016. By that time, all supposedly hidden information used to maliciously prosecute him was known to him. Yet, he did not file his initial complaint until July 16, 2019—well beyond the two-year limitations period under Section 516.140. And even to the extent it could be said that defendants hid (and continues to hide) exonerating information, plaintiff would have been aware of the factual basis for that information given his own, personal involvement in the circumstances leading up to his conviction. *See Channawood Holdings, LLC. v. 1209 Washington, LLC*., 333 S.W.3d 480, 488 (Mo. App. E.D. 2010) ("One cannot set up another's act or conduct as the ground of an estoppel when he knew or had the same means of knowledge as the other to the truth."). More importantly, though, plaintiff cannot show a key element of his claim: a favorable result in his favor in the underlying action; rather, he was convicted, sentenced to prison, and served his time. A "malicious prosecution's favorable-termination requirement is rooted in pragmatic concerns with avoiding parallel criminal and civil litigation over the

22

same subject matter and the related possibility of conflicting civil and criminal judgements." *McDonough v. Smith*, 139 S.Ct. 2149, 2156-2157 (2019). The "requirement likewise avoids allowing collateral attacks on criminal judgments through civil litigation." *Id.* at 2157. Thus, "to permit a convicted criminal defendant to proceed with a malicious prosecution claim would permit a collateral attack on the conviction," which simply is not allowed by federal or state law. *Heck v. Humphrey*, 512 U.S. 477, 484 (1994); *Anton v. Police Retirement Sys. of St. Louis*, 925 S.W.2d 900, 906 (Mo. App. E.D. 1996) ("[I]f a conviction is obtained, there is generally no cause of action for malicious prosecution of the criminal case because an essential element of the tort is that the case alleged to have been wrongfully prosecuted be terminated in the plaintiff's favor."); *Moffett v. Commerce Trust Co.*, 283 S.W.2d 591, 602 (Mo. 1955) (accord). His claims, therefore, are not only time-barred—they fail on the elements. Counts XLVI, LXVI, CXXXII, and CLXX will be dismissed.

The result is no different for plaintiff's abuse of process claims. The elements for abuse of process include an "illegal, improper, perverted use of process," done "for an improper purpose," which resulted in damages. *Impey v. Clithero*, 553 S.W.3d 344, 349 (Mo. App. W.D. 2018). Plaintiff cursorily alleges defendants "made an illegal, improper, perverted use of process" to secure his incarceration. But, the complaint fails to explain— anywhere—how the underlying criminal case was being used for an ulterior purpose to benefit the defendants (i.e. how process was being abused). A lawsuit "confined to its regular and legitimate function" is not an abuse of process "even if [the accused] had an ulterior motive in bringing the action." Instead, there must be some "collateral purpose"

23

for which the lawsuit is then used to effectuate an illegal and improper harm upon plaintiff. *Wells v. Orthwein*, 670 S.W.2d 529, 532 (Mo. App. E.D. 1984). The Missouri Supreme Court points out a classic example of abuse of process where an otherwise legitimate civil suit had been filed and was then used as a threat to extort money from an opponent. *Moffett*, 283 S.W.2d at 599-600. Here, nowhere is it explained in the complaint how, first, defendants themselves were in control of the process (i.e. the criminal suit) so as to have the initial ability to abuse it or, second, how they then used that process (while pending) to impose some form of unfair leverage or extortion over plaintiff. "Mere allegations that defendants maliciously commenced a [criminal] suit [does] not satisfy [the] pleading requirement[s]." *Viehweg v. Taylor*, 797 F.Supp. 751, 752 (E.D. Mo. 1992); *see also Moffett*, 283 S.W.2d at 602 (bad-faith initiation of suit "indicates a situation more in the nature of malicious prosecution than abuse of process," as there is not showing in that action alone of a discrete action to abuse process). Having failed to identify any improper use of process, plaintiff's claims for abuse of process (Counts XLV, LXV, CXXXI, and CLXIX) must fail.

### D.  Defendants Colquitt, Epps, Harmon, Rinck, and Struckhoff's Motion to Dismiss, ECF #80

Defendants Colquitt, Epps, Harmon, Rinck and Struckhoff track 81 claims against them in total.[3] Again, they are the same standard formulations as those made against

---

[3] The counts include:

Count LXXI (Epps), Count LXXXVII (Harmon), Count CIII (Colquitt), Count CXXXVI (Rinck), and CLII (Struckhoff)—Mo. Law, Whistleblower
Count LXXII (Epps), Count LXXXVIII (Harmon), Count CIV (Colquitt), Count CXXXVII (Rinck), and CLIII (Struckhoff)—Mo. Law Retaliation, Violation of State Constitution

24

defendants Pine Lawn and Gray, Krueger, and Smith—variations of state law claims

alleging wrongful discharge, invasion of privacy, abuse of process, malicious prosecution

and civil conspiracy, as well as various Section 1983 claims based on the U.S.

Constitution. Many of the arguments in plaintiff's memorandum in opposition are nearly,

if not completely, identical. As he did in response to the other defendants' motions,

plaintiff concedes the counts alleging a violation of the 5 U.S.C. § 552a(b)—Counts

LXXXI, XCVII, CXIII, CXLVI, and CLXIII—should be dismissed. He also concedes the

wrongful-termination-related claims should be dismissed, including those against Epps

(Counts LXXI, LXXII, LXXIII, LXXIV, LXXVI, LXXVII, LXXVIII, LXXIX, LXXXI,

---

Count LXXIII (Epps), Count LXXXIX (Harmon), Count CV (Colquitt), Count CXXXVIII (Rinck), and CLIV (Struckhoff)—Mo. Law Retaliation, Acting as a Witness
Count LXXIV (Epps), Count XC (Harmon), Count CVI (Colquitt), Count CXXXIX (Rinck), and CLV (Struckhoff)—Missouri Common Law
Count LXXV (Epps), Count XCI (Harmon), Count CVII (Colquitt), Count CXL (Rinck), and CLVI (Struckhoff)—Intentional Infliction of Emotional Distress
Count LXXVI (Epps), Count XCII (Harmon), Count CVIII (Colquitt), Count CXLI (Rinck), and CLVII (Struckhoff)—§ 1983, Free Speech
Count LXXVII (Epps), Count XCIII (Harmon), Count CIX (Colquitt), Count CXLII (Rinck), and CLVIII (Struckhoff)—§ 1983, Freedom of Association
Count LXXVIII (Epps), Count XCIV (Harmon), Count CX (Colquitt), Count CXLIII (Rinck), and CLIX (Struckhoff)—§ 1983, Procedural Due Process
Count LXXIX (Epps), Count XCV (Harmon), Count CXI (Colquitt), Count CXLIV (Rinck), and CLX (Struckhoff)—§ 1983, 14th Amend. Equal Protection
Count LXXX (Epps), Count XCVI (Harmon), Count CXII (Colquitt), Count CXLV (Rinck), and CLXI (Struckhoff)—§ 1981
Count LXXXI (Epps), Count XCVIII (Harmon), Count CXIII (Colquitt), Count CXLVI (Rinck), and CLXIII (Struckhoff)— Privacy Act 5 U.S.C. §552a(b)
Count LXXXII (Epps), Count XCVIII (Harmon), Count CXIV (Colquitt), Count CXLVII (Rinck), and CLXIV (Struckhoff)—Abuse of Process
Count LXXXIII (Epps), Count XCIX (Harmon), Count CXV (Colquitt), Count CXLVIII (Rinck), and CLXV (Struckhoff)—Malicious Prosecution
Count LXXXIV (Epps), Count C (Harmon), Count CXVI (Colquitt), Count CXLIX (Rinck), and CLXVI (Struckhoff)—Invasion of Privacy, Intrusion Upon Seclusion
Count LXXXV (Epps), Count CI (Harmon), Count CXVII (Colquitt), Count CL (Rinck), and CLXVII (Struckhoff)—Invasion of Privacy, Publication of Private Facts
Count LXXXVI (Epps), Count CII (Harmon), Count CXVIII (Colquitt), Count CLI (Rinck), and CLXVIII (Struckhoff)—Whistleblower Act 2017
Count CLXX (Epps, Harmon, Colquitt, Rinck, and Struckhoff)—Civil Conspiracy, Malicious Prosecution

LXXXVI), Harmon (Counts LXXXVII, LXXXVIII, LXXXIX, XC, XCII, XCIII, XCIV,

XCV, XCVIII, CII), Colquitt (Counts CIII, CIV, CV, CVI, CVIII, CIX, CX, CXI, CXIII,

CXVIII), Rinck (Counts CXXVI, CXXVII, CXXVIII, CXXXIX, CXLI, CXLII, CXLIII,

CXLIV, CXLVI, CLI), and Struckhoff  (Counts CLII, CLIII, CLIV, CLV, CLVII,

CLVIII, CLIX, CLX, CLXIII, CLXVIII).

　　　In their initial briefing, both parties appear to have overlooked plaintiff's Section

1981 wrongful termination / retaliation claims, and this Court is reluctant to allow

defendants to raise arguments for the first time in their reply. *See Maritz Holdings, Inc. v.*

*Cognizant Technology Solutions U.S. Corp.*, 2019 WL 6910051 at *5, n. 6 (E.D. Mo.

Dec. 19, 2019) (recognizing trial courts "do not generally consider new arguments raised

in a reply brief"). However, in support of other, similar claims, plaintiff's memorandum

in opposition did make reference to his complaint allegation that his discrimination

theory was based on the fact that "City Attorney Smith [] told Director Gray that 'white'

supervisors had always been a problem in the Department," which plaintiff says "clearly

and explicitly describes disparate treatment based on race." Even with this assertion in

mind, a review of the remainder of the complaint reveals no further factual allegations

supporting the idea that Colquitt, Epps, Harmon, Rinck and Struckhoff—themselves—

were personally involved in any discriminatory act that resulted in plaintiff's termination.

*See Ajiwoju v. Cottrell*, 2005 WL 1026702 at *2 (W.D. Mo. May 2, 2005) (dismissing

claims under Section 1981 where complaint failed to allege any acts of discrimination on

the part of specific defendants to show their personal involvement). To the contrary, as

was explained earlier in this Order, only the board of alderman were permitted to

removed Blakeney from his appointive office—and there is no allegation, nor reasonable inference to be made, that they did so because of racial discrimination. *See* § 79.240, RSMo. Plaintiff's Section 1981 claims (Counts LXXX, XCVI, CXII, CXLV, and CLXI) will be dismissed.

That leaves the following claims: (1) Counts LXXV, XCI, CVII, CXL, and CLVI—claims for intentional infliction of emotional distress; (2) Counts LXXXII, XCVIII, CXIV, CXLVII, and CLXIV—Abuse of Process; (3) Counts LXXXIII, XCIX, CXV, CXLVIII, and CLXV—Malicious Prosecution; (4) Counts LXXXIV, C, CXVI, CXLIX, and CLXVI—Invasion of Privacy, Intrusion Upon Seclusion; (5) Counts LXXXV, CI, CXVII, CL, CLXVII—Invasion of Privacy, Publication of Private Facts; and (6) Count CLXX—Civil Conspiracy, Malicious Prosecution. The arguments against each of these categories are addressed below.

### i.  Adequacy of Plaintiff's Intentional Infliction of Emotional Distress Claims

Defendants, here, have joined in the arguments of Gray, Krueger, and Smith. This Court concluded that "[p]laintiff's failure to allege that defendants' purported misconduct was the sole cause of his emotional distress is dispositive" and "[having failed to alleged any misconduct by defendants that was solely intended to cause emotional distress," such claims must be dismissed. The same result applies here. Accordingly, Counts LXXV, XCI, CVII, CXL, and CLVI are dismissed.

### ii.  Adequacy of Plaintiff's Abuse of Process and Malicious Prosecution Claims, Including those Based in Conspiracy

Once again, defendants, here, have joined in the arguments of Gray, Krueger, and Smith. Again, this Court concluded that plaintiff's malicious prosecution claims are time-barred under § 516.140, RSMo, and fail on their elements by failing to demonstrate a favorable result in plaintiff's favor in the underlying action. Further, plaintiff's abuse of process claims failed to show how "defendants themselves were in control of the process [allegedly abused] or [that] they then used that process [] to impose some form of unfair leverage or extortion over plaintiff." The same result applies here. Accordingly, Counts LXXXII, XCVIII, CXIV, CXLVII, and CLXIV (Abuse of Process), LXXXIII, XCIX, CXV, CXLVIII, and CLXV (Malicious Prosecution), and CLXX (Civil Conspiracy, Malicious Prosecution) are dismissed.

### iii. Adequacy of Plaintiff's Invasion of Privacy Claims—Intrusion Upon Seclusion and Publication of Private Fact

Defendants say plaintiff has not alleged that they, themselves, published a private matter of plaintiff meant to shame or humiliate him, and thus the publication of private fact claims must fail on its elements. Further, defendants say that, while they "were in possession of his medical records and those records were accessed by a third party through unreasonable means," they should not be "held liable for the unreasonable actions of a third party" for purposes of plaintiff's intrusion upon seclusion claim. Plaintiff confuses defendants for co-defendants Krueger, Smith, and Gray, who he argues were in possession of "personnel matters" that "disclosed" to the public.

Each invasion-of-privacy-related count asserts that "[t]here existed private and secret subject matter including [plaintiff's] medical records and personnel file" and that

28

plaintiff "had the right to keep the aforementioned subject matter private from third-parties," which was obtained by a third party "through unreasonable means." The complaint's factual allegations clarify it was "Colquitt [and] Krueger [that] sent [plaintiff's] medical and personnel information to members of the public, including [plaintiff's] ex-wife under direct supervision of Mayor Caldwell."

The parties' arguments gloss over the nuance between a claim for intrusion upon seclusion and a claim for unreasonable publicity to another's private life. Three elements encompass a claim for intrusion upon seclusion: "(1) the existence of a secret and private subject matter; (2) a right in the plaintiff to keep that subject matter private; and (3) the obtaining by the defendant of information about that subject matter through unreasonable means." *St. Anthony's Med. Ctr. v. H.S.H.*, 974 S.W.2d 606, 609–10 (Mo. App. E.D. 1998). Whereas, the elements of an unreasonable publicity given to another's private life include: "(1) publication or publicity; (2) absent any waiver or privilege; (3) of private matters in which the public has no legitimate concern; (4) so as to bring shame or humiliation to a person of ordinary sensibilities." *Id.*

There is no factual allegation asserting that the medical and personnel records were somehow obtained through unreasonable means ***by defendants***—nor was that process described. Plaintiff's conflating of the operative terms "publishing" and "obtaining" is fatal to his intrusion upon seclusion claims. *Id.* (plaintiff could not maintain intrusion upon seclusion claim against hospital based on its release of medical records to patient's wife where hospital did not unreasonably "obtain" records, but rather obtained them in the ordinary course of business—publication not being an element of

the tort). The intrusion upon seclusion claims will, therefore, be dismissed (Counts LXXXIV, C, CXVI, CXLIX, and CLXVI).

That leaves the unreasonable publicity claims. Only Colquitt is alleged in the complaint to have personally published a private matter. Though the complaint is inconsistent in asserting whether it was Colquitt or Krueger, Smith, and Gray who published his medical and personnel information, defendants' memorandum is still somewhat inaccurate to suggest that "plaintiff makes no allegations whatsoever against defendants [Colquitt, Epps, Harmon, Rinck and Struckhoff]." The claim against Colquitt will proceed, for now, in view that defendants' memorandum does not embrace or acknowledge the specific claim that Colquitt, himself, published private facts (Count CXVII). That said, there are certainly no allegations of publication made against Epps and Rinck; therefore, the unreasonable publicity claims against them will be dismissed (Counts LXXXV and CL). Harmon, meanwhile, is alleged to have "obtained [a] closed police investigation report" at the direction of an unnamed "Pine Lawn official" that "Pine Lawn released [] to the press in violation of the law." Again, confusing Pine Lawn's *publication* of the police report with Harmon's *obtaining* of it is fatal to the unreasonable publicity claim against Harmon, which will be dismissed (Count CI). Finally, Struckhoff is alleged to have provided plaintiff's "ex-wife various department information about [plaintiff] … during [his] child custody hearings." The complaint seems to suggest these records were not disclosed at the direction of any particular court order or proceeding but were instead personally delivered to plaintiff's ex-wife and/or her attorney. The "hand-deliver[y] [of] personal documents to [plaintiff's] ex-wife's house"

30

(allegations in the complaint) is not, however, the sort of "publication" envisioned by the tort, which encompasses "public disclosure [to] the general public" at large, not one individual. *St Anthony Med. Ctr.*, 974 S.W.2d at 610-611 (hospital's delivery of medical records to wife's attorney did not "constitute publication as required in an action for public disclosure of private facts"). Accordingly, the unreasonable publicity claim against Struckhoff will also be dismissed (Count CLXVII).

### E.  Defendant Donnell Smith & Associates, LLC.'s Motion to Dismiss, ECF #108

Smith & Associates is treated as a distinct defendant, separate and apart from Smith individually, on only one occasion. The complaint raises a single count against Smith & Associates for civil conspiracy to commit malicious prosecution (Count CLXX). "[T]he fact of conspiracy is not actionable," rather "the action sounds in tort and is in the nature of an action on the case upon the wrong done under the conspiracy alleged." *Envirotech, Inc. v. Thomas*, 259 S.W.3d 577, 586 (Mo. App. E.D. 2008). Here, as explained, the underlying abuse of process and malicious prosecution claims are rejected (see Sections C.iii, D.ii). Therefore, the conspiracy claim must also fail. *Id.* ("If the underlying wrongful act alleged as part of a civil conspiracy fails to state a cause of action, the civil conspiracy claim fails as well."). Count CLXX will be dismissed as against Smith & Associates.

### F.  Defendant MOPERM's Motion to Dismiss, ECF #73

The complaint raises two claims against defendant Missouri Public Entity Risk Management Fund ("MOPERM"). MOPERM is sued for alleged civil conspiracy to commit an abuse of process (Count CLXIX) and malicious prosecution (Count CLXX). Once again, civil conspiracy is not actionable when the underlying wrongful act has already failed as a cause of action. *See Thomas*, 259 S.W.3d at 586. The underlying cause of action has failed; accordingly, the conspiracy claims must also fail (see Sections C.iii, D.ii). Counts CLXIX and CLXX will be dismissed as against MOPERM.

### G.  Defendant MOPERM's Motion for Sanctions, ECF #96

In its final motion, MOPERM seeks sanctions against plaintiff arguing "plaintiff's counsel has never had a factual basis to assert that MOPERM has insurance that covers the claims plaintiff is attempting to bring." As such, MOPERM says plaintiff violated Rule 11(b)'s requirement that an attorney "certifies that to the best of [their] knowledge, information, and belief" the "factual contentions have evidentiary support" or "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." FED. R. CIV. P. 11(b)(3). In essence, MOPERM takes issue with plaintiff's refusal to withdraw his claims against MOPERM after it provided an affidavit indicating it had no insurance to waive sovereign immunity and, further, offered to provide a witness for deposition to that effect.

At this time, the Court will not order sanctions. This Court agrees that it is exceedingly rare to see MOPERM sued in tort—in fact, beyond this case, no other caselaw appears to support such a tactic. But, as this Court explained above, the Missouri

32

Supreme Court seems to allow relatively terse pleadings about the insurance waiver

exception to sovereign immunity on the understanding that plaintiff, when drafting his or

her complaint, may not have access to the relevant policy. *See Kunzie*, 184 S.W.3d at

574. While MOPERM has indicated to plaintiff by letter that "MOPERM has no

***insurance coverage*** for the claims asserted against it" (emphasis added), the

"interpretation of an insurance policy is a question of law." *Argonaut Great Central Ins.*

*Co. v. Lincoln County, Mo*., 952 F.3d 992, 995 (8th Cir. 2020). There is no suggestion

MOPERM has ever outright declared to plaintiff that an insurance policy simply does not

exist for tort-related claims, and plaintiff is not required to accept MOPERM's legal

conclusions at face value. This Court does not find the type of "litigant misconduct"

required for Rule 11 sanctions. *Franklin v. Pinnacle Entertainment, Inc*., 289 F.R.D. 278,

288 (E.D. Mo. Dec. 28, 2012) (quoting *Kirk Capital Corp. v. Bailey*, 16 F.3d 1485, 1490

(8th Cir. 1994)).

## III. CONCLUSION

As the foregoing has explained, only two count survives: Count CXVII against

Colquitt for publication of private facts and the concordant Count XV against Pine Lawn.

Every other claim will be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that the following motions are **DENIED AS**

**MOOT**: defendant Pine Lawn's motion to dismiss (ECF #40), defendant MOPERM's

motion to dismiss (ECF #45), defendants Gray, Krueger, and Smith's motion to dismiss

(ECF #48), defendants Colquitt, Epps, Harmon, Rinck, and Struckhoff's motion to dismiss (ECF #53), and MOPERM's substitute motion to dismiss (ECF #55).

**IT IS FURTHER ORDERED** that plaintiff's motion to disqualify judge (ECF #42) is **DENIED.**

**IT IS FURTHER ORDERED** that defendant Pine Lawn's motion to dismiss (ECF #67) is **GRANTED IN PART and DENIED IN PART.** Count XV shall proceed. All other relevant counts are hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that defendant Gray, Krueger, and Smith's motion to dismiss (ECF #69) is **GRANTED.** All relevant counts are hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that defendant MOPERM's motion to dismiss (ECF #73) is **GRANTED.** All relevant counts are hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that defendant Colquitt, Epps, Harmon, Rinck, and Struckhoff's motion to dismiss (ECF #80) is **GRANTED IN PART and DENIED IN PART.** Count CXVII against Colquitt shall proceed. All other relevant counts are hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that defendant MOPERM's motion for sanctions (ECF #96) is **DENIED.**

**IT IS FURTHER ORDERED** that defendant Donnell Smith & Associates, LLC.'s motion to dismiss (ECF #108) is **GRANTED.** All relevant counts are hereby **DISMISSED**.

So ordered this 7th day of August 2020.


STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE